1   ISMAIL J. RAMSEY (CABN 189820)
    United States Attorney
2   MICHELLE LO (NYRN 4325163)
    Chief, Civil Division
3   JEVECHIUS D. BERNARDONI (CABN 281892)
    Assistant United States Attorney
4   Acting Under Authority Conferred by 28 U.S.C. § 515

5       1301 Clay Street, Suite 340S
        Oakland, California 94612-5217
6       Telephone:  (510) 637-3721
        Facsimile:  (510) 637-3724
7       jevechius.bernardoni@usdoj.gov

8   Attorneys for the United States of America

9

                    UNITED STATES DISTRICT COURT
10
                        DISTRICT OF NEVADA
11

12  RYAN BUNDY, *et al.*,                 Case No. 2:23-cv-01724-RFB-VCF

13          Plaintiffs,                   **THE UNITED STATES OF AMERICA'S
                                          NOTICE OF MOTION AND MOTION TO
14      v.                                DISMISS THE FIRST AMENDED
                                          COMPLAINT; MEMORANDUM OF POINTS
15  UNITED STATES OF AMERICA, *et al.*,   AND AUTHORITIES**

16          Defendants.

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### **Table of Contents**

NOTICE OF MOTION AND MOTION TO DISMISS ........................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................................... 1

I.     Introduction ............................................................................................................................. 1

II.    Background .............................................................................................................................. 1

   A.   Factual Background Alleged In The FAC ........................................................................ 1

      1.   2014 Cattle Impoundment Operation And Standoff ................................................ 2

      2.   Grand Jury Proceedings And Indictment ................................................................. 3

      3.   Arrest, Litigation, And Dismissal Of The Underlying Action ................................ 4

   B.   Claims Alleged ................................................................................................................ 5

III.   Legal Standards ...................................................................................................................... 5

   A.   Rule 12(b)(1) Legal Standard ......................................................................................... 5

   B.   Rule 12(b)(6) Legal Standard ......................................................................................... 6

IV.   Argument ................................................................................................................................ 7

   A.   The Malicious Prosecution Claim Fails At The Jurisdictional And Pleading Levels ................ 7

      1.   The Intentional Tort Exception Bars The Malicious Prosecution Claim ................ 7

      2.   The Malicious Prosecution Claim Regarding FBI And BLM Conduct Is Deficiently Pleaded And Should Be Dismissed Under Rule 12(b)(6) ................... 9

         (i)   Plaintiffs Do Not Plead Facts Regarding FBI And BLM Employee Conduct Sufficient To Overcome The Presumption Of Independent Prosecutorial Judgment .... 10

         (ii)  Plaintiffs Do Not Plead Facts Demonstrating A Favorable Termination ..................... 13

         (iii)  Plaintiffs Do Not Plead Facts Showing A Lack Of Probable Cause ............................. 15

            (a)   The FAC Does Not Plead That The False Testimony And Evidence Was Relevant To The Charged Crimes ................................................................. 16

            (b)   There Was Independent Probable Cause For The Prosecution ..................................... 18

   B.   Plaintiffs' IIED Claim Fails At Both The Jurisdictional And Pleading Levels ...................... 19

      1.   The Intentional Tort Exception Bars The IIED Claim Because The Substance Of The Conduct Relied Upon Constitutes An Excluded Tort ........................................ 19

      2.   Plaintiffs' IIED Claim Is Also Deficiently Pleaded And Should Be Dismissed ................ 19

(i)   The FAC Does Not Allege Facts Establishing Physical Manifestation Of Emotional Distress............................................................................ 20

(ii)   The FAC Does Not Allege Facts Showing That FBI And/Or BLM Employees Engaged In Extreme And Outrageous Conduct ........................................ 20

C.   The Loss Of Consortium Claim Fails At The Jurisdictional And Pleading Levels ................. 21

D.   Sovereign Immunity Bars The Constitutional And Statutory Violation Allegations .............. 21

E.   The Demands For Attorney's Fees And Prejudgment Interest Are Barred ............................ 23

V.   Conclusion ...................................................................................................................... 23

## **TABLE OF AUTHORITIES**

### **Cases**

*Abbott v. Sangamon Co.*, 705 F.3d 706 (7th Cir. 2013) .................................................. 16

*Aleman v. City of Bakersfield*, No. 11-cv-2006, 2013 WL 3936740 (E.D. Cal. July 30, 2013) ............... 15

*Anderson v. United States*, 127 F.3d 1190 (9th Cir. 1997) ................................................... 23

*Anderson v. United States*, No. 18-cv-02173-JAD-GWF, 2019 WL 3776999 (D. Nev. Aug. 9, 2019) .. 13

*Awabdy v. City of Adelanto*, 368 F.3d 1062 (9th Cir. 2004) ................................................... 11

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696 (9th Cir. 1990) ........................................... 6

*Beck v. City of Upland*, 527 F.3d 853 (9th Cir. 2008) ................................................... 10, 11

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................... 6

*Betsinger v. D.R. Horton, Inc.*, 232 P.3d 433 (Nev. 2010) ................................................... 19

*Blankenhorn v. Cty. of Orange*, 485 F.3d 463 (9th Cir. 2007) ................................................... 11

*Bolt v. United States*, 509 F.3d 1028 (9th Cir. 2007) ................................................... 22

*Bouari v. United States*, No. 21-cv-226-JCM-VCF, 2021 WL 4699233 (D. Nev. Oct. 7, 2021) ............ 21

*Brown v. Lever*, No. 17-cv-00828-JAD-PAL, 2018 WL 1903120 (D. Nev. Apr. 20, 2018) .................. 21

*Brownback v. King*, 141 S. Ct. 740 (2021) ................................................... 10, 22, 23

*Butler v. Smith*, 85 F.4th 1102 (11th Cir. 2023) ................................................... 16, 17

*Cal. ex rel. Younger v. Andrus*, 608 F.2d 1247 (9th Cir. 1979) ................................................... 6

*Campbell v. City of Bakersfield*, No. 04-cv-5585, 2006 WL 2054072 (E.D. Cal. July 21, 2006) ........... 13

*Coryell v. United States*, No. 18-cv-00593-GMN-NJK, 2019 WL 720972 (D. Nev. Feb. 20, 2019) ...... 13

*Crain v. Nevada*, 724 F. App'x 591 (9th Cir. 2018) ................................................... 12

*Crain v. Nevada*, No. 16-cv-00406-JAD-PAL, 2016 WL 7422643 (D. Nev. Dec. 21, 2016) ........... 11, 12

*Davis v. United States*, No. 03-cv-1800, 2004 WL 324880 (S.D.N.Y. Feb. 18, 2004) ........................... 9

*Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255 (1999) ................................................... 8

*Doe v. Hagee*, 473 F. Supp. 2d 989 (N.D. Cal. 2007) ................................................... 5

*Dreier v. United States*, 106 F.3d 844 (9th Cir. 1997) ................................................... 6

*Dunning v. United States*, No. 17-cv-43, 2022 WL 815190 (N.D. Ind. Mar. 17, 2022) ........................ 16

*F.D.I.C. v. Meyer*, 510 U.S. 471 (1994) ................................................... 22

*Fallay v. San Francisco City & Cnty.*, No. 08-cv-2261, 2015 WL 7874312 (N.D. Cal. Dec. 4, 2015)... 12

*Fetters v. Cty. of Los Angeles*, 243 Cal. App. 4th 825 (2016) .................................................................. 14

*Friedman v. United States*,
    No. 18-cv-857-JCM-VCF, 2019 WL 121965 (D. Nev. Jan. 7, 2019) ........................ 10, 13, 19, 20

*Garcia-Valasquez v. United States*, No. 13-cv-1038, 2014 WL 3756378 (W.D. Tex. July 29, 2014) ...... 9

*Gilbert v. DaGrossa*, 756 F.2d 1455 (9th Cir. 1985)............................................................................. 7, 8

*Gilton v. City and Cnty. of San Francisco*,
    No. 22-cv-7697, 2023 WL 5600082 (N.D. Cal. Aug. 29, 2023) ................................................ 12

*Gonzales v. Las Vegas Metro. Police Dep't*,
    No. 14-cv-1827-JCM-GWF, 2015 WL 4424552 (D. Nev. July 20, 2015)................................... 21

*Gressett v. Contra Costa Cnty.*, No. 12-cv-3798, 2015 WL 1054975 (N.D. Cal. Mar. 10, 2015)..... 14, 15

*Hickman v. Mead*, No. 2:18-cv-00404-GMN-NJK, 2019 WL 4139434 (D. Nev. Aug. 30, 2019) .......... 15

*Hiekel v. 268 Ltd.*, 887 F.2d 1089 (9th Cir. 1989) ..................................................................................... 13

*Hodge v. Dalton*, 107 F.3d 705 (9th Cir. 1997)............................................................................................ 8

*Hymon v. Las Vegas Metro. Police Dep't Officer Rose*,
    No. 23-cv-01276-GMN-DJA, 2023 WL 7157839 (D. Nev. Oct. 30, 2023).............................. 15

*Jachetta v. United States*, 653 F.3d 898 (9th Cir. 2011)............................................................................... 8

*Jaffe v. Stone*, 18 Cal. 2d 146 (1941) ................................................................................................. 13, 14

*Johnson v. United States*, No. 22-cv-00747, 2022 WL 4180455 (N.D. Cal. Sept. 12, 2022) ................. 14

*Jones v. Keitz*, 738 F. App'x 503 (9th Cir. 2018) ...................................................................................... 12

*Jones v. Keitz*, No. 16-cv-01725, 2017 WL 3394121 (E.D. Cal. Aug. 7, 2017) ...................................... 11

*Kelley v. City of Henderson*, No. 15-cv-02204, 2016 WL 4473420 (D. Nev. Aug. 23, 2016)................ 11

*Koala v. Khosla*, 931 F.3d 887 (9th Cir. 2019)........................................................................................... 18

*Kokkonen v. Guardian Life Insurance Co.*, 511 U.S. 375 (1994)................................................................ 6

