PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney
PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
JEVECHIUS D. BERNARDONI (CABN 281892)
Assistant United States Attorney
Acting Under Authority Conferred by 28 U.S.C. § 515

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone:  (415) 436-7224
    Facsimile:  (415) 436-6748
    jevechius.bernardoni@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| RYAN BUNDY, *et al.*,<br><br>    Plaintiffs,<br><br>  v.<br><br>UNITED STATES OF AMERICA, *et al.*,<br><br>    Defendants. | Case No. 2:23-cv-01724-RFB-VCF<br><br>**THE UNITED STATES OF AMERICA'S NOTICE OF MOTION AND MOTION TO DISMISS THE SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES** |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION TO DISMISS ................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 1

I.  Introduction ............................................................................................................. 1

II.  Background ............................................................................................................... 3

    A.  Factual Background Alleged In The SAC .................................................... 3

        1.  2014 Cattle Impoundment Operation And Standoff ........................ 3

        2.  Grand Jury Proceedings And Indictment ....................................... 4

        3.  Arrest, Litigation, And Dismissal Of The Underlying Action............... 5

    B.  Claims Alleged............................................................................................ 6

    C.  Procedural History ...................................................................................... 6

III.  Legal Standards........................................................................................................ 6

    A.  Rule 12(b)(1) Legal Standard ..................................................................... 6

    B.  Rule 12(b)(6) Legal Standard ..................................................................... 7

IV.  Argument ................................................................................................................. 8

    A.  The Court Lacked Jurisdiction When This Lawsuit Was Filed, And The SAC Cannot—And Does Not—Cure The Jurisdictional Defects In This Lawsuit ................................... 8

        1.  Plaintiffs Cannot Cure The Defective Jurisdictional Facts In This Lawsuit .......... 9

        2.  Even If Plaintiffs Could Amend, The Amendments Here Fundamentally Contradict The FAC's Allegations And Are Thus Impermissible....................... 10

    B.  The SAC Does Not Remedy The Pleading Deficiencies That The United States Identified In Its Motion To Dismiss The FAC, And The Lawsuit Is Thus Also Subject To Dismissal Under Rule 12(b)(6) .............. 11

        1.  The Malicious Prosecution Claim Fails At The Pleading Level For The Same Three Reasons That Were At Issue In The Last Motion To Dismiss ................. 11

            (i)  The SAC Again Fails To Plead Affirmative Facts To Overcome The Presumption Of Independent Prosecutorial Judgment.............................. 12

            (ii)  The SAC Again Fails To Plead Facts Showing A Favorable Termination ................................................................................................... 14

            (iii)  The SAC Again Fails To Plead A Lack Of Probable Cause.................... 16

        2.  The IIED Claim Fails Because The SAC Does Not Allege Extreme And Outrageous Conduct........................................................................ 19

3.    The Derivative Loss Of Consortium Claim Fails Because The Other Claims Are All Subject To Dismissal ........................................................................................... 20

C.    Sovereign Immunity Bars The Constitutional And Statutory Violation Allegations ....... 20

V.    Conclusion ..................................................................................................................... 22

## **TABLE OF AUTHORITIES**

### **Cases**

*Abbott v. Sangamon Co.*, 705 F.3d 706 (7th Cir. 2013) ................................................... 17

*Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt.*, 744 F.3d 595 (9th Cir. 2014) ............... 11

*Anderson v. United States*, No. 18-cv-02173-JAD-GWF, 2019 WL 3776999 (D. Nev. Aug. 9, 2019) .. 14

*Awabdy v. City of Adelanto*, 368 F.3d 1062 (9th Cir. 2004) ................................................ 12

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696 (9th Cir. 1990) ....................................... 7

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................................... 7

*Blankenhorn v. Cty. of Orange*, 485 F.3d 463 (9th Cir. 2007) ............................................. 12

*Bolt v. United States*, 509 F.3d 1028 (9th Cir. 2007) .................................................... 21

*Bouari v. United States*, No. 21-16762, 2023 WL 1794241 (9th Cir. Feb. 7, 2023) ..................... 16, 20

*Bouari v. United States*,

      No. 21-cv-226-JCM-VCF, 2021 WL 4699233 (D. Nev. Oct. 7, 2021) ........................... 16, 19, 20

*Brown v. Lever*, No. 17-cv-00828-JAD-PAL, 2018 WL 1903120 (D. Nev. Apr. 20, 2018) ................... 20

*Brownback v. King*, 592 U.S. 209 (2021) .............................................................. 21, 22

*Butler v. Smith*, 85 F.4th 1102 (11th Cir. 2023) ...................................................... 17, 18

*Cal. ex rel. Younger v. Andrus*, 608 F.2d 1247 (9th Cir. 1979) ........................................... 7

*Campbell v. City of Bakersfield*, No. 04-cv-5585, 2006 WL 2054072 (E.D. Cal. July 21, 2006) ........... 15

*Coryell v. United States*, No. 18-cv-00593-GMN-NJK, 2019 WL 720972 (D. Nev. Feb. 20, 2019) ...... 14

*Crain v. Nevada*, 724 F. App'x 591 (9th Cir. 2018) ...................................................... 13

*Crain v. Nevada*, No. 16-cv-00406-JAD-PAL, 2016 WL 7422643 (D. Nev. Dec. 21, 2016) .......... 12, 13

*Davis v. United States*, No. 03-cv-1800, 2004 WL 324880 (S.D.N.Y. Feb. 18, 2004) ....................... 8

*Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255 (1999) ................................................. 8

*Doe v. Hagee*, 473 F. Supp. 2d 989 (N.D. Cal. 2007) ..................................................... 6

*Dreier v. United States*, 106 F.3d 844 (9th Cir. 1997) ................................................... 7

*Dunning v. United States*, No. 17-cv-43, 2022 WL 815190 (N.D. Ind. Mar. 17, 2022) ..................... 17

*F.D.I.C. v. Meyer*, 510 U.S. 471 (1994) ................................................................ 21

*Falise v. American Tobacco Co.*, 241 B.R. 63 (E.D.N.Y. 1999) ......................................... 9, 10

*Fallay v. San Francisco City & Cnty.*, No. 08-cv-2261, 2015 WL 7874312 (N.D. Cal. Dec. 4, 2015)... 13

*Fetters v. Cty. of Los Angeles*, 243 Cal. App. 4th 825 (2016) ............................................................. 15, 16

*Friedman v. United States*, No. 18-cv-857-JCM-VCF, 2019 WL 121965 (D. Nev. Jan. 7, 2019) .......... 14

*Garcia-Valasquez v. United States*, No. 13-cv-1038, 2014 WL 3756378 (W.D. Tex. July 29, 2014) ...... 8

*Gilton v. City and Cnty. of San Francisco*,

     No. 22-cv-7697, 2023 WL 5600082 (N.D. Cal. Aug. 29, 2023) .................................................. 13

*Gonzales v. Las Vegas Metro. Police Dep't*,

     No. 14-cv-1827-JCM-GWF, 2015 WL 4424552 (D. Nev. July 20, 2015).................................... 20

*Gressett v. Contra Costa Cnty.*, No. 12-cv-3798, 2015 WL 1054975 (N.D. Cal. Mar. 10, 2015)..... 15, 16

*Halgat v. United States*, No. 22-cv-00592-ART-EJY, 2024 WL 1377116 (D. Nev. Mar. 29, 2024) ........ 8

*Hays v. Bonnifield*, No. 23-55330, 2025 WL 586357 (9th Cir. Feb. 24, 2025)........................................ 10

*Health Vincent Fulkerson ex rel. Est. of Fulkerson v. Allstate Ins.*,

     No. 19-cv-00710-RCJ-WGC, 2020 U.S. Dist. LEXIS 120697 (D. Nev. July 8, 2020) ............... 11

*Hickman v. Mead*, No. 2:18-cv-00404-GMN-NJK, 2019 WL 4139434 (D. Nev. Aug. 30, 2019) .......... 17

*Hiekel v. 268 Ltd.*, 887 F.2d 1089 (9th Cir. 1989)................................................................................... 14

*Hymon v. Las Vegas Metro. Police Dep't Officer Rose*,

     No. 23-cv-01276-GMN-DJA, 2023 WL 7157839 (D. Nev. Oct. 30, 2023).......................... 16, 18

*Jaffe v. Stone*, 18 Cal. 2d 146 (1941)..................................................................................................... 15

*Jones v. Keitz*, 738 F. App'x 503 (9th Cir. 2018) ................................................................................... 13

*Jones v. Keitz*, No. 16-cv-01725, 2017 WL 3394121 (E.D. Cal. Aug. 7, 2017) ..................................... 12

*Kelley v. City of Henderson*, No. 15-cv-02204, 2016 WL 4473420 (D. Nev. Aug. 23, 2016)................ 12

*Kokkonen v. Guardian Life Insurance Co.*, 511 U.S. 375 (1994)............................................................. 7

*LaMantia v. Redisi*, 118 Nev. 27 (2002)................................................................................................. 14