*LaBarge v. County of Mariposa*, 798 F.2d 364 (9th Cir. 1986) .................................................................. 8

*LaMantia v. Redisi*, 118 Nev. 27 (2002).................................................................................................... 13

*Lassiter v. City of Bremerton*, 556 F.3d 1049 (9th Cir. 2009) ................................................................... 15

*Maduike v. Agency Rent-A-Car*, 114 Nev. 1 (1998) ............................................................................ 20, 21

*Manansingh v. United States*,
    No. 20-cv-01139-DWM, 2024 WL 1638638 (D. Nev. Apr. 15, 2024) ................................. 13, 14

*Manansingh v. United States*, No. 21-16192, 2023 WL 7295184 (9th Cir. 2023).................................... 8

*Maqablh v. Heinz*, No. 16-cv-289, 2023 WL 6392742 (W.D. Ky. Sept. 29, 2023) ............................. 14

*Miller v. Jones*, 114 Nev. 1291 (1998) .............................................................................................. 19

*Mills v. City of Covina*, 921 F.3d 1161 (9th Cir. 2019) ........................................................ 13, 14, 15

*Mireles v. Infogroup/Opinion Research Corp.*,
 No. 11-cv-00503-RCJ-VPC, 2012 WL 78183 (D. Nev. Jan. 10, 2012) ..................................... 20

*Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376 (9th Cir. 1988) ....... 6

*Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001) .................................................................................. 6

*Neaderbaomer v. United States*, No. 20-cv-07888, 2023 WL 5505906 (C.D. Cal. Jan. 11, 2023).......... 14

*Nichols v. City of Henderson*,
 No. 16-cv-01611-GMN-GWF, 2017 WL 3749497 (D. Nev. Aug. 29, 2017) ............................. 21

*O'Shaughnessy v. United States*,
 No. 22-cv-01039-WQH-EJY, 2023 WL 8018292 (D. Nev. Nov. 20, 2023).................... 8, 19, 23

*Pattiz v. Minye*, 61 Cal. App. 4th 822 (1998) ..................................................................... 13, 14, 15

*Pfaendler v. Town of Sahuarita*,
 No. 20-cv-00188, 2020 U.S. Dist. LEXIS 239678 (D. Ariz. Dec. 18, 2020) .............................. 12

*Pina v. United States ex rel. United States Postal Serv.*,
 No. 22-cv-01946-ART-VCF, 2023 WL 5717290 (D. Nev. Sept. 1, 2023) ................................. 23

*PlayUp, Inc. v. Mintas*, No. 21-cv-02129-GMN-NJK, 2023 WL 2648018 (D. Nev. Mar. 24, 2023)...... 20

*Robinson v. United States*, 586 F.3d 683 (9th Cir. 2009) ..................................................................... 6

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035 (9th Cir. 2004) .......................................................... 6

*Sagonowsky v. More*, 64 Cal. App. 4th 122 (1998) .......................................................................... 13

*Savage v. Glendale Union High School*, 343 F.3d 1036 (9th Cir. 2003) ............................................. 5

*Scotti v. City of Phoenix*, 609 F. App'x 386 (9th Cir. 2015) ............................................................. 18

*Sheehan v. United States*, 896 F.2d 1168 (9th Cir. 1990) ................................................................. 19

*Sky Ad, Inc. v. McClure*, 951 F.2d 1146 (9th Cir. 1991) ............................................................ 22, 23

*Smiddy v. Varney*, 665 F.2d 261 (9th Cir. 1981) ....................................................................... 10, 12

*Smith v. Almada*, 640 F.3d 931 (9th Cir. 2011) ................................................................................ 18

*Snow-Erlin v. United States*, 470 F.3d 804 (9th Cir. 2006) ............................................................... 19

*Staffpro, Inc. v. Elite Show Servs., Inc.*, 136 Cal. App. 4th 1392 (2006)............................................. 13

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) ..................................................................................... 7

*Staten v. Lowe's HIW, Inc.*,
No. 13-cv-00972-RCJ-CWH, 2013 WL 5278640 (D. Nev. Sept. 17, 2013) .............................. 20

*Thompson v. Clark*, 596 U.S. 36 (2022) ......................................................................................... 14

*Tosco Corp. v. Communities for Better Environment*, 236 F.3d 495 (9th Cir. 2001) ................................. 6

*United States v. Bundy*, 968 F.3d 1019 (9th Cir. 2020) ................................................................ 17

*United States v. Bundy*, No. 98-cv-0531-JBR, 1998 U.S. Dist. LEXIS 23835 (D. Nev. Nov. 3, 1998) .... 2

*United States v. Olson*, 546 U.S. 43 (2005) ................................................................................... 22

*United States v. White Mountain Apache Tribe*, 537 U.S. 465 (2003) .............................................. 8

*Vacek v. United States Postal Serv.*, 447 F.3d 1248 (9th Cir. 2006) .............................................. 8

*Van Asdale v. Int'l Game Tech.*, 549 F. App'x 611 (9th Cir. 2013) .......................................... 20

*Vander Zee v. Reno*, No. 95-50482, 1996 WL 625346 (5th Cir. Oct. 4, 1996) .......................... 9

*Villa v. Cole*, 4 Cal. App. 4th 1327 (1992) ............................................................................ 13

*Washington v. White*, No. 18-cv-00333, 2018 WL 2287676 (N.D. Cal. May 18, 2018) .................. 12

*White v. Lee*, 227 F.3d 1214 (9th Cir. 2000) ............................................................................ 6

*Whitehorn v. F.C.C.*, 235 F. Supp. 2d 1092 (D. Nev. 2002) ..................................................... 22

*Womack v. Cnty. of Amador*, 551 F. Supp. 2d 1017 (E.D. Cal. 2008) .................................... 14

*Wormwood v. N. Las Vegas Police Dep't*,
No. 15-cv-01438-JAD-GWF, 2016 WL 6915300 (D. Nev. Nov. 22, 2016) ......................... 11, 12

## **Statutes**

28 U.S.C. § 1346(b) .................................................................................................................... 22

28 U.S.C. § 2401(b) .................................................................................................................... 23

28 U.S.C. § 2674 .......................................................................................................................... 23

28 U.S.C. § 2680(h) ............................................................................................................ passim

42 U.S.C. § 1983 .......................................................................................................................... 14

## **Rules**

Federal Rule of Civil Procedure 12(b)(1) ............................................................................ passim

Federal Rule of Civil Procedure 12(b)(6) ............................................................................ passim

Federal Rule of Civil Procedure 5.2(a) ..................................................................................... 2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION TO DISMISS**

PLEASE TAKE NOTICE that the United States of America ("United States") will and hereby does move for an order dismissing the first amended complaint (ECF No. 11 ("FAC")).  This motion is made pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and is based on this Notice, the Memorandum of Points and Authorities, the Court's files and records, other matters of which the Court takes judicial notice, and any oral argument and additional evidence that may be presented to the Court.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    Introduction**

This case arises out of the federal prosecution of Plaintiffs Ryan Bundy ("Bundy") and Ryan Payne ("Payne") in connection with a standoff between the Bundy family (and their supporters) and federal agents in 2014.  The FAC acknowledges that Bundy and Payne were Tier 1 participants in an armed standoff against the federal government in response to the United States' efforts to collect a civil judgment owed by Bundy's father, Cliven Bundy.  A federal grand jury indicted Bundy and Payne twice for their criminal misconduct.  However, Bundy and Payne were not criminally convicted because, on January 8, 2018, the presiding judge dismissed the charges against them following various prosecutorial missteps.

It does not follow from the district court's dismissal, however, that Bundy and Payne were innocent of the criminal charges.  Nor does it follow that Bundy and Payne—along with Bundy's wife and children—can sue the United States for alleged malicious prosecution, intentional infliction of emotional distress, and loss of consortium.  Indeed, the United States has not waived sovereign immunity for any claim arising out of purported malicious prosecutions by federal prosecutors, and the FAC's allegations demonstrate that *every* alleged act leading to Bundy's and Payne's prosecution occurred under the "direction, guidance, and control" of federal prosecutors.  As such, the Court does not have subject matter jurisdiction over any aspect of this lawsuit.  In addition, the FAC does not plead facts stating a claim upon which relief can be granted as to any claim.

The United States respectfully requests that the Court grant this motion to dismiss.

**II.   Background**

**A.    Factual Background Alleged In The FAC**

Bundy and Payne were defendants in a criminal action in the District of Nevada titled *United States*

1  *v. Bundy, et al.*, Case No. 16-cr-00046-GMN-PAL (the "Underlying Action").  FAC ¶ 6.  Bundy's wife,

2  Angela Bundy, and their eight children are also plaintiffs in this action.[1]  *Id.* ¶¶ 9-10.

### 1.   2014 Cattle Impoundment Operation And Standoff

4  The Bundy family owns land in the Gold Butte area in Clark County, Nevada.  *Id.* ¶¶ 13-14.  The

5  Bundy family's cattle grazed on Bundy land and on surrounding federal public land.  *Id.* ¶ 18.  At some

6  point, the United States Department of the Interior and Bureau of Land Management ("BLM") began

7  "imposing restrictive grazing restrictions, and limiting the number of cattle that could graze upon" federal

8  public land in Nevada.  *Id.* ¶ 19.  Bundy's father, Cliven Bundy, refused to obtain BLM grazing permits,

9  and, as a result, the United States Department of Justice ("DOJ") initiated a civil suit against Cliven Bundy

10  in 1998.[2]  *Id.* ¶ 20.  That lawsuit ended with "a judgment in favor of the United States[.]"  *Id.*

11  The FAC alleges that, "[a]rmed with that judgment," federal employees "conspired together and

12  orchestrated a fraudulent scheme to entice Cliven Bundy and his supporters . . . into an armed

13  confrontation in April 2014[.]"  *Id.* ¶ 21.  Plaintiffs claim that the "Cattle Impoundment Operation" was

14  "cloaked" as "merely an effort to enforce a 2013 civil court order."  *Id.* ¶ 35.  According to Plaintiffs, "the

15  primary purpose behind the 2014 Cattle Impoundment Operation was to frame and entrap Cliven Bundy,

16  the Plaintiffs, and other supporters" by enticing them "into an armed confrontation" to justify the "planned

17  'use of force' and . . . fabrication of criminal charges against them."  *Id.* ¶¶ 21, 35.  Thus, the FAC claims

18  that AUSAs Ahmed, Myhre, and Bogden "orchestrated" the Cattle Impoundment Operation to "seize[]

19  cattle belonging to Cliven Bundy and the Bundy Ranch"; transport the seized cattle to a "staging area";

20  shoot other cattle "from helicopters"; "destroy[] several thousands of dollars of the Bundy family's water

21  right improvements and artesian springs / aquifers"; and "purposefully parad[e] a convoy of DOI / BLM

22  vehicles and other construction demolition equipment before the Bundys, the Plaintiffs and their

23  supporters to provoke them into resisting or otherwise defying the [United States'] efforts."  *Id.* ¶ 41.