*Lane v. Pena*, 518 U.S. 187 (1996)........................................................................................................... 8

*Lassiter v. City of Bremerton*, 556 F.3d 1049 (9th Cir. 2009).................................................................. 17

*Maduike v. Agency Rent-A-Car*, 114 Nev. 1 (1998) ............................................................................... 19

*Manansingh v. United States*,

     No. 20-cv-01139-DWM, 2024 WL 1638638 (D. Nev. Apr. 15, 2024) .................................. 14, 15

*Miller v. Jones*, 114 Nev. 1291 (1998) ................................................................................................ 19

*Mills v. City of Covina*, 921 F.3d 1161 (9th Cir. 2019) ................................................................ 14, 15

*Moore v. Ditech Fin., LLC*, No. 16-cv-1602-APG-GWF, 2017 WL 2464437 (D. Nev. June 7, 2017) ... 21

*Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376 (9th Cir. 1988) ....... 7

*Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001) ................................................................................... 7

*Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826 (1989) ...................................................... 9, 10

*Nichols v. City of Henderson*,

      No. 16-cv-01611-GMN-GWF, 2017 WL 3749497 (D. Nev. Aug. 29, 2017) ............................ 20

*Pattiz v. Minye*, 61 Cal. App. 4th 822 (1998) ............................................................................... 14, 15

*Pfaendler v. Town of Sahuarita*,

      No. 20-cv-00188, 2020 U.S. Dist. LEXIS 239678 (D. Ariz. Dec. 18, 2020) ............................... 13

*Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990) .......................................................... 10

*Righthaven LLC v. Newman*, 838 F. Supp. 2d 1071 (D. Nev. 2011) ............................................... 9, 10

*Robinson v. United States*, 586 F.3d 683 (9th Cir. 2009) ..................................................................... 7

*Rodriguez v. Sony Computer Entm't Am., LLC*, 801 F.3d 1045 (9th Cir. 2015) .................................. 11

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035 (9th Cir. 2004) ........................................................... 7

*Sagonowsky v. More*, 64 Cal. App. 4th 122 (1998) ........................................................................... 15

*Sasiada v. Switch, Ltd.*, No. 2:23-CV-88 JCM (NJK), 2024 WL 454994 (D. Nev. Feb. 5, 2024) .......... 21

*Savage v. Glendale Union High School*, 343 F.3d 1036 (9th Cir. 2003) ............................................... 6

*Schreiber Distrib. Co. v. Serv.-Well Furniture Co.*, 806 F.2d 1393 (9th Cir. 1986) ............................. 10

*Scotti v. City of Phoenix*, 609 F. App'x 386 (9th Cir. 2015) .......................................................... 18, 19

*Sheehan v. United States*, 896 F.2d 1168 (9th Cir. 1990) ................................................................... 19

*Sky Ad, Inc. v. McClure*, 951 F.2d 1146 (9th Cir. 1991) ............................................................... 21, 22

*Smiddy v. Varney*, 665 F.2d 261 (9th Cir. 1981) ................................................................................ 13

*Smith v. Almada*, 640 F.3d 931 (9th Cir. 2011) ................................................................................. 18

*Snow-Erlin v. United States*, 470 F.3d 804 (9th Cir. 2006) ................................................................ 19

*Staffpro, Inc. v. Elite Show Servs., Inc.*, 136 Cal. App. 4th 1392 (2006) .............................................. 14

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) ...................................................................................... 8

*Tosco Corp. v. Communities for Better Environment*, 236 F.3d 495 (9th Cir. 2001) ................................. 7

*United States ex rel. Lee v. Corinthian Colleges*, 655 F.3d 984 (9th Cir. 2011) ............................... 10, 11

*United States v. Bundy*, 968 F.3d 1019 (9th Cir. 2020) ........................................................................ 18

*United States v. Olson*, 546 U.S. 43 (2005) .......................................................................................... 21

*Vacek v. United States Postal Serv.*, 447 F.3d 1248 (9th Cir. 2006) ....................................................... 8

*Vander Zee v. Reno*, No. 95-50482, 1996 WL 625346 (5th Cir. Oct. 4, 1996) ........................................ 8

*Villa v. Cole*, 4 Cal. App. 4th 1327 (1992) .......................................................................................... 14

*Walker v. Intelli-Heart Servs.*, No. 18-cv-00132-MMD-CBC (D. Nev. Apr. 9, 2019) .......................... 11

*Washington v. Gastelo*, No. 23-55296, 2025 WL 586362 (9th Cir. Feb. 24, 2025) ................................ 11

*Washington v. White*, No. 18-cv-00333, 2018 WL 2287676 (N.D. Cal. May 18, 2018) ........................ 13

*White v. Lee*, 227 F.3d 1214 (9th Cir. 2000) .......................................................................................... 7

*Whitehorn v. F.C.C.*, 235 F. Supp. 2d 1092 (D. Nev. 2002) ................................................................ 21

*Whitmire v. Victus Ltd.*, 212 F.3d 885 (5th Cir. 2000) ..................................................................... 9, 10

*Wiley v. Kern High Sch. Dist.*, 107 Cal. App. 5th 765 (2024) .............................................................. 15

*Womack v. Cnty. of Amador*, 551 F. Supp. 2d 1017 (E.D. Cal. 2008) .................................................. 15

*Wormwood v. N. Las Vegas Police Dep't*,

    No. 15-cv-01438-JAD-GWF, 2016 WL 6915300 (D. Nev. Nov. 22, 2016) ......................... 12, 13

## Statutes

28 U.S.C. § 1346(b) .............................................................................................................................. 21

28 U.S.C. § 2401(b) .............................................................................................................................. 22

28 U.S.C. § 2680(h) ................................................................................................................... 1, 6, 8, 10

## Rules

Civil Local Rule 7-2(d) ........................................................................................................................ 21

Federal Rule of Civil Procedure 12(b)(1) ...................................................................................... 1, 3, 6, 7

Federal Rule of Civil Procedure 12(b)(6) ................................................................................... passim

Federal Rule of Civil Procedure 5.2(a) ................................................................................................. 3

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that the United States of America ("United States") will and hereby does move for an order dismissing the second amended complaint (ECF No. 38 ("SAC")). This motion is made pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and is based on this Notice, the Memorandum of Points and Authorities, the Court's files and records, other matters of which the Court takes judicial notice, and any oral argument and additional evidence that may be presented to the Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    Introduction

The first amended complaint included 47 paragraphs of allegations claiming that every event leading to the investigation, indictment, and prosecution of Ryan Bundy ("Bundy") and Ryan Payne ("Payne") occurred as a result of the knowing and intentional "direction, guidance, and control" of specifically named federal prosecutors. ECF No. 11 ("FAC"). Plaintiffs' allegations of intentional federal prosecutorial control deprived this Court of subject matter jurisdiction over the entire lawsuit because the United States has not waived sovereign immunity for any claim "arising out of . . . malicious prosecution" by federal prosecutors. 28 U.S.C. § 2680(h). In addition, Plaintiffs' attempt to limit their claims to law enforcement officer conduct was an impermissible end run around the absolute bar of sovereign immunity because—under the jurisdictional facts alleged here—federal prosecutors knowingly and intentionally controlled that law enforcement conduct. Simply stated, Plaintiffs' attempt to sue the United States for the intentional conduct of federal prosecutors (through the guise of law enforcement conduct expressly alleged to have arisen out of federal prosecutorial control) was antithetical to the United States' sovereign immunity, and the Court correctly granted the United States' prior motion to dismiss. ECF No. 37.

Like the FAC, the entire SAC is barred by the United States' sovereign immunity because it still fails to identify *any* conduct by law enforcement officers that occurred independently of federal prosecutorial control. The SAC does not allege *any* new events that were not at issue in the FAC. Nor does the SAC allege *any* new facts suggesting that these events involved independent law enforcement officer conduct. The only material difference is that the SAC deletes every reference to (1) the United States Attorney's Office for the District of Nevada, (2) former United States Attorney Daniel Bogden, (3) Assistant United States Attorneys Nadia Ahmed and Steven Myhre, and (4) federal prosecutorial

direction, guidance, and control over all the events at issue. Indeed, the SAC carefully removes every mention of the specifically named federal prosecutors in 42 paragraphs that were otherwise copied substantially verbatim from the FAC; a further five paragraphs of the FAC that highlighted federal prosecutorial control are omitted from the SAC entirely. *See* attached Exhibit A (noting deletions in red).