24  During the Cattle Impoundment Operation, the United States closed "nearly six hundred thousand

---

26  [1]  The United States is currently unaware of the ages of the eight Bundy children and, in an
abundance of caution, will not use their names in accordance with Federal Rule of Civil Procedure 5.2(a).

27  [2]  The early history of the grazing dispute is detailed in Judge Rawlinson's November 3, 1998 Order

28  in *United States v. Bundy*, No. 98-cv-0531-JBR, 1998 U.S. Dist. LEXIS 23835 (D. Nev. Nov. 3, 1998),
which Plaintiffs incorporate by reference in the FAC.  *See* FAC ¶ 20.

(600,000) acres of land" to the public.  *Id.* ¶ 40.  This forced the "[h]undreds of Americans [who] traveled to the . . . area to protest" the United States' actions at one of two "First Amendment Zones."  *Id.* ¶¶ 40, 70.  These zones, the FAC alleges, were "purposefully selected" by "AUSAs Ahmed, Myhre and Bogden . . . to maximize the impairment of any protestors' First Amendment rights[.]"  *Id.* ¶ 40.

The FAC repeatedly claims that federal prosecutors at the United States Attorney's Office for the District of Nevada directed and orchestrated this alleged scheme, starting at the initial investigatory phase and continuing through Bundy's and Payne's indictment, arrest, and prosecution.  Thus, the FAC asserts that "AUSAs Ahmed, Myhre and Bogden" "guid[ed], direct[ed], and control[ed]" the "prepar[ation] and fabricat[ion of] evidence throughout the investigative stage of the Underlying Action, and knowingly, intentionally, and willfully concealed exculpatory evidence regarding the Plaintiffs' innocence and concealed the outrageous, unlawful, and unconstitutional aspects of the UNITED STATES' conduct related thereto."  *Id.* ¶ 31.  The FAC also alleges that "DOJ representatives, including . . . [AUSAs] Ahmed, Myhre and Bogden . . . knowingly, willingly and intentionally modified, revised and supplemented [an] operational plan proposed by BLM SAC Love and Officer Stover to ensure that the final Cattle Impoundment Operation would . . . outrage the ranching community" and "provoke a confrontation."  *Id.* ¶ 39; *see also id.* ¶ 29 ("the NV USA is *directing tactical decisions*") (emphasis in original).

The FAC alleges that "[r]ecognizing that the unlawful and unconstitutional powder-keg . . . was rapidly escalating out of control," Nevada state officials "intervened to de-escalate the matter" by directing "the BLM and Government Employees to wind-down their operation and to release the Bundy family's cows[.]"  *Id.* ¶¶ 47-48.  AUSA Bogden "directed federal and state officers to ensure that 'a Bundy'. . . would pull the pins from the cattle pens so that the DOJ could use that affirmative act to establish [] fabricated [charges]" against the defendants in the Underlying Action.  *Id.* ¶ 49.  "Margaret Houston, a sister of Cliven Bundy, ultimately 'pulled the pin' on the cattle pen and released the cattle."  *Id.* ¶ 50.

## 2.   Grand Jury Proceedings And Indictment

In 2015, AUSAs Ahmed, Myhre, and Bogden "sought to obtain a grand jury indictment against the Plaintiffs."  *Id.* ¶ 55.  Plaintiffs assert that "[u]nder the direction, guidance and control of AUSAs Ahmed, Myhre, and Bogden," law enforcement officers purportedly "fabricated, shaped and 'clarified' evidence and testimony, altered records, withheld evidence, and gave false testimony" before the grand

jury to obtain the indictments. *Id.* ¶¶ 31-32.

For example, Plaintiffs claim that on February 24, 2015, "at the direction of AUSAs Ahmed, Myhre, and Bogden," Special Agent Willis "attempted to 'correct'" Officer Brunk's statement regarding the arrest of Dave Bundy by having him "clarify" that he had not been a spotter/observer for a BLM sniper. *Id.* ¶ 34.  On June 29, 2015, AUSA Myhre and Agent Willis "knowingly, intentionally and willfully misled the Grand Jury regarding the circumstances surrounding [] Dave Bundy's April 6, 2014 false arrest." *Id.* ¶ 59.  "On September 16, 2015, AUSA Ahmed knowingly, intentionally, and willfully elicited false and misleading testimony from Officer Stover before the Grand Jury regarding the BLM's threat assessments of the Plaintiffs[.]" *Id.* ¶ 66.  On October 14, 2015, "AUSA Myhre purposefully avoided a Grand Juror's question directed at [the United States'] involvement in the pin removal action and purposefully proffered evasive testimony to avert BLM SAC Love from disclosing the truth regarding that incident." *Id.* ¶ 57.  On March 2, 2016, AUSAs Ahmed, Myhre, and Bogden "knowingly and intentionally suborned perjurious testimony from Agent Willis," who "falsely claim[ed] that [] Dave Bundy's vehicle was intended to impede" a government convoy. *Id.* ¶ 63.  On the same day, AUSA Ahmed "knowingly, intentionally, and willfully elicited false testimony" that Mel Bundy "threatened federal officers." *Id.* ¶ 65.  AUSA Ahmed "also materially misled the Grand Jury" regarding the use of First Amendment Zones. *Id.* ¶ 68.

AUSAs Ahmed, Myhre, and Bogden obtained a superseding grand jury indictment of Bundy and Payne (among others) on March 2, 2016. *Id.* ¶ 74.  Plaintiffs claim that AUSAs Ahmed, Myhre, and Bogden secured the indictment by using false evidence and by "knowingly, intentionally, and willfully" withholding exculpatory evidence from the grand jury. *Id.*  The superseding indictment contained "sixteen (16) criminal counts, including, without limitation, conspiracy, conspiracy to impede federal officers, assaulting, threatening, extorting, and obstructing federal officers, and four (4) counts of using firearms in crimes of violence resulting from [the] 'standoff' with [federal] agents . . . in connection with [the United States'] Cattle Impoundment Operation." *Id.* ¶ 27.

### 3.    Arrest, Litigation, And Dismissal Of The Underlying Action

The FAC alleges that on March 2, 2016 AUSAs Ahmed, Myhre, and Bogden "knowingly used false, fabricated, and manufactured evidence" and withheld evidence to obtain arrest warrants for Bundy and Payne. *Id.* ¶¶ 75-76.  Bundy and Payne were purportedly arrested on February 26, 2016. *Id.* ¶ 77.

Thereafter, according to Plaintiffs, "AUSAs Ahmed, Myhre and Bogden, directed that informants be planted among the Plaintiffs during their incarceration," offered "immediate release from custody" for other inmates to testify against Plaintiffs, and "prepared, instructed, and directed others to prepare fabricated investigative documents for those inmates to sign." *Id.* ¶¶ 45-46. The FAC claims that "[i]n furtherance of [the] conspiracy to keep the Plaintiffs falsely imprisoned . . . AUSAs Ahmed, Myhre, and Bogden argued to the Court that the Plaintiffs were the most dangerous, violent criminals in the history of Nevada." *Id.* ¶ 93. AUSAs Ahmed, Myhre, and Bogden also allegedly misled the court by representing: (1) that Mel Bundy brought his children to the standoff despite knowing that the children "were located many miles away in another state"; and (2) that the FBI was not involved in the matter despite knowing of the FBI's involvement. *Id.* ¶¶ 96-97.

According to the FAC, at an evidentiary hearing on January 8, 2018, "numerous *Brady* violations were discovered," including that "AUSAs Ahmed, Myhre and Bogden" "knowingly, intentionally and willfully" withheld evidence. *Id.* ¶ 108. Judge Navarro dismissed, with prejudice, the criminal charges against Bundy and Payne that same day. *Id.* ¶¶ 6 n.1, 84, 109-110.

### B.   Claims Alleged

Plaintiffs bring their claims against the United States pursuant to the Federal Tort Claims Act ("FTCA"). Plaintiffs allege that the United States is liable for the following torts under Nevada state law: (1) malicious prosecution; (2) intentional infliction of emotional distress ("IIED"); and (3) loss of consortium.[3] The background section of the FAC also asserts various constitutional and state statutory violations, but it is not clear from the FAC whether Plaintiffs intend those allegations to be additional claims for relief. *Compare* FAC ¶ 111A-E *with id.* ¶ 123C-E. The FAC expressly limits Plaintiffs' FTCA claims to the conduct of "DOI/FBI agents, BLM agents, and officers of those agencies[.]" FAC ¶ 123.

## III.   Legal Standards

### A.   Rule 12(b)(1) Legal Standard

A motion to dismiss under Rule 12(b)(1) tests the subject matter jurisdiction of the court. *Savage v. Glendale Union High School*, 343 F.3d 1036, 1039-40 (9th Cir. 2003). A federal court is presumed to

---

[3] The original complaint also included claims for false arrest and false imprisonment, but those claims are not asserted in the FAC.