But simply removing every reference to federal prosecutorial control does not—and cannot—cure these jurisdictional deficiencies for two separate reasons. First, Supreme Court jurisprudence demonstrates that the Court must assess federal jurisdiction using the jurisdictional facts that existed at the time the lawsuit was filed. The jurisdictional facts here unambiguously demonstrate that there was no subject matter jurisdiction when this lawsuit was initiated (because Plaintiffs' theory of the case was that federal prosecutors controlled every event leading to Bundy's and Payne's prosecution), and Plaintiffs cannot amend those jurisdictional facts to create jurisdiction when jurisdiction did not previously exist. Second, assuming Plaintiffs could amend to remedy the jurisdictional deficiencies that existed at the time the lawsuit was filed, Ninth Circuit precedent teaches that amended pleadings are limited to additional facts that are consistent with—and that do not contradict—the facts in prior pleadings. But the SAC does not assert additional facts; instead, it is limited to deletions of prior allegations of prosecutorial control in 47 paragraphs of the FAC, and those deletions are impermissible because they fundamentally contradict Plaintiffs' prior allegations and theory of the case. As a result, this Court does not have subject matter jurisdiction over this lawsuit, and the case should be dismissed with prejudice.

But even if the Court finds that it has jurisdiction, the lawsuit still should be dismissed, with prejudice, under Rule 12(b)(6) because Plaintiffs' claims fail to state a claim upon which relief can be granted, and the United States already identified all these pleading deficiencies in its prior motion to dismiss. Like the malicious prosecution claim in the FAC, the malicious prosecution claim in the SAC should be dismissed as a result of three separate pleading deficiencies: (1) it does not include any affirmative allegations to overcome the presumption of prosecutorial independence, (2) it does not allege facts showing a favorable termination as a matter of law (*i.e.*, facts plausibly establishing that the dismissal of the criminal proceedings occurred because Bundy and Payne were actually innocent of the underlying criminal charges), and (3) it does not allege any facts to plausibly suggest that Bundy's and Payne's prosecution was unsupported by probable cause. The intentional infliction of emotional distress ("IIED")

1    claim in the SAC also fails for the same reason as the IIED claim in the FAC failed, namely that Plaintiffs

2    do not—and cannot—allege extreme and outrageous conduct where Bundy's and Payne's prosecutions

3    were supported by probable cause.  And, just like the claim in the FAC, the SAC's derivative loss of

4    consortium claim fails because there are no other viable claims in this lawsuit.

5          In short, Plaintiffs' lawsuit does not present any justiciable claims, and it should be dismissed,

6    with prejudice, under Rule 12(b)(1) and/or Rule 12(b)(6).

7    **II.    Background**

8          **A.    Factual Background Alleged In The SAC**

9          Bundy and Payne were defendants in a criminal action in the District of Nevada titled *United States*

10   *v. Bundy, et al.*, Case No. 16-cr-00046-GMN-PAL (the "Underlying Action").  SAC ¶ 6.  Bundy's wife

11   and the Bundys' eight children are also plaintiffs in the above-captioned civil action.[1]  *Id.* ¶¶ 9-10.

12                **1.    2014 Cattle Impoundment Operation And Standoff**

13         The Bundy family owns land in the Gold Butte area in Clark County, Nevada.  *Id.* ¶¶ 13-14.  The

14   Bundy family's cattle grazed on Bundy land and on surrounding federal public land.  *Id.* ¶ 18.  At some

15   point, the United States Department of the Interior and Bureau of Land Management ("BLM") began

16   "imposing restrictive grazing restrictions, and limiting the number of cattle that could graze upon" federal

17   public land in Nevada.  *Id.* ¶ 19.  Bundy's father, Cliven Bundy, refused to obtain BLM grazing permits,

18   and, as a result, the United States Department of Justice initiated a civil suit against Cliven Bundy in 1998.

19   *Id.* ¶ 20.  That lawsuit ended with "a judgment in favor of the United States[.]"  *Id.*

20         The SAC alleges that, "[a]rmed with that judgment," FBI Agent Joel Willis ("Willis"), BLM SAC

21   Daniel P. Love ("Love"), BLM Officer Rand Stover ("Stover"), and BLM Officer Mark Brunk ("Brunk")

22   "conspired together and orchestrated a fraudulent scheme to entice Cliven Bundy and his supporters . . .

23   into an armed confrontation in April 2014[.]"  *Id.* ¶ 21.  Plaintiffs claim that the "Cattle Impoundment

24   Operation" was "cloaked" as "merely an effort to enforce a 2013 civil court order."  *Id.* ¶ 37.  According

25   to Plaintiffs, "the primary purpose behind the 2014 Cattle Impoundment Operation was to frame and

26

27         [1] It appears that some of the eight Bundy child plaintiffs are minors (*id.* ¶¶ 101-08) and, in an

28   abundance of caution, the United States does not use their names in accordance with Federal Rule of Civil
     Procedure 5.2(a).

entrap Cliven Bundy, the Plaintiffs, and other supporters" by enticing them "into an armed confrontation" to justify the "planned 'use of force' and . . . fabrication of criminal charges against them." *Id.* ¶¶ 23, 37. Thus, the SAC claims that Willis, Love, Stover, and Brunk (among others) "orchestrated" the Cattle Impoundment Operation to "seize[] cattle belonging to Cliven Bundy and the Bundy Ranch"; transport the seized cattle to a "staging area"; shoot other cattle "from helicopters"; "destroy[] several thousands of dollars of the Bundy family's water right improvements and artesian springs / aquifers"; and "purposefully parad[e] a convoy of DOI / BLM vehicles and other construction demolition equipment before the Bundys, the Plaintiffs and their supporters to provoke them into resisting or otherwise defying the [United States'] efforts."[2]  *Id.* ¶ 43.  During the Cattle Impoundment Operation, the United States closed "nearly six hundred thousand (600,000) acres of land" to the public.  *Id.* ¶ 42.  This forced the "[h]undreds of Americans [who] traveled to the . . . area to protest" the United States' actions at one of two "First Amendment Zones." *Id.* ¶¶ 42, 70.  These zones were "purposefully selected" by Love, Stover, and Brunk (among others) "to maximize the impairment of any protestors' First Amendment rights[.]"[3]  *Id.* ¶ 42.

The SAC alleges that "[r]ecognizing that the unlawful and unconstitutional powder-keg . . . was rapidly escalating out of control," Nevada state officials "intervened to de-escalate the matter" by directing "the BLM and GOVERNMENT EMPLOYEES to wind-down their operation and to release the Bundy family's cows[.]"  *Id.* ¶¶ 49-50.  Federal and state officers "were directed to ensure that 'a Bundy'. . . would pull the pins from the cattle pens to affirmatively establish the GOVERNMENT EMPLOYEES' fabricated" criminal charges.[4]  *Id.* ¶ 51.  "Margaret Houston, a sister of Cliven Bundy, ultimately 'pulled the pin' on the cattle pen and released the cattle."  *Id.* ¶ 52.

### 2.    Grand Jury Proceedings And Indictment[5]

The SAC alleges that "Agent Willis and BLM SAC Love, and Officers Stover and Brunk

---

[2] The allegation that Willis, Love, Stover, and Brunk "orchestrated" the Cattle Impoundment Operation contradicts the allegation in the FAC that this same event was "orchestrated by AUSAs Ahmed, Myhre and Bogden[.]"  FAC ¶ 41; *see* Exhibit A.

[3] In contrast, the FAC alleged that "AUSAs Ahmed, Myhre and Bogden" purposefully selected these First Amendment zones.  FAC ¶ 40; *see* Exhibit A.

[4] The SAC's use of passive voice is telling; the FAC alleged that former United States Attorney Bogden directed the state and federal officials to ensure that a Bundy would pull the pin.  *See* FAC ¶ 49; *see* Exhibit A.

[5] The FAC alleged that *every one* of the purported misrepresentations to the grand jury discussed

deliberately, maliciously, and intentionally misled the Grand Jury so that they could falsely obtain indictments against the Plaintiffs." *Id.* ¶ 58.  Plaintiffs claim that on February 24, 2015, "Willis attempted to 'correct' Brunk's prior statement by having Officer Brunk 'clarify' that he 'never acted as a spotter/observer for a BLM sniper." *Id.* ¶ 35.  On June 29, 2015, "Willis knowingly, intentionally and willfully misled the Grand Jury regarding the circumstances surrounding Dave Bundy's April 6, 2014 false arrest." *Id.* ¶ 59.  "On September 16, 2015, Officer Stover knowingly, intentionally, and willfully testified before the Grand Jury regarding the BLM's threat assessments of the Plaintiffs[.]" *Id.* ¶ 66.  On March 2, 2016, "Willis knowingly and intentionally provided perjurious testimony to the Grand Jury . . . "falsely claiming that [] Dave Bundy's vehicle was intended to impede" a government convoy. *Id.* ¶ 63. On the same day, "Willis testified that Mel Bundy threatened federal officers when, in fact, he knew that there was absolutely no evidence of any such threats." *Id.* ¶ 65.  "Officer Stover also materially misled the Grand Jury" regarding the use of First Amendment zones. *Id.* ¶ 68.

The United States obtained a superseding grand jury indictment for Bundy and Payne (among others) on March 2, 2016. *Id.* ¶ 73.  The superseding indictment contained "sixteen (16) criminal counts, including, without limitation, conspiracy, conspiracy to impede federal officers, assaulting, threatening, extorting, and obstructing federal officers, and four (4) counts of using firearms in crimes of violence resulting from [the] 'standoff' with [federal] agents . . . in connection with [the United States'] Cattle Impoundment Operation." *Id.* ¶ 27.