1   lack jurisdiction in a particular case unless the contrary affirmatively appears.  *Cal. ex rel. Younger v.*

2   *Andrus*, 608 F.2d 1247, 1249 (9th Cir. 1979).  Courts will not infer evidence supporting subject matter

3   jurisdiction.  *Kokkonen v. Guardian Life Insurance Co.*, 511 U.S. 375, 377 (1994) ("It is to be presumed

4   that a cause lies outside [the federal court's] limited jurisdiction.").

5         "When subject matter jurisdiction is challenged under Federal Rule of Procedure 12(b)(1), the

6   plaintiff has the burden of proving jurisdiction in order to survive the motion."  *Tosco Corp. v.*

7   *Communities for Better Environment*, 236 F.3d 495, 499 (9th Cir. 2001).  Federal subject matter

8   jurisdiction must exist at the time the action is commenced.  *Morongo Band of Mission Indians v. Cal.*

9   *State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988), *cert. denied*, 488 U.S. 1006 (1989).

10        "A Rule 12(b)(1) jurisdictional attack may be facial or factual."  *Safe Air for Everyone v. Meyer*,

11  373 F.3d 1035, 1039 (9th Cir. 2004).  A facial attack "asserts that the allegations contained in a complaint

12  are insufficient on their face to invoke federal jurisdiction."  *Id*.  A factual challenge, on the other hand,

13  allows the court to look beyond the complaint without "presum[ing] the truthfulness of the plaintiff's

14  allegations."  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  On a Rule 12(b)(1) motion, the Court

15  can hear evidence outside the pleadings and resolve factual disputes, if necessary, without treating the

16  motion as one for summary judgment.  *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009);

17  *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1997).

18      **B.**    **Rule 12(b)(6) Legal Standard**

19        A Rule 12(b)(6) challenge disputes "the legal sufficiency of a claim."  *Navarro v. Block*, 250 F.3d

20  729, 732 (9th Cir. 2001).  Dismissal under Federal Rule of Civil Procedure 12(b)(6) is proper where there

21  is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable

22  legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  The Supreme Court's

23  decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662

24  (2009), make clear that conclusory allegations are not sufficient to withstand a challenge under

25  Rule 12(b)(6).  To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible

26  on its face."  *Twombly*, 550 U.S. at 570.  A claim has "facial plausibility" only if the complaint pleads

27  facts sufficient to allow "the court to draw the reasonable inference that the defendant is liable for the

28  misconduct alleged."  *Iqbal*, 556 U.S. at 678.

The Ninth Circuit has a two-part test that the plaintiff must pass to survive a motion to dismiss.

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.  Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

## IV.    Argument

As a result of the intentional tort exception to the FTCA's waiver of sovereign immunity, the Court lacks jurisdiction over this lawsuit because Plaintiffs' claims all arise out of the expressly excluded tort of malicious prosecution.  The entire lawsuit thus should be dismissed under Rule 12(b)(1).  Even if the Court had jurisdiction, however, the lawsuit still should be dismissed under Rule 12(b)(6) because each of Plaintiffs' claims is deficiently pleaded.  Here, the malicious prosecution claim fails because the FAC does not plead facts plausibly suggesting (1) that federal prosecutors did not exercise independent judgment when they decided to initiate criminal proceedings against Bundy and Payne, (2) a termination of the Underlying Action in Bundy's and Payne's favor, and/or (3) a lack of probable cause for the crimes with which Bundy and Payne were charged.  The IIED claim similarly fails because Plaintiffs do not allege (1) any physical manifestation of emotional distress or (2) any conduct by BLM and/or FBI employees that is extreme and outrageous.  And the derivative loss of consortium claim fails because Plaintiffs do not plead any other viable claims.  In short, Plaintiffs' lawsuit does not present any justiciable claims, and it should be dismissed under Rule 12(b)(1) and/or Rule 12(b)(6).

### A.    The Malicious Prosecution Claim Fails At The Jurisdictional And Pleading Levels

#### 1.    The Intentional Tort Exception Bars The Malicious Prosecution Claim

Although Plaintiffs' malicious prosecution claim is deficiently pleaded, the claim fails at the threshold jurisdictional level because the United States has not waived sovereign immunity as a result of the intentional tort exception to the FTCA's waiver of sovereign immunity. 28 U.S.C. § 2680(h).  "[T]he United States is a sovereign, and, as such, is immune from suit unless it has expressly waived such immunity and consented to be sued."  *Gilbert v. DaGrossa*, 756 F.2d 1455, 1458 (9th Cir. 1985) (citations omitted).  "Before [a court] may exercise jurisdiction over any suit against the government, [the court]

1   must have 'a clear statement from the United States waiving sovereign immunity, together with a claim

2   falling within the terms of the waiver.'"  *Jachetta v. United States*, 653 F.3d 898, 903 (9th Cir. 2011)

3   (quoting *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003) (citations omitted)).

4   "Such waiver cannot be implied, but must be unequivocally expressed."  *Gilbert*, 756 at 1458 (citation

5   omitted).  "The terms of the United States' consent to be sued in any court define that court's jurisdiction

6   to entertain the suit."  *Hodge v. Dalton*, 107 F.3d 705, 707 (9th Cir. 1997).  "Where a suit has not been

7   consented to by the United States, dismissal of the action is required."  *Gilbert*, 756 F.2d at 1458.  "'[A]

8   waiver of sovereign immunity is to be strictly construed, in terms of its scope, in favor of the sovereign.'"

9   *Vacek v. United States Postal Serv.*, 447 F.3d 1248, 1250 (9th Cir. 2006) (quoting *Dep't of the Army v.

10  Blue Fox, Inc.*, 525 U.S. 255, 261 (1999)).  The FTCA is a "limited waiver" of the United States' sovereign

11  immunity.  *LaBarge v. Cnty. of Mariposa*, 798 F.2d 364, 366 (9th Cir. 1986).

12          The intentional tort exception to the FTCA's waiver of sovereign immunity deprives the Court of

13  subject matter jurisdiction over Plaintiffs' malicious prosecution claim.  Specifically, Section 2680(h)

14  unambiguously demonstrates that claims against the United States "arising out of" "malicious

15  prosecution" are prohibited.  28 U.S.C. § 2680(h); *see also Manansingh v. United States*, No. 21-16192,

16  2023 WL 7295184, at *2 (9th Cir. 2023) ("Under 28 U.S.C. § 2680(h), the United States is not liable for

17  "[a]ny claim arising out of . . . malicious prosecution").  As such, under the plain terms of the FTCA, there

18  is no jurisdiction over Plaintiffs' malicious prosecution claim.

19          Section 2680(h), by its own terms, does not apply to claims based on the "acts or omissions of

20  investigative or law enforcement officers," but courts universally have concluded that "[f]ederal

21  prosecutors do not qualify as investigative or law enforcement officers[.]"  *Manansingh*, 2023 WL

22  7295184, at *2; *O'Shaughnessy v. United States*, No. 22-cv-01039-WQH-EJY, 2023 WL 8018292, at *9

23  (D. Nev. Nov. 20, 2023) ("Federal courts interpreting [Section 2680(h)] have universally concluded that

24  federal prosecutors are not 'investigative or law enforcement officers'").  Indeed, the sovereign immunity

25  bar to malicious prosecution claims extends to cases where federal prosecutors are alleged to have

26  assumed the role of investigators.  *O'Shaughnessy*, 2023 WL 8018292, at *9 ("expanding the definition

27  of 'investigative or law enforcement officers' to include any prosecutors who exceeded their lawful

28  authority by assuming the role of investigators is not supported by the statutory language in § 2680, which

is squarely focused on the legal powers possessed by the individuals at issue rather than such individuals' alleged conduct").  Thus, to the extent Plaintiffs' malicious prosecution claim is premised on the conduct of federal prosecutors, there is no jurisdiction over the claim, and it should be dismissed.

Moreover, under these alleged facts, Plaintiffs cannot avoid the jurisdictional consequences of Section 2680(h) by limiting their FTCA claims, including the malicious prosecution claim, to the conduct of "DOI/FBI agents, BLM agents, and officers of those agencies[.]"  FAC ¶ 123.  The FAC's allegations demonstrate that the purportedly wrongful conduct leading to Bundy's and Payne's prosecution *all* occurred "[u]nder the direction, guidance, and control" of federal prosecutors.  *Id.* ¶ 31.  And Plaintiffs assert that "AUSAs Ahmed, Myhre and Bogden" knowingly and intentionally directed *every* allegedly wrongful act that led to Bundy's and Payne's prosecution.  As a result, the malicious prosecution claim—even if limited to FBI and BLM employee conduct—is subject to the intentional tort exception in Section 2680(h).  *See, e.g.*, *Davis v. United States*, No. 03-cv-1800, 2004 WL 324880, at *6 (S.D.N.Y. Feb. 18, 2004) (dismissing malicious prosecution claim, including allegations of misconduct by a United States customs agent, as a result of the intentional tort exception in Section 2680(h) because "federal prosecutors controlled [the plaintiff's] prosecution from the outset"); *Garcia-Valasquez v. United States*, No. 13-cv-1038, 2014 WL 3756378, at *4 (W.D. Tex. July 29, 2014) (holding that "[a]t best, Plaintiff's claims could be understood as being directed towards the United States attorneys who prosecuted his removal action" and dismissing the case because "Plaintiff has not established that his false imprisonment or malicious prosecution claims arose out of the actions or omissions of investigative or law enforcement officers"); *Vander Zee v. Reno*, No. 95-50482, 1996 WL 625346, at *4 (5th Cir. Oct. 4, 1996) (rejecting the plaintiff's "attempts to evade the strictures of section 2680(h) by attributing the acts that form the basis of these claims to agents of the Federal Bureau of Investigation" because the allegations showed that the prosecution resulted from Assistant United States Attorney actions).

Here, the intentional tort exception to the FTCA prevents the Court from exercising jurisdiction over the malicious prosecution claim in its entirety, and the claim should be dismissed under Rule 12(b)(1).