### 3.    Arrest, Litigation, And Dismissal Of The Underlying Action

Bundy and Payne were arrested in February 2016. *Id.* ¶ 76.  Thereafter, "Willis, Lover [sic], Stover, and Bunk [sic] directed that informants be planted among the Plaintiffs during their incarceration" and offered "immediate release from custody" for other inmates to testify falsely against Plaintiffs.[6] *Id.* ¶ 47.  At an evidentiary hearing in January 2018, Judge Navarro found that "extensive exculpatory evidence . . . had been knowingly, intentionally and willfully withheld" by Willis, Love, Stover, and

---

in this section was knowingly and intentionally undertaken at the direction of specifically named federal prosecutors and that "AUSAs Ahmed, Myhre, and Bogden . . . deliberately, maliciously, and intentionally misled the Grand Jury[.]"  *See* Exhibit A; *see also* FAC ¶¶ 34, 58-72.

[6] Once again, the FAC alleged that these same events were taken "at the direction of AUSAs Ahmed, Myhre, and Bogden[.]"  FAC ¶ 45; Exhibit A.

Brunk.[7] *Id.* ¶ 94.  Judge Navarro dismissed, with prejudice, the criminal charges against Bundy and Payne that same day.  *Id.* ¶¶ 94-95.

### B. Claims Alleged

Plaintiffs bring their claims against the United States pursuant to the Federal Tort Claims Act ("FTCA").  Plaintiffs allege that the United States is liable for the following torts under Nevada state law: (1) malicious prosecution; (2) intentional infliction of emotional distress ("IIED"); and (3) loss of consortium.  The background section of the SAC also asserts various constitutional and state statutory violations, but it is not clear from the SAC whether Plaintiffs intend those allegations to be additional claims for relief.  *Compare* SAC ¶ 109A-E *with id.* ¶ 121C-E.

### C. Procedural History

The SAC is the third complaint filed in this matter.  Plaintiffs filed the original complaint on October 24, 2023.  ECF No. 3.  Thereafter, the parties stipulated that Plaintiffs would file an amended complaint as of right and continued the United States' response deadline to allow Plaintiffs to file the FAC.  ECF No. 9.  Plaintiffs then filed the FAC on April 2, 2024.  ECF No. 11.  The United States moved to dismiss the FAC (ECF No. 12, "MTD FAC"), arguing that the lawsuit was subject to dismissal (1) under Rule 12(b)(1) for lack of subject matter jurisdiction because the intentional tort exception to the FTCA, 28 U.S.C. § 2680(h), barred all claims in this lawsuit, and (2) under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  The Court held a hearing on March 3, 2025 and granted the motion to dismiss.  ECF No. 37.  The Court allowed Plaintiffs to file an amended complaint (*id.*), and Plaintiffs timely filed the SAC on April 1, 2025.  ECF No. 38.

## III. Legal Standards

### A. Rule 12(b)(1) Legal Standard

A motion to dismiss under Rule 12(b)(1) tests the subject matter jurisdiction of the court.  *Savage v. Glendale Union High School*, 343 F.3d 1036, 1039-40 (9th Cir. 2003).  A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears.  *Cal. ex rel. Younger v.*

---

[7] Willis, Love, Stover, and Brunk were not mentioned in the corresponding paragraph of the FAC; the FAC instead alleged that "AUSAs Ahmed, Myhre and Bogden" had "knowingly, intentionally, and willfully withheld" this "extensive exculpatory evidence."  FAC ¶ 108; Exhibit A.

*Andrus*, 608 F.2d 1247, 1249 (9th Cir. 1979). Courts will not infer evidence supporting subject matter jurisdiction. *Kokkonen v. Guardian Life Insurance Co.*, 511 U.S. 375, 377 (1994) ("It is to be presumed that a cause lies outside [the federal court's] limited jurisdiction.").

"When subject matter jurisdiction is challenged under Federal Rule of Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Tosco Corp. v. Communities for Better Environment*, 236 F.3d 495, 499 (9th Cir. 2001). Federal subject matter jurisdiction must exist at the time the action is commenced. *Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988), *cert. denied*, 488 U.S. 1006 (1989).

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack "asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* A factual challenge, on the other hand, allows the court to look beyond the complaint without "presum[ing] the truthfulness of the plaintiff's allegations." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). On a Rule 12(b)(1) motion, the Court can hear evidence outside the pleadings and resolve factual disputes, if necessary, without treating the motion as one for summary judgment. *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009); *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1997).

### B.    Rule 12(b)(6) Legal Standard

A Rule 12(b)(6) challenge disputes "the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal under Federal Rule of Civil Procedure 12(b)(6) is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). The Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), make clear that conclusory allegations are not sufficient to withstand a challenge under Rule 12(b)(6). To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim has "facial plausibility" only if the complaint pleads facts sufficient to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The Ninth Circuit has a two-part test that the plaintiff must pass to survive a motion to dismiss.

1
2
3
4

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.  Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

5    *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

6    **IV.    Argument**

7    **A.    The Court Lacked Jurisdiction When This Lawsuit Was Filed, And The SAC Cannot—And Does Not—Cure The Jurisdictional Defects In This Lawsuit**

8

9    It is a bedrock legal principle that a waiver of sovereign immunity must be "'strictly construed, in

10   terms of its scope, in favor of the sovereign.'"  *Vacek v. United States Postal Serv.*, 447 F.3d 1248, 1250

11   (9th Cir. 2006) (quoting *Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999)); *Lane v. Pena*,

12   518 U.S. 187, 192 (1996) ("A waiver of the Federal Government's sovereign immunity must be

13   unequivocally expressed in statutory text . . . and will not be implied").  As the United States established

14   in its motion to dismiss the FAC, the Court lacked subject matter jurisdiction over Plaintiffs' claims for

15   malicious prosecution, intentional infliction of emotional distress, and loss of consortium because each of

16   those claims arises out of Bundy's and Payne's prosecution, and the intentional tort exception to the FTCA

17   expressly preserves the United States' sovereign immunity for any such claim.  *See* MTD FAC at 7-9, 19,

18   21 (discussing 28 U.S.C. § 2680(h) and case law interpreting that statute).  And Plaintiffs cannot rely on

19   the law enforcement exception to Section 2680(h) because the FAC alleged that *every* act that led to the

20   prosecution was directed, guided, and controlled by federal prosecutors.  *Id.* at 9 (citing *Davis v. United

21   States*, No. 03-cv-1800, 2004 WL 324880, at *6 (S.D.N.Y. Feb. 18, 2004); *Garcia-Valasquez v. United

22   States*, No. 13-cv-1038, 2014 WL 3756378, at *4 (W.D. Tex. July 29, 2014); *Vander Zee v. Reno*, No. 95-

23   50482, 1996 WL 625346, at *4 (5th Cir. Oct. 4, 1996)).  In other words, the United States is absolutely

24   immune from suit for the intentional conduct of federal prosecutors, and Plaintiffs cannot avoid that

25   sovereign immunity bar (which must be strictly construed in favor of the United States) by limiting their

26   claims to law enforcement conduct that Plaintiffs also expressly alleged was directed and controlled by

27   federal prosecutors.  *See also Halgat v. United States*, No. 22-cv-00592-ART-EJY, 2024 WL 1377116, at

28   *3 (D. Nev. Mar. 29, 2024) (accord).

MOTION TO DISMISS THE SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 2:23-cv-01724-RFB-VCF                           8

The SAC cannot (and, in fact, does not) remedy the deficiencies in these jurisdictional facts for two reasons.  First, Plaintiffs cannot amend to create subject matter jurisdiction where, as here, jurisdiction did not exist at the time the lawsuit was filed.  Second, to the extent Plaintiffs could amend, any such amendment must be limited to new allegations that are consistent with—and that do not contradict—the allegations in the prior pleadings, but the SAC's amendments (1) are limited to deletions that contradict the FAC's allegations and (2) do not add any new facts.  Under either scenario, the SAC does not establish subject matter jurisdiction, and the lawsuit should be dismissed with prejudice.

### 1.    Plaintiffs Cannot Cure The Defective Jurisdictional Facts In This Lawsuit

This Court did not have subject matter jurisdiction over the lawsuit when it was first filed, and Plaintiffs cannot amend "to produce jurisdiction where none actually existed before."  *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 831 (1989).  "[T]he existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed," and a plaintiff cannot amend to cure "defects in the jurisdictional facts themselves."  *Id.*; *see also Whitmire v. Victus Ltd.*, 212 F.3d 885, 888 (5th Cir. 2000) ("While a district court can remedy inadequate jurisdictional allegations, it cannot remedy defective jurisdictional facts") (citations omitted); *Falise v. American Tobacco Co.*, 241 B.R. 63, 66 (E.D.N.Y. 1999) ("The reason for the limitation on the district court's power to authorize an amendment is apparent:  never having had power to act in the matter, the court *never* had authority to permit an amendment to the complaint") (emphasis in original); *Righthaven LLC v. Newman*, 838 F. Supp. 2d 1071, 1076 (D. Nev. 2011) (a plaintiff "may not amend the defects in the jurisdictional facts themselves").