### 2. The Malicious Prosecution Claim Regarding FBI And BLM Conduct Is Deficiently Pleaded And Should Be Dismissed Under Rule 12(b)(6)

Assuming, *arguendo*, that the Court has jurisdiction over a malicious prosecution claim limited to

1  the conduct of FBI and BLM employees, such a claim still cannot survive a Rule 12(b)(6) challenge under

2  the facts alleged in this case.[4]   To state a claim for malicious prosecution under Nevada state law, a plaintiff

3  must allege facts plausibly establishing (1) that the defendant lacked probable cause to initiate the

4  prosecution, (2) malice, (3) the prior criminal proceedings were terminated in his favor, and (4) he suffered

5  damages.  *Friedman v. United States*, No. 18-cv-857-JCM-VCF, 2019 WL 121965, at *4 (D. Nev. Jan. 7,

6  2019).   Moreover, prosecutors are presumed to have exercised independent prosecutorial judgment, and

7  the filing of a criminal complaint typically immunizes investigating officers from liability.  *Smiddy v.*

8  *Varney*, 665 F.2d 261, 266 (9th Cir. 1981), *overruled on other grounds by Beck v. City of Upland*, 527

9  F.3d 853, 865 (9th Cir. 2008).

10      Here, the FAC's allegations, accepted as true, demonstrate that the presumption of independent

11  prosecutorial judgment bars the malicious prosecution claim.  The FAC also fails to plead the favorable

12  termination and lack of probable cause elements of a viable malicious prosecution claim.  Each of these

13  three pleading deficiencies independently requires dismissal of Plaintiffs' malicious prosecution claim.

14      **(i)      Plaintiffs Do Not Plead Facts Regarding FBI And BLM Employee**
           **Conduct Sufficient To Overcome The Presumption Of Independent**
15           **Prosecutorial Judgment**

16      The malicious prosecution claim should be dismissed because the FAC does not plead facts about

17  FBI and BLM employee conduct—separate from the conduct allegedly "orchestrated by AUSAs Ahmed,

18  Myhre and Bogden"—to overcome the presumption that federal prosecutors exercised independent

19  judgment when they initiated criminal proceedings against Bundy and Payne.  In fact, the FAC's

20  allegations establish that *every* act that led to Bundy's and Payne's prosecution was "direct[ed], guid[ed]

21  and control[ed]" by AUSAs Ahmed, Myhre, and Bogden.  FAC ¶ 31-32.  Plaintiffs thus do not plead a

22  cognizable malicious prosecution claim regarding BLM and FBI employee conduct.

23      "Ordinarily, the decision to file a criminal complaint is presumed to result from an independent

24  determination on the part of the prosecution, and thus, precludes liability for those who participated in the

25

26      [4] In this FTCA context, the Rule 12(b)(6) arguments in this motion are also Rule 12(b)(1)
     jurisdictional challenges.  *See Brownback v. King*, 141 S. Ct. 740, 749 (2021) ("in the unique context of
27   the FTCA, all elements of a meritorious claim are also jurisdictional"); *see also id.* at 750 n.8 ("In cases
     such as this one where a plaintiff fails to plausibly allege an element that is both a merit element of a claim
28   and a jurisdictional element, the district court may dismiss the claim under Rule 12(b)(1) or Rule 12(b)(6).
     Or both.  The label does not change the lack of subject-matter jurisdiction.").

1    investigation or filed a report that resulted in the initiation of proceedings." *Awabdy v. City of Adelanto*,

2    368 F.3d 1062, 1067 (9th Cir. 2004); *Kelley v. City of Henderson*, No. 15-cv-02204, 2016 WL 4473420,

3    at *3 (D. Nev. Aug. 23, 2016) (dismissing malicious prosecution claim and holding that law enforcement

4    officers "are not liable for damages suffered by the arrested person after a district attorney files charges

5    unless the presumption of independent judgment by the district attorney is rebutted") (quoting

6    *Blankenhorn v. Cty. of Orange*, 485 F.3d 463, 482 (9th Cir. 2007)); *Crain v. Nevada*, No. 16-cv-00406-

7    JAD-PAL, 2016 WL 7422643, at *4 (D. Nev. Dec. 21, 2016), *aff'd* 724 F. App'x 591 (9th Cir. 2018)

8    (same); *Wormwood v. N. Las Vegas Police Dep't*, No. 15-cv-01438-JAD-GWF, 2016 WL 6915300, at *5

9    (D. Nev. Nov. 22, 2016) (same).  As such, a malicious prosecution claim can only be brought against

10   officers "who improperly exerted pressure on the prosecutor, knowingly provided misinformation to him,

11   concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively

12   instrumental in causing the initiation of legal proceedings." *Awabdy*, 368 F.3d at 1067 (citation omitted).

13   This means that the "[f]iling of a criminal complaint immunizes investigating officers . . . from damages

14   suffered thereafter because it is presumed that the prosecutor filing the complaint exercised independent

15   judgment[.]" *Smiddy*, 665 F.2d at 266.  "When a plaintiff pleads no evidence to rebut the presumption of

16   prosecutorial independence, dismissal is appropriate."  *Jones v. Keitz*, No. 16-cv-01725, 2017 WL

17   3394121, at *4 (E.D. Cal. Aug. 7, 2017), *aff'd* 738 F. App'x 503 (9th Cir. 2018).

18          Accepting the FAC's allegations as true, this is not a case in which FTCA liability might attach to

19   a rogue law enforcement officer's conduct.  There are no allegations in the FAC that any BLM and/or FBI

20   employee made "actively instrumental" misrepresentations to or put improper pressure on an unsuspecting

21   prosecutor for the purpose of "causing the initiation of legal proceedings."  *Awabdy*, 368 F.3d at 1067.

22   Plaintiffs' allegations instead repeatedly and uniformly suggest the opposite scenario, *i.e.*, that *federal

23   prosecutors* intentionally and knowingly directed efforts to fabricate and/or withhold evidence and elicit

24   misleading statements during the investigative phase and in front of the grand jury for the purpose of

25   securing criminal indictments.  In other words, the alleged actions of BLM and FBI employees *were not*

26   "actively instrumental" in causing Bundy's and Payne's prosecutions; according to the FAC, it was the

27   federal prosecutors' fully informed decisions and intentional conduct, from the outset, that caused those

28   prosecutions.  *Awabdy*, 368 F.3d at 1067.

The Ninth Circuit has affirmed Rule 12(b)(6) dismissals of malicious prosecution claims under similar circumstances. *See Jones v. Keitz*, 738 F. App'x 503, 503 (9th Cir. 2018) (affirming Rule 12(b)(6) dismissal of malicious prosecution claim where "plaintiffs failed to allege facts sufficient to show that former District Attorney Keitz did not 'exercise[] independent judgment in determining that probable cause for [plaintiffs'] arrest exist[ed]'") (quoting *Smiddy*, 665 F.2d at 266); *see also Crain v. Nevada*, 724 F. App'x 591, 592 (9th Cir. 2018) (affirming Rule 12(b)(6) dismissal where the plaintiff did not allege facts rebutting the presumption of independent judgment).  District courts in Nevada and throughout the Ninth Circuit also have dismissed malicious prosecution claims under Rule 12(b)(6) on analogous grounds.  *See Crain*, 2016 WL 7422643, at *4 (dismissing malicious prosecution claim in part because the complaint "does not allege or offer any facts" to show that the prosecution was initiated contrary to the prosecutor's independent judgment); *Wormwood*, 2016 WL 6915300, at *5 (dismissing malicious prosecution claim because the plaintiff "does not allege any facts to show that the NLVPD defendants took any steps to . . . otherwise influence the independent judgment of the district attorneys"); *Washington v. White*, No. 18-cv-00333, 2018 WL 2287676, at *5 (N.D. Cal. May 18, 2018) (dismissing malicious prosecution claim where "allegations, on their face, are insufficient to overcome" the presumption of independent prosecutorial judgment); *Fallay v. San Francisco City & Cnty.*, No. 08-cv-2261, 2015 WL 7874312, at *6 (N.D. Cal. Dec. 4, 2015) (dismissing malicious prosecution claim because the plaintiff "offers no evidence that any of the alleged conduct caused the District Attorney to act contrary to his independent judgment") (quotation marks omitted); *Pfaendler v. Town of Sahuarita*, No. 20-cv-00188, 2020 U.S. Dist. LEXIS 239678, at *17 (D. Ariz. Dec. 18, 2020) (same); *Gilton v. City and Cnty. of San Francisco*, No. 22-cv-7697, 2023 WL 5600082, at *8-9 (N.D. Cal. Aug. 29, 2023) (same).

Accepting the FAC's allegations as true, the United States Attorney's Office initiated criminal proceedings against Bundy and Payne with full knowledge and active participation in every event alleged in the FAC.  Under these alleged facts, a malicious prosecution claim limited to the conduct of FBI and BLM employees cannot survive because Plaintiffs fail to allege any facts to overcome the presumption that federal prosecutors exercised independent judgment when they initiated criminal proceedings against Bundy and Payne.  *Jones*, 738 F. App'x at 503.  The malicious prosecution claim should be dismissed.

1

2

### (ii)   Plaintiffs Do Not Plead Facts Demonstrating A Favorable Termination

3        The malicious prosecution claim also fails for the separate reason that Plaintiffs do not plead facts

4   showing that the Underlying Action terminated in Bundy's and Payne's favor in a legally relevant manner.

5   A malicious prosecution claim under Nevada state law requires a plaintiff to allege facts plausibly

6   establishing that the prior criminal proceedings were terminated in his favor.  *Friedman*, 2019 WL 121965,

7   at *4 (citing *LaMantia v. Redisi*, 118 Nev. 27, 30 (2002) (citation omitted)).   Nevada federal courts

8   interpreting Nevada state law, as well as California state courts interpreting California state law, have held

9   that favorable termination is an essential element of the tort of malicious prosecution.  *Anderson v. United*

10  *States*, No. 18-cv-02173-JAD-GWF, 2019 WL 3776999, at *2 (D. Nev. Aug. 9, 2019) (resolving criminal

11  proceeding via plea "does not equate to a favorable termination," which is an essential element of a

12  malicious prosecution claim); *see also Staffpro, Inc. v. Elite Show Servs., Inc.*, 136 Cal. App. 4th 1392,

13  1400 (2006).   Nevada state courts are silent regarding what constitutes "favorable termination" for

14  purposes of a malicious prosecution claim.   Under California law, however, the favorable termination

15  element "requires a termination reflecting the merits of the action and plaintiff's innocence of the

16  misconduct."[5]  *See Mills v. City of Covina*, 921 F.3d 1161, 1170-71 (9th Cir. 2019) (citing *Pattiz v. Minye*,

17  61 Cal. App. 4th 822, 826 (1998)); *Villa v. Cole*, 4 Cal. App. 4th 1327, 1135 (1992).  A recent decision

18  from this District found that Nevada would adopt the same "favorable termination" standard as California.