Plaintiffs' original theory of the case hinged upon the accusation that specifically named federal prosecutors with the United States Attorney's Office for the District of Nevada directed, guided, and controlled every act that led to Bundy's and Payne's prosecution.  That is the unavoidable conclusion from the 47 distinct paragraphs of the FAC that referenced federal prosecutors by name and alleged that those named federal prosecutors knowingly and intentionally directed all the law enforcement conduct relevant here.  *See* Exhibit A.[8]  But that theory of the case—and the jurisdictional facts upon which that theory was

---

[8] The FAC did not alter the original complaint's assertions of prosecutorial control, and the United States thus focuses on the FAC's allegations for the sake of brevity and simplicity.  To the extent the Court would like a version of Exhibit A excerpting the original complaint's allegations of federal prosecutorial control, the United States can provide an updated chart upon request.

1  based—is fundamentally incompatible with the United States' sovereign immunity, which holds that the

2  United States is absolutely immune from suit for claims arising out of malicious prosecution by federal

3  prosecutors.  28 U.S.C. § 2680(h); *see also* MTD FAC at 7-9, 19, 21.  Supreme Court jurisprudence

4  teaches that Plaintiffs cannot amend those defective jurisdictional facts.  *See Newman-Green, Inc.*, 490

5  U.S. at 831.  Instead, this Court lacked jurisdiction when the case was filed, and subject matter jurisdiction

6  cannot be created by post-filing amendments to jurisdictional facts.  *Id.*

7         To be sure, a plaintiff may remedy "inadequate jurisdictional allegations" (*e.g.*, inaccurately

8  identifying a party's citizenship).  *See Whitmire*, 212 F.3d at 888; *Righthaven LLC*, 838 F. Supp. 2d at

9  1075.  But the 47 paragraphs of the FAC that unequivocally described direct prosecutorial control by

10  specifically named federal prosecutors were not isolated, errant allegations or technical defects that could

11  be cured.  *Falise*, 241 B.R. at 66 (there "is a clear distinction between permitting the curing of technical

12  defects in stating a basis for jurisdiction and prohibiting the providing of a jurisdictional basis where none

13  previously existed").  Indeed, Plaintiffs' "retroactive" effort to create jurisdiction where no jurisdiction

14  existed presents precisely the "danger against which a court must guard."  *Whitmire*, 212 F.3d at 888.

15         Here, the Court never had jurisdiction over this lawsuit, and Plaintiffs cannot amend to cure those

16  defects.  The lawsuit thus should be dismissed, with prejudice, for lack of subject matter jurisdiction.

17         **2.    Even If Plaintiffs Could Amend, The Amendments Here Fundamentally**
           **Contradict The FAC's Allegations And Are Thus Impermissible**
18

19         Assuming, *arguendo*, Plaintiffs could amend to remedy the jurisdictional defects here, there are

20  no new jurisdictional allegations in the SAC, and the SAC's amendments do nothing more than contradict

21  the 47 paragraphs of allegations from the FAC claiming that named federal prosecutors guided, directed,

22  and controlled all law enforcement conduct at issue.  As a result, Plaintiffs' amendments are impermissible

23  under Ninth Circuit law, which mandates that an amendment must be limited to "additional allegations

24  that are 'consistent with the challenged pleading' and that do not contradict the allegations in the original

25  complaint."  *United States ex rel. Lee v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) (quoting

26  *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296-97 (9th Cir. 1990); *accord Schreiber Distrib. Co. v. Serv.-*

27  *Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *Hays v. Bonnifield*, No. 23-55330, 2025 WL

28  586357, at *2 (9th Cir. Feb. 24, 2025); *Washington v. Gastelo*, No. 23-55296, 2025 WL 586362, at *2

1  (9th Cir. Feb. 24, 2025); *Rodriguez v. Sony Computer Entm't Am., LLC*, 801 F.3d 1045, 1054 (9th Cir.

2  2015) (finding allegations in amended pleading "unconvincing, especially considering that the more recent

3  pleading completely contradicts the earlier pleading"); *Health Vincent Fulkerson ex rel. Est. of Fulkerson*

4  *v. Allstate Ins.*, No. 19-cv-00710-RCJ-WGC, 2020 U.S. Dist. LEXIS 120697, at *2 (D. Nev. July 8, 2020);

5  *Walker v. Intelli-Heart Servs.*, No. 18-cv-00132-MMD-CBC, at *3 (D. Nev. Apr. 9, 2019); *Airs*

6  *Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt.*, 744 F.3d 595, 600 (9th Cir. 2014) ("A party

7  cannot amend pleadings to directly contradict an earlier assertion made in the same proceeding") (citation

8  and quotation marks omitted).

9      Here, the SAC does not identify *any* additional events in support of Plaintiffs' claims and it does

10  not include *any* additional allegations to suggest that law enforcement officers engaged in conduct

11  independent of federal prosecutors.  Instead, the SAC's amendments consist solely of careful deletions of

12  each reference to the named federal prosecutors and federal prosecutorial control, resulting in surgical

13  erasures or omissions in at least 47 paragraphs from the FAC.  *See* Exhibit A.  Simply stated, the SAC

14  does not add anything new, and it instead impermissibly contradicts the jurisdictional facts previously

15  alleged in this proceeding.  Plaintiffs cannot amend in this manner, and the lawsuit is subject to dismissal

16  for lack of jurisdiction.  *Corinthian Colleges*, 655 F.3d at 995; *Airs Aromatics, LLC*, 744 F.3d at 600.

17  **B.    The SAC Does Not Remedy The Pleading Deficiencies That The United States
18  Identified In Its Motion To Dismiss The FAC, And The Lawsuit Is Thus Also
       Subject To Dismissal Under Rule 12(b)(6)**

19      **1.    The Malicious Prosecution Claim Fails At The Pleading Level For The Same
20  Three Reasons That Were At Issue In The Last Motion To Dismiss**

21      Assuming the Court has subject matter jurisdiction over this lawsuit, Plaintiffs' malicious

22  prosecution claim fails to state a claim upon which relief can be granted for the same three reasons

23  established in the United States' motion to dismiss the FAC.  First, the SAC still fails to allege facts to

24  overcome the presumption of independent prosecutorial judgment.  MTD FAC at 10-12.  Second, the SAC

25  still fails to allege facts showing a favorable termination of the criminal proceedings.  *Id.* at 13-15.  And,

26  third, the SAC still fails to allege facts suggesting that the prosecution was unsupported by probable cause.

27  *Id.* at 15-18.  Each of these three pleading deficiencies independently requires dismissal of Plaintiffs'

28  malicious prosecution claim.

1

2

**(i)      The SAC Again Fails To Plead Affirmative Facts To Overcome The Presumption Of Independent Prosecutorial Judgment**

3        Putting aside Plaintiffs' prior allegations that every act that led to Bundy's and Payne's prosecution

4   was directed, guided, and controlled by federal prosecutors, the malicious prosecution claim in the SAC

5   still fails because it does not allege any affirmative evidence to rebut the presumption of prosecutorial

6   independence.   "Ordinarily, the decision to file a criminal complaint is presumed to result from an

7   independent determination on the part of the prosecution, and thus, precludes liability for those who

8   participated in the investigation or filed a report that resulted in the initiation of proceedings." *Awabdy v.*

9   *City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004); *Kelley v. City of Henderson*, No. 15-cv-02204,

10   2016 WL 4473420, at *3 (D. Nev. Aug. 23, 2016) (dismissing malicious prosecution claim and holding

11   that law enforcement officers "are not liable for damages suffered by the arrested person after a district

12   attorney files charges unless the presumption of independent judgment by the district attorney is rebutted")

13   (quoting *Blankenhorn v. Cty. of Orange*, 485 F.3d 463, 482 (9th Cir. 2007)); *Crain v. Nevada*, No. 16-cv-

14   00406-JAD-PAL, 2016 WL 7422643, at *4 (D. Nev. Dec. 21, 2016), *aff'd* 724 F. App'x 591 (9th Cir.

15   2018) (same); *Wormwood v. N. Las Vegas Police Dep't*, No. 15-cv-01438-JAD-GWF, 2016 WL 6915300,

16   at *5 (D. Nev. Nov. 22, 2016) (same).  As such, a malicious prosecution claim can only be brought against

17   officers "who improperly exerted pressure on the prosecutor, knowingly provided misinformation to him,

18   concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively

19   instrumental in causing the initiation of legal proceedings." *Awabdy*, 368 F.3d at 1067 (citation omitted).

20   "When a plaintiff pleads no evidence to rebut the presumption of prosecutorial independence, dismissal

21   is appropriate." *Jones v. Keitz*, No. 16-cv-01725, 2017 WL 3394121, at *4 (E.D. Cal. Aug. 7, 2017), *aff'd*

22   738 F. App'x 503 (9th Cir. 2018).