19  *Manansingh v. United States*, No. 20-cv-01139-DWM, 2024 WL 1638638, at *7 (D. Nev. Apr. 15, 2024).

20       "The theory underlying the requirement of favorable termination is that it tends to indicate the

21  innocence of the accused."  *Jaffe v. Stone*, 18 Cal. 2d 146, 150 (1941).  Thus, a termination is "not

22  necessarily favorable simply because the party prevailed in the prior proceeding; the termination must

23  relate to the merits of the action by reflecting either on the innocence of or lack of responsibility for the

24  misconduct alleged against him."  *Campbell v. City of Bakersfield*, No. 04-cv-5585, 2006 WL 2054072,

25  at *20 (E.D. Cal. July 21, 2006) (quoting *Sagonowsky v. More*, 64 Cal. App. 4th 122, 128 (1998)).  A

26

27

28       [5] Where Nevada law is silent, Nevada looks to California law for direction.  *Coryell v. United States*, No. 18-cv-00593-GMN-NJK, 2019 WL 720972 (D. Nev. Feb. 20, 2019); *Hiekel v. 268 Ltd.*, 887 F.2d 1089, n.3 (9th Cir. 1989).

1  plaintiff must "show more than a mere dismissal of the underlying action; he or she must show facts

2  establishing his or her innocence." *Fetters v. Cty. of Los Angeles*, 243 Cal. App. 4th 825, 843 (2016).  As

3  the Ninth Circuit has observed, "if the dismissal is on technical grounds, for procedural reasons, or for

4  any other reason not inconsistent with [] guilt, it does not constitute a favorable termination." *Mills*, 921

5  F.3d at 1171 (quoting *Jaffe*, 18 Cal. 2d at 150).  The reasons underlying a cognizable favorable termination

6  "must 'reflect[] the opinion of either the court or the prosecuting party that the action *would not succeed*.'"

7  *Gressett v. Contra Costa Cnty.*, No. 12-cv-3798, 2015 WL 1054975, at *6 (N.D. Cal. Mar. 10, 2015)

8  (quoting *Pattiz*, 61 Cal. App. 4th at 827) (emphasis in original).  "If the resolution of the underlying action

9  leaves some doubt concerning a plaintiff's innocence or liability, it is not a favorable termination sufficient

10  to allow a cause of action for malicious prosecution."[6]  *Mills*, 921 F.3d at 1171 (quoting *Pattiz*, 61 Cal.

11  App. 4th at 826).  The element of favorable termination is a legal question for the Court to decide.  *Womack*

12  *v. Cnty. of Amador*, 551 F. Supp. 2d 1017, 1032 (E.D. Cal. 2008).

13          Here, the FAC fails to allege *facts* plausibly showing that Bundy and/or Payne were innocent of

14  the criminal charges in the Underlying Action.  Judge Navarro's comments during the January 8, 2018

15  evidentiary hearing are notably silent as to whether Bundy and Payne were innocent of the crimes of

16  "conspiracy, conspiracy to impede federal officers, assaulting, threatening, extorting, and obstructing

17  federal officers, and four (4) counts of using firearms in crimes of violence[.]"  *Compare* FAC ¶ 109.A-

18  BB *with id.* ¶ 27.  Instead, Judge Navarro dismissed the criminal charges against Bundy and Payne on due

19  process grounds related to discovery violations and purported prosecutorial misstatements and, critically,

20  "because no lesser sanction would adequately . . . deter future investigatory and prosecutorial misconduct."

21  *Id.* ¶ 109.Y.  Thus, Judge Navarro's dismissal was for technical or procedural reasons; it had no bearing

---

[6] The Supreme Court's decision in *Thompson v. Clark*, 596 U.S. 36 (2022), does not—and cannot—remove the essential element of a favorable termination for a *state law* malicious prosecution claim.  Instead, *Thompson*'s holding is limited to "a Fourth Amendment claim under 42 U.S.C. § 1983 for malicious prosecution." *Id.* at 39.  As such, *Thompson* does not apply to claims brought under state law or pursuant to the FTCA applying substantive state law. *See Neaderbaomer v. United States*, No. 20-cv-07888, 2023 WL 5505906, at *3 (C.D. Cal. Jan. 11, 2023) (noting that the holding in *Thompson* did not apply to a California state law malicious prosecution claim brought under the FTCA); *Johnson v. United States*, No. 22-cv-00747, 2022 WL 4180455, at *8 n.16 (N.D. Cal. Sept. 12, 2022) (similar); *see also Maqablh v. Heinz*, No. 16-cv-289, 2023 WL 6392742, at *4 (W.D. Ky. Sept. 29, 2023) (*Thompson*'s holding "had no bearing on the elements of a Kentucky malicious prosecution claim"); *Manansingh*, 2024 WL 1638638, at *7 (holding that *Thompson* does not apply to state law malicious prosecution claims).

on Bundy's and/or Payne's innocence of the charged criminal misconduct and it did not suggest that the prosecution would not succeed.  *Mills*, 921 F.3d at 1171; *Gressett*, 2015 WL 1054975, at *6.

Multiple courts have found that court dismissals under similar circumstances are not favorable terminations for purposes of a malicious prosecution claim.  *See, e.g.*, *Gressett*, 2015 WL 1054975, at *7 (finding no favorable termination where the underlying criminal court "granted the motion to dismiss the indictment on state constitutional due process grounds"); *Pattiz*, 61 Cal. App. 4th at 827 ("dismissal due to . . . failure to comply with discovery orders did not reflect the innocence of [the criminal defendant] or the lack of merits of the action") (citation and quotation mark omitted); *see also Aleman v. City of Bakersfield*, No. 11-cv-2006, 2013 WL 3936740, at *12 (E.D. Cal. July 30, 2013) (plaintiff failed to show a favorable termination of criminal charges reflecting his innocence where the critical evidence was suppressed due to a warrantless entry, which did not indicate innocence but rather only an unlawful entry by the officers).

In short, the FAC does not allege facts showing that Bundy and Payne were innocent of the charged misconduct.  At best, Judge Navarro's dismissal was "not inconsistent" with Bundy's and Payne's guilt, but that is not "a favorable termination sufficient to allow a cause of action for malicious prosecution." *Mills*, 921 F.3d at 1171.  The malicious prosecution claim should be dismissed on this independent basis.

### (iii)    Plaintiffs Do Not Plead Facts Showing A Lack Of Probable Cause

Finally, the malicious prosecution claim also should be dismissed for the independent reason that the FAC's allegations fail to plausibly establish a lack of probable cause for Bundy's and Payne's prosecution.  "Probable cause exists when the facts and circumstances within the officer's knowledge are sufficient to cause a reasonably prudent person to believe that a crime has been committed." *Hickman v. Mead*, No. 2:18-cv-00404-GMN-NJK, 2019 WL 4139434, at *5 (D. Nev. Aug. 30, 2019) (quoting *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1053 (9th Cir. 2009)).  Probable cause "is an absolute defense to malicious prosecution." *Hymon v. Las Vegas Metro. Police Dep't Officer Rose*, No. 23-cv-01276-GMN-DJA, 2023 WL 7157839, at *3 (D. Nev. Oct. 30, 2023).  The probable cause element is determined by the court in the malicious prosecution context. *Hickman*, 2019 WL 4139434, at *5.

Here, federal prosecutors exercised their independent judgment and decided that probable cause supported Bundy's and Payne's prosecution. *Supra* Part IV.A.2.i.  A grand jury then indicted Bundy and

1    Payne not once, but two times, thereby repeatedly finding probable cause supported their prosecutions.

2    Underlying Action at ECF Nos. 5 & 27.  Judge Navarro ultimately dismissed those criminal charges, but

3    that dismissal does not suggest that Bundy and Payne were innocent of the charged criminal misconduct

4    or that their prosecutions lacked probable cause.  *Supra* Part IV.A.2.ii.  Under these alleged facts, the FAC

5    fails to show a lack of probable cause in two independent ways.

6                    **(a)    The FAC Does Not Plead That The False Testimony And
                             Evidence Was Relevant To The Charged Crimes**

7

8            Plaintiffs do not plead facts showing that the purportedly false evidence presented to the grand

9    jury had any relevancy to the elements of the crimes for which Bundy and Payne were charged and/or the

10   criminal conduct Bundy and Payne were alleged to have engaged in.  When assessing probable cause,

11   courts "look to the elements of the underlying crime—and in particular, in a malicious-prosecution case

12   like this one, to the elements of the *charged* crime." *Butler v. Smith*, 85 F.4th 1102, 1116 (11th Cir. 2023)

13   (emphasis in original); *Dunning v. United States*, No. 17-cv-43, 2022 WL 815190, at *3 (N.D. Ind. Mar.

14   17, 2022) (in the malicious prosecution context, "[p]robable cause must take into consideration the

15   elements of the crime being charged") (citing *Abbott v. Sangamon Co.*, 705 F.3d 706, 725 (7th Cir. 2013)).