23        In this case, to overcome the presumption of independent prosecutorial judgment, Plaintiffs have

24   the burden at the initial pleading stage to include affirmative factual allegations plausibly suggesting that

25   the law enforcement officers somehow tricked the federal prosecutors, knowingly misrepresented facts to

26   and/or concealed exculpatory facts from the federal prosecutors, or improperly pressured the federal

27   prosecutors into initiating legal proceedings against Bundy and Payne. *Awabdy*, 368 F.3d at 1067.  There

28   are no affirmative factual allegations in the SAC about rogue law enforcement conduct unknown to the

1   federal prosecutors that could possibly meet Plaintiffs' pleading burden for this claim.

2           At best, the SAC is silent regarding prosecutorial knowledge of the purportedly wrongful conduct

3   that led to Bundy's and Payne's prosecution (and that silence is possible solely due to the SAC's careful

4   deletions of all content that affirmatively alleged federal prosecutorial knowledge and control in 47

5   different paragraphs from the FAC, *see* Exhibit A).  But an absence of facts regarding prosecutorial

6   knowledge is not enough to overcome the *presumption* of independent prosecutorial judgment at the

7   pleading stage, and courts routinely grant motions to dismiss on that basis.  *See Jones v. Keitz*, 738 F.

8   App'x 503, 503 (9th Cir. 2018) (affirming Rule 12(b)(6) dismissal of malicious prosecution claim where

9   "plaintiffs failed to allege facts sufficient to show that former District Attorney Keitz did not 'exercise[]

10  independent judgment in determining that probable cause for [plaintiffs'] arrest exist[ed]") (quoting

11  *Smiddy v. Varney*, 665 F.2d 261, 266 (9th Cir. 1981)); *see also Crain v. Nevada*, 724 F. App'x 591, 592

12  (9th Cir. 2018) (affirming Rule 12(b)(6) dismissal where the plaintiff did not allege facts rebutting the

13  presumption of independent judgment); *Crain*, 2016 WL 7422643, at *4 (dismissing malicious

14  prosecution claim in part because the complaint "does not allege or offer any facts" to show that the

15  prosecution was initiated contrary to the prosecutor's independent judgment); *Wormwood*, 2016 WL

16  6915300, at *5 (dismissing malicious prosecution claim because the plaintiff "does not allege any facts to

17  show that the NLVPD defendants took any steps to . . . otherwise influence the independent judgment of

18  the district attorneys"); *Washington v. White*, No. 18-cv-00333, 2018 WL 2287676, at *5 (N.D. Cal. May

19  18, 2018) (dismissing claim where "allegations, on their face, are insufficient to overcome" the

20  presumption of independent prosecutorial judgment); *Fallay v. San Francisco City & Cnty.*, No. 08-cv-

21  2261, 2015 WL 7874312, at *6 (N.D. Cal. Dec. 4, 2015) (dismissing malicious prosecution claim because

22  the plaintiff "offers no evidence that any of the alleged conduct caused the District Attorney to act contrary

23  to his independent judgment") (quotation marks omitted); *Pfaendler v. Town of Sahuarita*, No. 20-cv-

24  00188, 2020 U.S. Dist. LEXIS 239678, at *17 (D. Ariz. Dec. 18, 2020) (same); *Gilton v. City and Cnty.

25  of San Francisco*, No. 22-cv-7697, 2023 WL 5600082, at *8-9 (N.D. Cal. Aug. 29, 2023) (same).

26          Here, the SAC does not allege a single affirmative fact to overcome the presumption of

27  prosecutorial independence.  *Jones*, 738 F. App'x at 503.  The malicious prosecution claim thus fails at

28  the pleading level and should be dismissed.

1

2

### (ii)    The SAC Again Fails To Plead Facts Showing A Favorable Termination

3

The malicious prosecution claim also fails because the SAC again does not plead facts showing

4

that the Underlying Action terminated in Bundy's and Payne's favor in a legally relevant manner.  This

5

was a pleading deficiency identified in the United States' prior motion to dismiss (*see* MTD FAC

6

at 13-15), and the SAC fails to add any allegations about the favorable termination element of the

7

malicious prosecution claim; in fact, to the extent the SAC makes any modifications to this element, it

8

simply deletes content from the FAC (which itself was insufficient).

9

A malicious prosecution claim under Nevada state law requires a plaintiff to allege facts plausibly

10

establishing that the prior criminal proceedings were terminated in his favor.  *Friedman v. United States*,

11

No. 18-cv-857-JCM-VCF, 2019 WL 121965, at *4 (D. Nev. Jan. 7, 2019) (citing *LaMantia v. Redisi*, 118

12

Nev. 27, 30 (2002) (citation omitted)).  Nevada federal courts interpreting Nevada state law, as well as

13

California state courts interpreting California state law, have held that favorable termination is an essential

14

element of the tort of malicious prosecution.  *Anderson v. United States*, No. 18-cv-02173-JAD-GWF,

15

2019 WL 3776999, at *2 (D. Nev. Aug. 9, 2019) (resolving criminal proceeding via plea "does not equate

16

to a favorable termination," which is an essential element of a malicious prosecution claim); *see also*

17

*Staffpro, Inc. v. Elite Show Servs., Inc.*, 136 Cal. App. 4th 1392, 1400 (2006).  Nevada state courts are

18

silent regarding what constitutes "favorable termination" for purposes of a malicious prosecution claim.

19

Under California law, however, the favorable termination element "requires a termination reflecting the

20

merits of the action and plaintiff's innocence of the misconduct."[9]  *See Mills v. City of Covina*, 921 F.3d

21

1161, 1170-71 (9th Cir. 2019) (citing *Pattiz v. Minye*, 61 Cal. App. 4th 822, 826 (1998)); *Villa v. Cole*, 4

22

Cal. App. 4th 1327, 1135 (1992).  A recent decision from this District found that Nevada would adopt the

23

same "favorable termination" standard as California.  *Manansingh v. United States*, No. 20-cv-01139-

24

DWM, 2024 WL 1638638, at *7 (D. Nev. Apr. 15, 2024).

25

"The theory underlying the requirement of favorable termination is that it tends to indicate the

26

27

28

---

[9] Where Nevada law is silent, Nevada looks to California law for direction.  *Coryell v. United States*, No. 18-cv-00593-GMN-NJK, 2019 WL 720972 (D. Nev. Feb. 20, 2019); *Hiekel v. 268 Ltd.*, 887 F.2d 1089, n.3 (9th Cir. 1989).

innocence of the accused." *Jaffe v. Stone*, 18 Cal. 2d 146, 150 (1941).  Thus, a termination is "not necessarily favorable simply because the party prevailed in the prior proceeding; the termination must relate to the merits of the action by reflecting either on the innocence of or lack of responsibility for the misconduct alleged against him." *Campbell v. City of Bakersfield*, No. 04-cv-5585, 2006 WL 2054072, at \*20 (E.D. Cal. July 21, 2006) (quoting *Sagonowsky v. More*, 64 Cal. App. 4th 122, 128 (1998)).  A plaintiff must "show more than a mere dismissal of the underlying action; he or she must show facts establishing his or her innocence." *Fetters v. Cty. of Los Angeles*, 243 Cal. App. 4th 825, 843 (2016); *see also Wiley v. Kern High Sch. Dist.*, 107 Cal. App. 5th 765, 773 n.9 (2024) ("the SAC only alleges that Wiley's criminal charges were dismissed with prejudice in furtherance of justice.  However, this does not mean the termination of charges occurred in her favor:  a showing that criminal charges were dismissed in furtherance of justice does not satisfy the favorable termination requirement").  As the Ninth Circuit has observed, "if the dismissal is on technical grounds, for procedural reasons, or for any other reason not inconsistent with [] guilt, it does not constitute a favorable termination." *Mills*, 921 F.3d at 1171 (quoting *Jaffe*, 18 Cal. 2d at 150).  The reasons underlying a cognizable favorable termination "must 'reflect[] the opinion of either the court or the prosecuting party that the action *would not succeed*.'" *Gressett v. Contra Costa Cnty.*, No. 12-cv-3798, 2015 WL 1054975, at \*6 (N.D. Cal. Mar. 10, 2015) (quoting *Pattiz*, 61 Cal. App. 4th at 827) (emphasis in original).  "If the resolution of the underlying action leaves some doubt concerning a plaintiff's innocence or liability, it is not a favorable termination sufficient to allow a cause of action for malicious prosecution." *Mills*, 921 F.3d at 1171 (quoting *Pattiz*, 61 Cal. App. 4th at 826).  The element of favorable termination is a legal question for the Court to decide.  *Womack v. Cnty. of Amador*, 551 F. Supp. 2d 1017, 1032 (E.D. Cal. 2008).