16           Here, the FAC includes six allegations of false statements or fabricated evidence purportedly

17   presented to the grand jury (FAC ¶¶ 55-73):

18       •    AUSA Myhre "purposefully avoided" a grand juror's question and "proffered evasive

19            testimony" regarding Margaret Houston's "pin removal" to release the cattle (*id.* ¶ 57);

20       •    AUSA Myhre "knowingly, intentionally, and willfully" misled the grand jury about the

21            circumstances of Dave Bundy's April 6, 2014 arrest (*id.* ¶¶ 59-64);

22       •    AUSA Ahmed "knowingly, intentionally, and willfully elicited false testimony" regarding

23            Mel Bundy's threats to federal officers (*id.* ¶ 65);

24       •    AUSA Ahmed "knowingly, intentionally, and willfully elicited false and misleading

25            testimony" regarding BLM threat assessments of the Bundys (*id.* ¶ 66);

26       •    AUSA Ahmed "knowingly, intentionally, and willfully elicited and provided false and

27            misleading testimony" regarding the United States' use of snipers (*id.* ¶ 67); and

28       •    AUSA Ahmed "materially misled" the grand jury regarding the use of First Amendment

1   zones (*id.* ¶ 68-73).[7]

2   The FAC undertakes no effort to tie any of these allegedly false or misleading representations to the

3   elements of the crimes charged in the indictment, *i.e.*, "conspiracy, conspiracy to impede federal officers,

4   assaulting, threatening, extorting, and obstructing federal officers, and four (4) counts of using firearms

5   in crimes of violence."  FAC ¶ 27.  For example, neither the original indictment nor the superseding

6   indictment references First Amendment zones or BLM threat assessments (Underlying Action at ECF

7   Nos. 5 & 27), and the FAC makes no effort to tether the alleged representations to the grand jury about

8   those issues—whether true or false—"to the elements of the underlying crime[s]."  *Butler*, 85 F.4th at

9   1116.  As such, Plaintiffs fail to allege facts showing a lack of probable cause for the "*charged* crime[s]."

10  *Id.* (emphasis in original).  And although the indictments mention Payne's statements about BLM snipers

11  (FAC ¶ 92; Underlying Action at ECF Nos. 5 ¶ 58 & 27 ¶ 88), the Ninth Circuit already held in the United

12  States' appeal of Judge Navarro's dismissal that representations that the criminal defendants lied about

13  feeling surrounded by snipers "do not appear to be elements of the crimes alleged[.]"  Underlying Action

14  at ECF No. 3306 (also available at *United States v. Bundy*, 968 F.3d 1019, 1044 (9th Cir. 2020)).

15  Similarly, there is nothing in the FAC that links any of the other allegedly fabricated evidence presented

16  to the grand jury to either (1) Bundy's and/or Payne's conduct (the FAC instead focuses almost exclusively

17  on other co-defendants' conduct) or (2) the elements of the crimes that Bundy and Payne were charged

18  with.  Nor does the FAC allege facts to demonstrate that the purportedly fabricated or false evidence

19  presented to the grand jury would have vitiated probable cause for *each* of the crimes Bundy and Payne

20  were charged with.  There is thus no basis for the Court to conclude that any individual criminal charge

21  was unsupported by probable cause.

22      In short, the FAC's factual allegations of false testimony and fabricated evidence are untethered

23  to the elements of the crimes Bundy and Payne were charged with.  *Butler*, 85 F.4th at 1116.  Assuming

24  for purposes of this Rule 12(b)(6) motion that the grand jury was presented with some false or fabricated

25

26  [7] Notably, according to the FAC's own allegations, *every one* of these grand jury events involve knowing, intentional, and willful conduct directed by federal prosecutors.  As such, even putting the
27  probable cause analysis aside, a malicious prosecution claim limited to FBI/BLM employee actions must be either (1) barred by the intentional tort exception to the FTCA (*supra* Part IV.A.1) or (2) subject to
28  dismissal because federal prosecutors exercised independent judgment when the federal prosecutors knowingly directed this conduct before the grand jury (*supra* Part IV.A.2.i).

1    evidence, Plaintiffs still do not plead facts showing a lack of probable cause for the charged crimes.

2                          **(b)     There Was Independent Probable Cause For The Prosecution**

3            The indictments also demonstrate that there was independent probable cause for Bundy's and

4    Payne's prosecution, even if it could be assumed (in the absence of facts alleged in the FAC) that the

5    purportedly false evidence presented to the grand jury was related to the elements of the charged crimes.[8]

6    In a malicious prosecution claim, even where a plaintiff claims that falsified evidence or false testimony

7    was presented to secure an indictment, "the existence of independent probable cause is an absolute

8    defense[.]"  *Scotti v. City of Phoenix*, 609 F. App'x 386, 387 (9th Cir. 2015) ("we must affirm the district

9    court because we conclude that probable cause—independent of the false information conveyed by

10   Freund—supported Scotti's arrest and prosecution"); *Smith v. Almada*, 640 F.3d 931, 938 (9th Cir. 2011)

11   (rejecting claim that an officer's "false statements and failure to disclose material information to the

12   prosecutor caused [his] malicious prosecution" because "even after correcting for the allegedly false and

13   omitted information[,] . . . probable cause supported [the] arrest . . . [and] prosecution").

14           Here, the indictments include lengthy recitations of Bundy's and Payne's criminal wrongdoing,

15   independent of the allegedly fabricated evidence purportedly presented to the grand jury.  For example,

16   the factual paragraphs of the superseding indictment repeatedly invoke Bundy's name, and many of the

17   events recounted in those paragraphs are unrelated to the allegedly fabricated evidence that Plaintiffs claim

18   was presented to the grand jury.  *See* Underlying Action at ECF No. 27 ¶¶ 51, 61, 78, 80, 83, 105, 143,

19   144, & 145.  The superseding indictment invokes Payne's name even more often than Bundy's and, again,

20   those allegations are broadly independent of the allegedly fabricated evidence purportedly presented to

21   the grand jury.  *See id.* ¶¶ 62, 87, 88, 94, 95, 96, 98, 100, 109, 117, & 118.

22           Simply stated, there was ample probable cause, independent of the purportedly falsified evidence

23   alleged in the FAC, to indict Bundy and Payne.  In the Ninth Circuit, that independent probable cause is

24   an "absolute defense" to the malicious prosecution claim.  *Scotti*, 609 F. App'x at 387.

25

26   _____

27          [8]  The Court can consider the indictments on this Rule 12(b)(6) motion because they are
     incorporated by reference in the FAC.  *Koala v. Khosla*, 931 F.3d 887 (9th Cir. 2019) ("When evaluating
     the sufficiency of a pleading under Fed. R. Civ. P. 12(b)(6), we review only the allegations in the
28   complaint and any attachments or documents incorporated by reference.").  Alternatively, the Court can
     take judicial notice of the indictments.  *Jones*, 2022 WL 16922048, at *2.

**B.      Plaintiffs' IIED Claim Fails At Both The Jurisdictional And Pleading Levels**

**1.      The Intentional Tort Exception Bars The IIED Claim Because The Substance Of The Conduct Relied Upon Constitutes An Excluded Tort**

Ninth Circuit precedent is clear that a court must "look[] beyond the labels used to determine whether a proposed claim is barred [under § 2680(h)]." *Snow-Erlin v. United States*, 470 F.3d 804, 808 (9th Cir. 2006) (alteration in original, citation and quotation marks omitted).  As such, if "the gravamen of Plaintiff's complaint is a claim for an excluded tort under § 2680(h), then the claim is barred." *Id.*; *see also Sheehan v. United States*, 896 F.2d 1168, 1172 (9th Cir. 1990) (barring an IIED claim under § 2680(h) if "in substance the conduct relied upon constituted a specifically excluded tort").  Here, it is indisputable that Plaintiffs' IIED claim arises out of the alleged malicious prosecution of Bundy and Payne, but malicious prosecution is a specifically excluded tort under the intentional tort exception to the FTCA.  *See* 28 U.S.C. § 2680(h).  As such, Plaintiffs' IIED claim is barred by Section 2680(h).  *Sheehan*, 896 F.2d at 1172.  And, as discussed above, Plaintiffs cannot avoid the jurisdictional consequences of Section 2680(h) by limiting the IIED claim to conduct by "DOI/FBI agents, BLM agents, and officers of those agencies" (FAC ¶ 123) because the FAC does not allege *any* conduct by FBI/BLM employees that is independent of the actions "orchestrated by" federal prosecutors.  *See supra* Part IV.A.1.

**2.      Plaintiffs' IIED Claim Is Also Deficiently Pleaded And Should Be Dismissed**

Assuming the IIED claim is not barred by Section 2680(h), the FAC still fails to plead facts establishing the essential elements of an IIED claim, and it is thus subject to dismissal under Rule 12(b)(6).  To establish a cause of action for IIED under Nevada law, a plaintiff must show:  "(1) extreme and outrageous conduct on the part of the defendant; (2) intent to cause emotional distress or reckless disregard for causing emotional distress; (3) that the plaintiff actually suffered extreme or severe emotional distress; and (4) causation." *O'Shaughnessy*, 2023 WL 8018292, at *12 (quoting *Miller v. Jones*, 114 Nev. 1291, 1299-1300 (1998)).  In Nevada, an IIED claim requires a plaintiff to demonstrate "some physical manifestation of emotional distress." *Friedman*, 2019 WL 121965, at *5 (citing *Betsinger v. D.R. Horton, Inc.*, 232 P.3d 433, 436 (Nev. 2010)).

1

### (i)     The FAC Does Not Allege Facts Establishing Physical Manifestation Of Emotional Distress

2

3      Plaintiffs' IIED claim fails because the FAC does not allege facts showing extreme or severe

4  emotional distress rising to the level of a "physical manifestation of emotional distress." *Friedman*, 2019

5  WL 121965, at *5; *PlayUp, Inc. v. Mintas*, No. 21-cv-02129-GMN-NJK, 2023 WL 2648018, at *6 (D.

6  Nev. Mar. 24, 2023) (dismissing IIED claim where the complaint "fails to allege any physical

7  manifestations of severe emotional distress"); *Staten v. Lowe's HIW, Inc.*, No. 13-cv-00972-RCJ-CWH,

8  2013 WL 5278640, at *4 (D. Nev. Sept. 17, 2013) (dismissing IIED claim where "Plaintiff alleges no

9  objectively verifiable physical manifestation of emotional distress nor any physical impact"); *Mireles v.