Here, the SAC rests on nothing more than the fact that Judge Navarro dismissed the criminal charges to support the favorable termination element.  *See* SAC ¶¶ 26, 82, 94-95, 121B.  But dismissal, standing alone, is insufficient to establish this element of a malicious prosecution claim.  *See Fetters*, 243 Cal. App. 4th at 843; *Manansingh*, 2024 WL 1638638, at \*6; *Wiley*, 107 Cal. App. 5th at 773 n.9.  The SAC—like the FAC—does not allege *any* facts plausibly showing that Bundy and/or Payne were innocent of the criminal charges in the Underlying Action.  Indeed, there is even less factual support for the favorable termination element in the SAC than the FAC because the SAC deletes 28 paragraphs of

allegations from the FAC discussing the reasoning behind Judge Navarro's dismissal order.  *Compare*
FAC ¶¶ 109A-BB *with* SAC ¶¶ 94-95.  But, as the United States established in its motion to dismiss the
FAC, even if Plaintiffs had included those allegations in the SAC, Judge Navarro's comments during the
January 8, 2018 evidentiary hearing (as alleged in the FAC) were silent about Bundy's and Payne's
innocence, and Judge Navarro did not suggest that the prosecution would not succeed.  MTD FAC
at 14-15; *Fetters*, 243 Cal. App. 4th at 843; *Gressett*, 2015 WL 1054975, at *7.

In short, the SAC still fails to allege facts showing a favorable termination as a matter of law, and
the malicious prosecution claim should be dismissed on this independent basis.

### (iii)    The SAC Again Fails To Plead A Lack Of Probable Cause

Finally, the malicious prosecution claim should be dismissed because the SAC's allegations fail
to plausibly establish a lack of probable cause for Bundy's and Payne's prosecution.[10]  First, the SAC's
allegations of purportedly false testimony presented to the grand jury either (1) do not involve Bundy or
Payne or (2) are unrelated to the elements of the crimes for which Bundy and Payne were charged, and
those allegations thus do nothing to show a lack of probable cause.  Second, putting aside the purportedly
false testimony to the grand jury, the criminal indictment in the Underlying Action contains a multitude
of unaddressed allegations regarding Bundy's and Payne's criminal wrongdoing, thereby establishing
*independent* probable cause for their prosecution.  Either way, probable cause is an absolute bar to the
malicious prosecution claim in this case.  Again, this was a pleading deficiency identified in the United
States' prior motion to dismiss (*see* MTD FAC at 15-18), but the SAC nevertheless fails to add *any* factual
allegations to demonstrate a lack of probable cause for Bundy's and Payne's prosecution.

Probable cause "is an absolute defense to malicious prosecution."  *Hymon v. Las Vegas Metro.
Police Dep't Officer Rose*, No. 23-cv-01276-GMN-DJA, 2023 WL 7157839, at *3 (D. Nev. Oct. 30,
2023).  "Probable cause exists when the facts and circumstances within the officer's knowledge are
sufficient to cause a reasonably prudent person to believe that a crime has been committed."  *Hickman v.*

---

[10]  Under Nevada law, "a grand jury indictment creates a rebuttable presumption of probable
cause[.]"  *Bouari v. United States*, No. 21-cv-226-JCM-VCF, 2021 WL 4699233, at *5 (D. Nev. Oct. 7,
2021), *aff'd*, *Bouari v. United States*, No. 21-16762, 2023 WL 1794241 (9th Cir. Feb. 7, 2023).  Here, the
grand jury indicted Bundy and Payne not once, but twice.  *See* Underlying Action at ECF Nos. 5 & 27.
The SAC does not allege facts to rebut the presumption of probable cause that flows from the *repeated*
grand jury indictments of Bundy and Payne.

*Mead*, No. 2:18-cv-00404-GMN-NJK, 2019 WL 4139434, at *5 (D. Nev. Aug. 30, 2019) (quoting *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1053 (9th Cir. 2009)).  When assessing probable cause, courts "look to the elements of the underlying crime—and in particular, in a malicious-prosecution case like this one, to the elements of the *charged* crime." *Butler v. Smith*, 85 F.4th 1102, 1116 (11th Cir. 2023) (emphasis in original); *Dunning v. United States*, No. 17-cv-43, 2022 WL 815190, at *3 (N.D. Ind. Mar. 17, 2022) (in the malicious prosecution context, "[p]robable cause must take into consideration the elements of the crime being charged") (citing *Abbott v. Sangamon Co.*, 705 F.3d 706, 725 (7th Cir. 2013)).  The probable cause element is determined by the court in the malicious prosecution context.  *Hickman*, 2019 WL 4139434, at *5.

  First, the SAC—like the FAC—fails to plead facts showing that the purportedly false testimony presented to the grand jury had any relevancy to the elements of the crimes for which Bundy and Payne were charged and/or the criminal conduct in which Bundy and Payne were alleged to have engaged.  The SAC identifies five categories of false statements that were presented to the grand jury to secure the criminal indictment (SAC ¶¶ 57-72):

  1.  Willis intentionally misled the grand jury about the circumstances of Dave Bundy's April 6, 2014 arrest (*id.* ¶¶ 59-64);

  2.  Willis testified that Mel Bundy threatened an officer when he knew "that there was absolutely no evidence of any such threats" (*id.* ¶ 65);

  3.  Stover testified about BLM's threat assessments of the Plaintiffs (remarkably, the SAC does not claim that this testimony was wrong, misleading, or legally actionable) (*id.* ¶ 66);

  4.  Stover provided false and misleading testimony regarding the use of snipers (*id.* ¶ 67); and

  5.  Stover "materially misled" the grand jury regarding the use of First Amendment zones (*id.* ¶ 68-72).[11]

These five categories of allegedly false or misleading representations to the grand jury are unrelated to the elements of the crimes with which Bundy and Payne were charged.  Neither the original indictment nor

---

[11] The FAC identified six categories of purportedly false testimony presented to the grand jury, but the SAC deleted one of those categories.  *Compare* FAC ¶¶ 55-73 *with* SAC ¶¶ 57-72.  The remaining five categories in the SAC are identical to the five categories of testimony identified in the FAC, but the SAC omits the FAC's references to prosecutorial control over every one of these events.  *See* Exhibit A.

the superseding indictment references First Amendment zones or BLM threat assessments (Underlying Action at ECF Nos. 5 & 27), and there is no link between the alleged representations to the grand jury about those issues—whether true or false—"to the elements of the underlying crime[s]." *Butler*, 85 F.4th at 1116.  With respect to Stover's purported testimony about the use of snipers, the Ninth Circuit already held that representations that the criminal defendants lied about feeling surrounded by snipers in the Underlying Action "do not appear to be elements of the crimes alleged[.]"  Underlying Action at ECF No. 3306 (also available at *United States v. Bundy*, 968 F.3d 1019, 1044 (9th Cir. 2020)).  The only two remaining categories of purportedly false testimony presented to the grand jury involve Mel Bundy and Dave Bundy (SAC ¶¶ 59-65), but neither of those individuals is a party to the above-captioned civil lawsuit, and any representations to the grand jury regarding those non-parties is irrelevant to the question currently before the Court (*i.e.*, whether there was probable cause to indict the plaintiffs who brought the malicious prosecution claim currently before the Court:  Ryan Bundy and Ryan Payne).  Here, the SAC still fails to plead facts plausibly suggesting that Bundy's and Payne's prosecution lacked probable cause, and probable cause "is an absolute defense to malicious prosecution."  *Hymon*, 2023 WL 7157839, at *3.

Second, even if it could be assumed that false testimony presented to the grand jury deprived Bundy's and Payne's prosecutions of probable cause for the specific events at issue in that testimony (even though, as discussed *supra*, that purportedly false testimony had nothing to do with (1) Ryan Bundy and Ryan Payne and/or (2) the elements of the crimes for which Bundy and Payne were charged), the prosecution was nevertheless supported by independent probable cause.  *See Scotti v. City of Phoenix*, 609 F. App'x 386, 387 (9th Cir. 2015) ("the existence of independent probable cause is an absolute defense").  As the Ninth Circuit noted in *Scotti*, a malicious prosecution claim cannot survive where "probable cause—independent of the false information . . . supported [the] arrest and prosecution."  *Id.*; *see also Smith v. Almada*, 640 F.3d 931, 938 (9th Cir. 2011) (rejecting claim that an officer's "false statements and failure to disclose material information to the prosecutor caused [his] malicious prosecution" because "even after correcting for the allegedly false and omitted information[,] . . . probable cause supported [the] arrest . . . [and] prosecution").  Here, the indictment includes lengthy recitations of Bundy's and Payne's criminal wrongdoing independent of the allegedly false testimony presented to the grand jury.  The factual paragraphs of the superseding indictment repeatedly invoke Bundy's and Payne's names, and many of the

events recounted in those paragraphs are unrelated to the allegedly false testimony that Plaintiffs claim was presented to the grand jury.  *See* Underlying Action at ECF No. 27 ¶¶ 51, 61-62, 78, 80, 83, 87-88, 94-96, 98, 100, 105, 109, 117-118, 143, 144, & 145.  The SAC fails to plead any facts suggesting that those additional allegations in the criminal indictment were false or that probable cause did not exist for those additional events.  That independent probable cause is an "absolute defense" to the malicious prosecution claim.  *Scotti*, 609 F. App'x at 387.