10  Infogroup/Opinion Research Corp.*, No. 11-cv-00503-RCJ-VPC, 2012 WL 78183, at *5 (D. Nev. Jan. 10,

11  2012) (under Nevada law, "generic mental anguish" cannot support an IIED claim); *Van Asdale v. Int'l

12  Game Tech.*, 549 F. App'x 611, 615 (9th Cir. 2013) ("To prove 'severe or extreme emotional distress' in

13  Nevada, a plaintiff typically must demonstrate that he or she has suffered some physical manifestation of

14  emotional distress.") (citation and quotation marks omitted).

15      Here, the FAC includes the following conclusory allegations of emotional distress:  "Plaintiffs

16  suffered severe emotional, physical, mental, occupational and financial distress" (FAC ¶ 8); Angela Bundy

17  "along with her children, were forced to endure . . . stress, mental, physical, emotional, and financial

18  anguish" (*id.* ¶ 28); "the ongoing stress and mental, physical and emotional anguish which Plaintiffs

19  continue to experience" (*id.* ¶ 110).  These assertions—none of which is a physical manifestation of

20  emotional distress—are conclusory allegations of "generic mental anguish" that cannot support a viable

21  IIED claim under Nevada state law.  *Mireles*, 2012 WL 78183, at *5; *Friedman*, 2019 WL 121965, at *5.

22

### (ii)    The FAC Does Not Allege Facts Showing That FBI And/Or BLM Employees Engaged In Extreme And Outrageous Conduct

23

24      Plaintiffs' IIED claim fails for the further reason that the FAC does not plead facts plausibly

25  establishing extreme and outrageous conduct by FBI and/or BLM employees.  "[E]xtreme and outrageous

26  conduct is that which is outside all possible bounds of decency and is regarded as utterly intolerable in a

27  civilized community." *Maduike v. Agency Rent-A-Car*, 114 Nev. 1, 4 (1998) (citation and quotation marks

28  omitted).  "[P]ersons must necessarily be expected and required to be hardened . . . to occasional acts that

are definitely inconsiderate and unkind." *Id.* (citation and quotation marks omitted).  Arrest, indictment, and detention do not qualify as "extreme and outrageous conduct" where that conduct was supported by probable cause.  *Bouari v. United States*, No. 21-cv-226-JCM-VCF, 2021 WL 4699233, at *5 (D. Nev. Oct. 7, 2021); *see also Brown v. Lever*, No. 17-cv-00828-JAD-PAL, 2018 WL 1903120, at *8 (D. Nev. Apr. 20, 2018) (dismissing IIED claim where the plaintiff alleged that he was arrested "without justification" because the alleged conduct was not outrageous as a matter of law).

Here, there was probable cause to indict Bundy and Payne.  *Supra* Parts IV.A.2.iii.a & IV.A.2.iii.b. Because Bundy's and Payne's indictments were supported by probable cause, Plaintiffs do not allege facts showing "extreme and outrageous conduct" to support an IIED claim.  *Bouari*, 2021 WL 4699233, at *5. Further, the alleged conduct at issue in Plaintiffs' IIED claim all occurred "[u]nder the direction, guidance, and control of AUSAs Ahmed, Myhre and Bogden" (FAC ¶ 31), and Plaintiffs do not allege facts showing that FBI and/or BLM employees—independent of the conduct that was allegedly "orchestrated" by federal prosecutors—engaged in "extreme and outrageous" conduct.  *Maduike*, 114 Nev. at 4.

## C.    The Loss Of Consortium Claim Fails At The Jurisdictional And Pleading Levels

Because the loss of consortium claim "aris[es] out of" the alleged malicious prosecution of Bundy and Payne, that claim is barred by the intentional tort exception and should be dismissed under Rule 12(b)(1).  28 U.S.C. § 2680(h); *supra* Part IV.B.1.

The "derivative" loss of consortium claim (FAC ¶ 123.E) also should be dismissed under Rule 12(b)(6) because Plaintiffs do not allege a claim upon which relief can be granted as to any of the underlying claims.  *Gonzales v. Las Vegas Metro. Police Dep't*, No. 14-cv-1827-JCM-GWF, 2015 WL 4424552, at *6 (D. Nev. July 20, 2015) (dismissing loss of consortium claim where the underlying claims were also dismissed); *Nichols v. City of Henderson*, No. 16-cv-01611-GMN-GWF, 2017 WL 3749497, at *4 (D. Nev. Aug. 29, 2017) ("in Nevada, a loss of consortium claim is a derivative claim and may accrue only to the extent that the other spouse has a cause of action against the alleged tortfeasors").

## D.    Sovereign Immunity Bars The Constitutional And Statutory Violation Allegations

The background section of the FAC claims that Plaintiffs' federal constitutional rights (under the First, Second, Fourth, Fifth, and Eighth Amendments), state constitutional rights (under Article 1 of the Nevada Constitution), and Nevada statutory rights (under Nevada Revised Statutes ("NRS") §§ 41.637,

244.364, 199.310 and 200.460) were violated.  FAC ¶ 111.A-E.  It is unclear whether Plaintiffs intend these background allegations to be independent bases for relief against the United States since they are not included in the one alleged claim for relief.  *Compare* FAC ¶ 111.A-E *with id.* ¶ 123.C-E.  However, to the extent the FAC seeks to recover damages for alleged constitutional and state statutory violations, the FAC fails to establish that the United States waived sovereign immunity for any such claim.

It is black-letter law that the FTCA's limited waiver of sovereign immunity does not encompass federal constitutional violations, and the Court thus does not have subject matter jurisdiction under the FTCA over any claim against the United States asserting a violation of federal constitutional rights. *F.D.I.C. v. Meyer*, 510 U.S. 471, 478 (1994) ("the United States simply has not rendered itself liable under § 1346(b) for constitutional tort claims"); *Whitehorn v. F.C.C.*, 235 F. Supp. 2d 1092, 1098 n.3 (D. Nev. 2002) ("Because constitutional tort claims are not cognizable under the FTCA, these must be dismissed.").

Plaintiffs also do not allege that a *private person* would be liable under Nevada state law for the violations of the Nevada state constitution and/or Nevada state statutes asserted here.  Pursuant to the FTCA, "the United States waives sovereign immunity 'under circumstances' where local law would make a '*private person*' liable in tort."  *United States v. Olson*, 546 U.S. 43, 44 (2005) (emphasis in original) (quoting 28 U.S.C. § 1346(b)(1)); *see also id.* at 46-47 (citing legislative history to establish the "purpose of FTCA was to make the tort liability of the United States 'the same as that of a private person under like circumstance, in accordance with the local law'").  The FTCA does not waive immunity for "action of the type that private persons could not engage in and hence could not be liable for under local law." *Sky Ad, Inc. v. McClure*, 951 F.2d 1146, 1147 n.2 (9th Cir. 1991) (citation and quotation marks omitted).  Accordingly, to state an FTCA claim within the scope of the United States' waiver of sovereign immunity, "a plaintiff must plausibly allege that 'the United States, if a private person, would be liable to the claimant' under state law[.]" *Brownback*, 141 S. Ct. at 749 (quoting 28 U.S.C. § 1346(b)(1)); *see also Bolt v. United States*, 509 F.3d 1028, 1031 (9th Cir. 2007) ("[T]he party seeking federal jurisdiction . . . must therefore demonstrate that [the state's] laws would recognize a [tort] cause of action . . . against a private individual for like conduct.").  Here, the state constitutional and statutory provisions invoked by Plaintiffs govern prototypical *governmental* conduct, such as freedom of speech, right to assemble, right to bear arms, excessive bail and fines, etc.  There is no basis to conclude that a *private person* could be

1  liable for alleged violations of these state constitutional or statutory provisions, much less that a private

2  person could engage in these alleged violations in the first place.  *McClure*, 951 F.2d at 1147 n.2.

3  Accordingly, any claims regarding alleged state constitutional and statutory violations should be dismissed

4  for lack of subject matter jurisdiction because Plaintiffs do not demonstrate that a private person would

5  be liable for them under Nevada state law.  *Brownback*, 141 S. Ct. at 749.

6         Finally, even assuming the Court has subject matter jurisdiction over these claims, they still should

7  be dismissed under Rule 12(b)(6).  Among other factual pleading deficiencies, it is unclear from the face

8  of the FAC when each of these claims accrued and whether Plaintiffs timely exhausted each claim within

9  two years of its accrual date.  28 U.S.C. § 2401(b); *see also O'Shaughnessy*, 2023 WL 8018292, at *14.

10        **E.      The Demands For Attorney's Fees And Prejudgment Interest Are Barred**

11        Assuming any claim could survive this motion to dismiss, the prayer for relief's request for

12  attorney's fees and prejudgment interest should be dismissed because the Court does not have subject

13  matter jurisdiction over either of these demands.  *Anderson v. United States*, 127 F.3d 1190, 1191-92 (9th

14  Cir. 1997) ("Congress has not waived the government's sovereign immunity for attorneys' fees and

15  expenses under the FTCA"); 28 U.S.C. § 2674 (exempting the United States from liability "for interest

16  prior to judgment"); *Pina v. United States ex rel. United States Postal Serv.*, No. 22-cv-01946-ART-VCF,

17  2023 WL 5717290, at *3 (D. Nev. Sept. 1, 2023) ("The FTCA precludes any award for attorney's fees or

18  prejudgment interest.").

19  **V.     Conclusion**

20        For the foregoing reasons, the United States respectfully asks the Court to grant this motion to

21  dismiss.

22  DATED:  April 30, 2024

23                                        ISMAIL J. RAMSEY
                                          United States Attorney
24
                                          */s/ Jevechius D. Bernardoni*
25                                        JEVECHIUS D. BERNARDONI
                                          Assistant United States Attorney
26                                        Acting Under Authority Conferred
                                          by 28 U.S.C. § 515
27
                                          Attorneys for the United States of
28                                        America