There was ample probable cause supporting Bundy's and Payne's prosecution in the Underlying Action, and that probable cause unquestionably defeats the malicious prosecution claim here.

**2.     The IIED Claim Fails Because The SAC Does Not Allege Extreme And Outrageous Conduct**

As the United States demonstrated in its prior motion to dismiss, the IIED claim is also barred by the intentional tort exception to the FTCA.  MTD FAC at 19 (citing *Snow-Erlin v. United States*, 470 F.3d 804, 808 (9th Cir. 2006) and *Sheehan v. United States*, 896 F.2d 1168, 1172 (9th Cir. 1990)).  And as discussed *supra* Part IV.A, the SAC cannot and does not remedy the defective jurisdictional facts of this case.  Accordingly, the IIED claim should be dismissed for lack of subject matter jurisdiction.

But even if the Court were to find that it has jurisdiction over this claim, the IIED claim still should be dismissed for failure to state a claim upon which relief can be granted because the SAC does not allege extreme and outrageous conduct.  *See* MTD FAC at 19-21.  To establish a cause of action for IIED under Nevada law, a plaintiff must show:  "(1) extreme and outrageous conduct on the part of the defendant; (2) intent to cause emotional distress or reckless disregard for causing emotional distress; (3) that the plaintiff actually suffered extreme or severe emotional distress; and (4) causation."  *Bouari*, 2021 WL 4699233, at *5 (quoting *Miller v. Jones*, 114 Nev. 1291, 1299-1300 (1998)).  "[E]xtreme and outrageous conduct is that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community."  *Maduike v. Agency Rent-A-Car*, 114 Nev. 1, 4 (1998) (citation and quotation marks omitted).  "[P]ersons must necessarily be expected and required to be hardened . . . to occasional acts that are definitely inconsiderate and unkind."  *Id.* (citation and quotation marks omitted).  Arrest, indictment, and detention do not qualify as "extreme and outrageous conduct" where that conduct was supported by probable cause.  *Bouari*, 2021 WL 4699233, at *5; *see also Brown v. Lever*, No. 17-cv-00828-JAD-PAL,

2018 WL 1903120, at *8 (D. Nev. Apr. 20, 2018) (dismissing IIED claim where the plaintiff alleged that he was arrested "without justification" because the alleged conduct was not outrageous as a matter of law).

Here, there was probable cause to indict and prosecute Bundy and Payne.  *Supra* Part IV.B.1.iii. Because Bundy's and Payne's indictments were supported by probable cause, Plaintiffs do not allege facts showing "extreme and outrageous conduct" to support an IIED claim.  *Bouari*, 2021 WL 4699233, at *5; *Bouari v. United States*, 2023 WL 1794241, at *3 ("Bouari's arrest, subsequent indictment, and pretrial detention were not extreme and outrageous because the prosecution was based on probable cause"); *Brown*, 2018 WL 1903120, at *8.

### 3.    The Derivative Loss Of Consortium Claim Fails Because The Other Claims Are All Subject To Dismissal

Again, this Court does not have subject matter jurisdiction over the loss of consortium claim.  MTD FAC at 21; *supra* Part IV.A.  But even if subject matter jurisdiction existed, the claim would still be subject to dismissal under Rule 12(b)(6) because Plaintiffs do not plead any other cognizable claim to which the derivative loss of consortium claim could attach.  *See Gonzales v. Las Vegas Metro. Police Dep't*, No. 14-cv-1827-JCM-GWF, 2015 WL 4424552, at *6 (D. Nev. July 20, 2015) (dismissing loss of consortium claim where the underlying claims were also dismissed); *Nichols v. City of Henderson*, No. 16-cv-01611-GMN-GWF, 2017 WL 3749497, at *4 (D. Nev. Aug. 29, 2017) ("in Nevada, a loss of consortium claim is a derivative claim and may accrue only to the extent that the other spouse has a cause of action against the alleged tortfeasors").

### C.    Sovereign Immunity Bars The Constitutional And Statutory Violation Allegations

The background section of the SAC claims that Plaintiffs' federal constitutional rights (under the First, Second, Fourth, Fifth, and Eighth Amendments), state constitutional rights (under Article 1 of the Nevada Constitution), and Nevada statutory rights (under Nevada Revised Statutes ("NRS") §§ 41.637, 244.364, 199.310 and 200.460) were violated.  SAC ¶ 109.A-E.

It is unclear whether Plaintiffs intend these background allegations to be independent bases for relief against the United States since they are not included in the one FTCA claim for relief alleged in the SAC.  *Compare* FAC ¶ 111.A-E *with id.* ¶ 123.C-E.  When the United States challenged these background allegations in the prior motion to dismiss, Plaintiffs failed to respond to the dismissal arguments, thereby

conceding them.  *See* MTD FAC at 21-23; *see also Moore v. Ditech Fin., LLC*, No. 16-cv-1602-APG-GWF, 2017 WL 2464437, at *2 (D. Nev. June 7, 2017); *Sasiada v. Switch, Ltd.*, No. 2:23-CV-88 JCM (NJK), 2024 WL 454994, at *2 n.1 (D. Nev. Feb. 5, 2024); Civil Local Rule 7-2(d).  Nevertheless, Plaintiffs recycle these allegations in the SAC, and the United States thus renews its dismissal argument that the SAC does not establish a waiver of sovereign immunity for any of these background allegations.

It is black-letter law that the FTCA's limited waiver of sovereign immunity does not encompass federal constitutional violations, and the Court thus does not have subject matter jurisdiction under the FTCA over any claim against the United States asserting a violation of federal constitutional rights. *F.D.I.C. v. Meyer*, 510 U.S. 471, 478 (1994) ("the United States simply has not rendered itself liable under § 1346(b) for constitutional tort claims"); *Whitehorn v. F.C.C.*, 235 F. Supp. 2d 1092, 1098 n.3 (D. Nev. 2002) ("Because constitutional tort claims are not cognizable under the FTCA, these must be dismissed.").

Plaintiffs also do not allege that a *private person* would be liable under Nevada state law for the violations of the Nevada state constitution and/or Nevada state statutes asserted here.  Pursuant to the FTCA, "the United States waives sovereign immunity 'under circumstances' where local law would make a '*private person*' liable in tort."  *United States v. Olson*, 546 U.S. 43, 44 (2005) (emphasis in original) (quoting 28 U.S.C. § 1346(b)(1)); *see also id.* at 46-47 (citing legislative history to establish the "purpose of FTCA was to make the tort liability of the United States 'the same as that of a private person under like circumstance, in accordance with the local law'").  The FTCA does not waive immunity for "action of the type that private persons could not engage in and hence could not be liable for under local law." *Sky Ad, Inc. v. McClure*, 951 F.2d 1146, 1147 n.2 (9th Cir. 1991) (citation and quotation marks omitted).  Accordingly, to state an FTCA claim within the scope of the United States' waiver of sovereign immunity, "a plaintiff must plausibly allege that 'the United States, if a private person, would be liable to the claimant' under state law[.]" *Brownback v. King*, 592 U.S. 209, 218 (2021) (quoting 28 U.S.C. § 1346(b)(1)); *see also Bolt v. United States*, 509 F.3d 1028, 1031 (9th Cir. 2007) ("[T]he party seeking federal jurisdiction . . . must therefore demonstrate that [the state's] laws would recognize a [tort] cause of action . . . against a private individual for like conduct.").  Here, the state constitutional and statutory provisions invoked by Plaintiffs govern prototypical *governmental* conduct, such as freedom of speech, right to assemble, right to bear arms, excessive bail and fines, etc.  There is no basis to conclude that a

1 private person could be liable for alleged violations of these state constitutional or statutory provisions,

2 much less that a private person could engage in these alleged violations in the first place. *McClure*, 951

3 F.2d at 1147 n.2. Accordingly, any claims regarding alleged state constitutional and statutory violations

4 should be dismissed for lack of subject matter jurisdiction because Plaintiffs do not plausibly allege that

5 a private person would be liable for them under Nevada state law. *Brownback*, 592 U.S. at 218.

6      Finally, assuming the United States had waived sovereign immunity for these claims, they still

7 should be dismissed under Rule 12(b)(6). Among other factual pleading deficiencies, it is unclear from

8 the face of the SAC when each of these claims accrued and whether Plaintiffs timely exhausted each claim

9 within two years of its accrual date. 28 U.S.C. § 2401(b).

10 **V.    Conclusion**

11      For the foregoing reasons, the United States respectfully asks the Court to grant the motion to

12 dismiss the SAC with prejudice.

13 DATED: May 2, 2025

14                                    PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney

15

16                                    */s/ Jevechius D. Bernardoni*
JEVECHIUS D. BERNARDONI

17                                  Assistant United States Attorney
Acting Under Authority Conferred
by 28 U.S.C. § 515

18

19                                  Attorneys for the United States of
America

20

21

22

23

24

25

26

27

28