PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney
PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
JEVECHIUS D. BERNARDONI (CABN 281892)
Assistant United States Attorney
Acting Under Authority Conferred by 28 U.S.C. § 515

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7224
    Facsimile: (415) 436-6748
    jevechius.bernardoni@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| RYAN BUNDY, *et al.*, | Case No. 2:23-cv-01724-RFB-VCF |
| Plaintiffs, | **EXHIBIT A TO THE UNITED STATES OF AMERICA'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** |
| v. | |
| UNITED STATES OF AMERICA, *et al.*, | |
| Defendants. | |

**Contradictory Allegations in Plaintiffs' First Amended Complaint And Second Amended Complaint**

**Deletions Marked In Red**

| | **Allegation in First Amended Complaint** | **Contradictory Allegation in Second Amended Complaint** |
|---|---|---|
| 1. | **FAC ¶ 12**: UNITED STATES' employees Ahmed, Myhre, Bogden, Willis, Love, Stover and Brunk (each of whom caused acts and events to occur within this forum while acting in the scope and course of his/her employment with, and official capacities for, his/her respective federal agencies) shall hereinafter collectively be referred to as the "GOVERNMENT EMPLOYEES." | **SAC ¶ 9**: UNITED STATES' employees Willis, Love, Stover and Brunk (each of whom caused acts and events to occur within this forum while acting in the scope and course of his/her employment with, and official capacities for, his/her respective federal agencies) shall hereinafter collectively be referred to as the GOVERNMENT EMPLOYEES. |
| 2. | **FAC ¶ 22**: The round-up operation was intentionally and deliberately carried out, upon information and belief, at the specific direction of GOVERNMENT EMPLOYEES Ahmed, Myhre, Bogden, Love, Stover and Brunk in a brutal, violent, and aggressive manner. Under the guise of executing a court order to collecting grazing fees, an alleged and unverified debt, the federal government – BLM and FBI – invaded the Bundy Ranch in April of 2014 and violently assaulted and extorted Plaintiff Ryan Bundy and his family members and killed his family's cattle. Federal agents threatened the lives of Plaintiff Ryan Bundy and his family by training snipper riffles directly at him and his wife and children, assaulted Plaintiff Ryan Bundy's elderly aunt by throwing her to the ground, tased one of his brother's multiple times, violently threw another of his brother's to the ground and vehemently crushed his face into the course gravel causing lacerations to his face, killed his bulls and some other cattle, concealing them in a mass, secret grave. | **SAC ¶ 22**: The round-up operation was intentionally and deliberately carried out, upon information and belief, at the specific direction of GOVERNMENT EMPLOYEES, Willis, Love, Stover and Brunk in a brutal, violent, and aggressive manner. Under the guise of executing a court order to collecting grazing fees, an alleged and unverified debt, the federal government – BLM and FBI – invaded the Bundy Ranch in April of 2014 and violently assaulted and extorted Plaintiff Ryan Bundy and his family members and killed his family's cattle. Federal agents threatened the lives of Plaintiff Ryan Payne and Plaintiff Ryan Bundy and his family by training snipper riffles directly at him and his wife and children, assaulted Plaintiff Ryan Bundy's elderly aunt by throwing her to the ground, tased one of his brother's multiple times, violently threw another of his brother's to the ground and vehemently crushed his face into the course gravel causing lacerations to his face, killed his bulls and some other cattle, concealing them in a mass, secret grave. |

|   | **Allegation in First Amended Complaint** | **Contradictory Allegation in Second Amended Complaint** |
|---|---|---|
| 3. | **FAC ¶ 29**: A March 27, 2014 e-mail authored by a BLM agent (whose name was redacted in court documents in the Underlying Action) to Sal Lauro, BLM Director of the Office of Law Enforcement & Security ("OLES"), and Amy Lueders, BLM's Nevada State Director, confirmed that the U.S. Attorneys' Office (led by AUSA Bogden in 2014) was "attempting to direct [the] law enforcement efforts" and was actually planning and staging the events well before the rogue criminal prosecution commenced. Namely:<br><br>[a]s for the rest of the operational guidance, it appears the NV USA is *directing tactical decisions*, something I've never seen in 19 years of law enforcement....[I]'m in a unique situation in which I must work with a prosecution agency that is attempt[ing] to *direct my enforcement efforts*.<br><br>(Emphasis in FAC). | Paragraph entirely omitted from SAC. |
| 4. | **FAC ¶ 30**: GOVERNMENT EMPLOYEES Ahmed, Myhre, Bogden, Love, Brunk, Stover and Willis "knew or reasonably should have known that the action[s] [they] took within [their] sphere of official responsibility would violate the constitutional rights of the [Plaintiffs], or [alternatively they] took the action[s] with ... malicious intent[] to cause a deprivation of constitutional rights or other injury." *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982). | **SAC ¶ 32**: GOVERNMENT EMPLOYEES Willis, Love, Stover, and Bunk "knew or reasonably should have known that the action[s] [they] took within [their] sphere of official responsibility would violate the constitutional rights of the [Plaintiffs], or [alternatively they] took the action[s] with ... malicious intent to cause a deprivation of constitutional rights or other injury." *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982). |
| 5. | **FAC ¶ 31**: Under the direction, guidance, and control of AUSAs Ahmed, Myhre and Bogden, BLM SAC Love, Officers Stover and Brunk, and others, the UNITED STATES carefully prepared and fabricated evidence throughout the investigative stage of the Underlying Action, and knowingly, intentionally, and willfully concealed exculpatory evidence regarding the Plaintiffs' | **SAC ¶ 33**: BLM Officers SAC Love, Officers Stover and Brunk, and others, all of whom were employed by the UNITED STATES, carefully prepared and fabricated evidence throughout the investigative stage of the Underlying Action, and knowingly, intentionally, and willfully concealed exculpatory evidence regarding the |

|   | **Allegation in First Amended Complaint** | **Contradictory Allegation in Second Amended Complaint** |
|---|---|---|
|   | innocence and concealed the outrageous, unlawful, and unconstitutional aspects of the UNITED STATES' conduct related thereto. | Plaintiffs' innocence and concealed the outrageous, unlawful, and unconstitutional aspects of the GOVERNMENT EMPLOYEES conduct related thereto. |
| 6. | **FAC ¶ 34**: Upon information and belief, Agent Willis attempted to "correct" the record and his subsequent testimony to protect himself and AUSAs Ahmed, Myhre and Bogden from prosecution for providing or otherwise suborning perjured testimony before the Grand Jury, and to assist the GOVERNMENT EMPLOYEES in furtherance of their unlawful conspiracy. Upon information and belief, Agent Willis' clandestine attempt to "clarify" the statement of an employee of another federal agency (the BLM) was performed at the direction of AUSAs Ahmed, Myhre and Bogden. In this regard, AUSA's Ahmed, Myhre, Bogden and Agent Willis each knew that Officer Brunk's prior statement was true and correct and, to conceal that truth and shroud their own misconduct, falsified evidence and withheld exculpatory evidence to ensure that the GOVERNMENT EMPLOYEES' "version of events" matched the fabricated record that AUSAs Ahmed, Myhre, Bogden and Agent Willis had presented to the Grand Jury to secure rogue indictments against Plaintiffs. Not only did AUSAs Ahmed, Myhre, Bogden and Officer Willis falsely inform the Grand Jury that the UNITED STATES did not deploy snipers in 2014, these same GOVERNMENT EMPLOYEES later drafted the indictments, wrongfully accusing the Bundy defendants of being snipers. | **SAC ¶ 36**: Upon information and belief, Agent Willis attempted to "correct" the record and his subsequent testimony to protect himself from prosecution for providing or otherwise suborning perjured testimony before the Grand Jury, and to assist the GOVERNMENT EMPLOYEES in furtherance of their unlawful conspiracy. Upon information and belief, Agent Willis' clandestine attempt to "clarify" the statement of an employee of another federal agency (the BLM) was to make sure that GOVERNMENT EMPLOYEES' "version of events" matched the fabricated record that was presented to the Grand Jury to secure rogue indictments against Plaintiffs. Not only did Officer Willis falsely inform the Grand Jury that the UNITED STATES did not deploy snipers in 2014, he wrongfully accusing the Bundy defendants of being snipers. |
| 7. | **FAC ¶ 39**: Moreover, during their investigative efforts in 2013 and leading up to the March and April 2014 incidents, DOJ representatives, including, without limitation, AUSAs Ahmed, | **SAC ¶ 41**: Moreover, during their investigative efforts in 2013 and leading up to the March and April 2014 incidents, BLM SAC Love and Officer Stover proposed |

|   | **Allegation in First Amended Complaint** | **Contradictory Allegation in Second Amended Complaint** |
|---|---|---|
|   | Myhre and Bogden, upon information and belief, knowingly, intentionally and willfully modified, revised, and supplemented the operational plan proposed by BLM SAC Love and Officer Stover to ensure that the final Cattle Impoundment Operation would, among other things: outrage the ranching community, especially the Bundy family and their supporters; provoke a confrontation between them; and, entrap the Bundy family, including, without limitation, the Plaintiffs, into responding with physical acts of violence that would justify the GOVERNMENT EMPLOYEES' arrest, detainment, and incarceration of Cliven Bundy, the Plaintiffs, and other Bundy family supporters. | and conducted the operational plan to ensure that the final Cattle Impoundment Operation would, among other things: outrage the ranching community, especially the Bundy family and their supporters; provoke a confrontation between them; and, entrap the Bundy family, including, without limitation, the Plaintiffs, into responding with physical acts of violence that would justify the GOVERNMENT EMPLOYEES to arrest, detain, and incarcerate Cliven Bundy, the Plaintiffs, and other Bundy family supporters. |
| 8. | **FAC ¶ 40**: Pursuant to that scheme, the GOVERNMENT EMPLOYEES closed to the public nearly six hundred thousand (600,000) acres of land in the Gold Butte and Overton Arm areas and purposefully forced all those who wanted to challenge the UNITED STATES' actions to do so at one of two small dirt parcels adjacent to highways in the Bunkerville area known as "First Amendment Zones." Notably, these two areas, located a considerable distance away from the BLM's Cattle Impoundment Operation and orchestrated "staging area," were, upon information and belief, purposefully selected by AUSAs Ahmed, Myhre and Bogden, BLM SAC Love, Officers Stover and Brunk, among others, to maximize the impairment of any protestors' First Amendment rights, including, without limitation, the Plaintiffs, and Bundy Family members, and incite those who would protest against the UNITED STATES' rogue operation and unconstitutional conduct (e.g., the purposeful destruction of the Bundy family's spring sites/ artesian wells and accompanying water rights) into a physical altercation. | **SAC ¶ 42**: Pursuant to that scheme, the GOVERNMENT EMPLOYEES closed to the public nearly six hundred thousand (600,000) acres of land in the Gold Butte and Overton Arm areas and purposefully forced all those who wanted to challenge the GOVERNMENT EMPLOYEES Willis, Love, Stover and Bunk, actions to do so at one of two small dirt parcels adjacent to highways in the Bunkerville area known as "First Amendment Zones." Notably, these two areas, located a considerable distance away from the BLM's Cattle Impoundment Operation and orchestrated "staging area," were, upon information and belief, purposefully selected by BLM SAC Love, Officers Stover and Brunk, among others, to maximize the impairment of any protestors' First Amendment rights, including, without limitation, the Plaintiffs, and Bundy Family members, and incite those who would protest against the GOVERNMENT EMPLOYEES rogue operation and unconstitutional conduct (e.g., the purposeful destruction of the Bundy family's spring |

|    | **Allegation in First Amended Complaint** | **Contradictory Allegation in Second Amended Complaint** |
|----|-------------------------------------------|----------------------------------------------------------|
|    |                                           | sites/ artesian wells and accompanying water rights) into a physical altercation. |
| 9. | FAC ¶ 41: In particular, the GOVERNMENT EMPLOYEES' egregious plan, orchestrated by AUSAs Ahmed, Myhre and Bogden, BLM SAC Love, Stover and Brunk, among others: seized cattle belonging to Cliven Bundy and the Bundy Ranch; visibly transported same to the BLM's "staging area;" demonstrably shooting several other cattle from helicopters circling the Bundy Ranch and surrounding areas; and, after having destroyed several thousands of dollars of the Bundy family's water right improvements and artesian springs / aquifers, purposefully parading a convoy of DOI / BLM vehicles and other construction demolition equipment before the Bundys, the Plaintiffs, and their supporters in order to provoke them into resisting or otherwise defying the GOVERNMENT EMPLOYEES' efforts. | SAC ¶ 43: In particular, the GOVERNMENT EMPLOYEES' egregious plan, orchestrated by Agent Willis, and BLM SAC Love, Stover and Brunk, among others: seized cattle belonging to Cliven Bundy and the Bundy Ranch; visibly transported same to the BLM's "staging area;" demonstrably shot several other cattle from helicopters that circled the Bundy Ranch and surrounding areas; and, after having destroyed several thousands of dollars of the Bundy family's water right improvements and artesian springs / aquifers, purposefully paraded a convoy of DOI / BLM vehicles and other construction demolition equipment before the Bundys, the Plaintiffs, and their supporters in order to provoke them into resisting or otherwise defying the GOVERNMENT EMPLOYEES' efforts. |
| 10. | FAC ¶ 42: In furtherance of that same scheme, the GOVERNMENT EMPLOYEES, and others at their direction and control, later brutally arrested, assaulted, beat, and kicked Dave Bundy, as AUSAs Ahmed, Myhre and Bogden, BLM SAC Love, Officers Stover and Brunk, among others, had planned. | SAC ¶ 44: In furtherance of that same scheme, the GOVERNMENT EMPLOYEES, and others at their direction and control, later brutally arrested, assaulted, beat, and kicked Dave Bundy, as the GOVERNMENT EMPLOYEES, had planned. |
| 11. | FAC ¶ 43: Throughout that entire investigative / pre-judicial process, Defendants Ahmed, Myhre, Bogden, Love, Stover and Brunk, among others, purposefully, intentionally, and knowingly sought to infringe upon various well-known and clearly understood federal and state constitutional rights for the calculated and orchestrated purpose to entrap the Bundys, the Plaintiffs, and their supporters, and entrap them into physically | SAC ¶ 45: Throughout that entire investigative / pre-judicial process, Defendants Willis, Love, Stover and Brunk, among others, purposefully, intentionally, and knowingly sought to infringe upon various well-known and clearly understood federal and state constitutional rights for the calculated and orchestrated purpose to entrap the Bundys, the Plaintiffs, and their supporters, and entrap them into physically or violently responding |

|     | **Allegation in First Amended Complaint** | **Contradictory Allegation in Second Amended Complaint** |
| --- | --- | --- |
|     | or violently responding to the GOVERNMENT EMPLOYEES' egregious actions and interference with those rights. | to the GOVERNMENT EMPLOYEES' egregious actions and interference with those rights. |
| 12. | FAC ¶ 44: Although the GOVERNMENT EMPLOYEES collectively knew that their concocted charges were false, they, nevertheless, deceptively attempted to strong-arm the indicted Bundy supporters into accepting plea agreements (knowing that any such agreements could be used against all of the other named Bundy defendants in the Underlying Action). In this regard, the GOVERNMENT EMPLOYEES, at the direction of AUSAs Ahmed, Myhre and Bogden, advised the Plaintiffs, among other things, that: a conviction against them on all counts would impose mandatory minimum life sentences which would separate them from their friends, family and loved ones for the rest of their lives or for many years – an outcome that could be avoided if they simply pled guilty to one or more of the bogus conspiracy charges; and, if they did so, the UNITED STATES would release them from custody for time served. | SAC ¶ 46: Although the GOVERNMENT EMPLOYEES collectively knew that their concocted charges were false, they, nevertheless, deceptively attempted to strong-arm the indicted Bundy supporters into accepting plea agreements (knowing that any such agreements could be used against all of the other named Bundy defendants in the Underlying Action). In this regard, the GOVERNMENT EMPLOYEES advised the Plaintiffs, among other things, that: a conviction against them on all counts would impose mandatory minimum life sentences which would separate them from their friends, family and loved ones for the rest of their lives or for many years – an outcome that could be avoided if they simply pled guilty to one or more of the bogus conspiracy charges; and, if they did so, the GOVERNMENT EMPLOYEES, would release them from custody. |
| 13. | FAC ¶ 45: The GOVERNMENT EMPLOYEES, at the direction of AUSAs Ahmed, Myhre and Bogden, directed that informants be planted among the Plaintiffs during their incarceration and that other inmates housed with Plaintiffs surreptitiously be offered an immediate release from custody if those inmates would testify falsely against the Plaintiffs regarding the UNITED STATES' concocted criminal charges. | SAC ¶ 47: The GOVERNMENT EMPLOYEES, Willis. Lover, Stover and Bunk directed that informants be planted among the Plaintiffs during their incarceration and that other inmates housed with Plaintiffs surreptitiously be offered an immediate release from custody if those inmates would testify falsely against the Plaintiffs regarding the GOVERNMENT EMPLOYEES concocted criminal charges. |
| 14. | FAC ¶ 46: The GOVERNMENT EMPLOYEES, at the direction of AUSAs Ahmed, Myhre and Bogden, also prepared, instructed, and directed others to prepare fabricated investigative | SAC ¶ 48: The GOVERNMENT EMPLOYEES also prepared, instructed, and directed others to prepare fabricated investigative documents for those inmates to |

|    | **Allegation in First Amended Complaint** | **Contradictory Allegation in Second Amended Complaint** |
|----|-------------------------------------------|----------------------------------------------------------|
|    | documents for those inmates to sign, thus manufacturing false evidence that would be used in their rogue prosecution against the Plaintiffs in violation of the law and said Plaintiffs' constitutional and due process rights. | sign, thus manufacturing false evidence that would be used in their rogue prosecution against the Plaintiffs in violation of the law and said Plaintiffs' constitutional and due process rights. |
| 15. | **FAC ¶ 49**: AUSA Bodgen and BLM SAC Love, recognizing that the GOVERNMENT EMPLOYEES' unlawful and unconstitutional conduct had failed to produce the planned results, implemented those orders and directed federal and state officers to ensure that "a Bundy," if not Cliven Bundy himself, would pull the pins from the cattle pens so that the DOJ could use that affirmative act to establish the GOVERNMENT EMPLOYEES' fabricated theories of criminal conspiracy, extortion, and armed robbery, among other false claims, against the Plaintiffs. | **SAC ¶ 51**: Recognizing that the GOVERNMENT EMPLOYEES' unlawful and unconstitutional conduct had failed to produce the planned results, those orders were implemented and federal and state officers were directed to ensure that "a Bundy," if not Cliven Bundy himself, would pull the pins from the cattle pens to affirmatively establish the GOVERNMENT EMPLOYEES' fabricated theories of criminal conspiracy, extortion, and armed robbery, among other false claims, against the Plaintiffs. |
| 16. | **FAC ¶ 50**: In accordance with the State orders and at the direction of the GOVERNMENT EMPLOYEES, Margaret Houston, a sister of Cliven Bundy, ultimately "pulled the pin" on the cattle pen and released the cattle. AUSAs Ahmed, Myhre and Bogden, in turn, used that physical act to support the UNITED STATES' rogue prosecution of the Plaintiffs. | **SAC ¶ 52**: In accordance with the State orders and at the direction of the GOVERNMENT EMPLOYEES, Margaret Houston, a sister of Cliven Bundy, ultimately "pulled the pin" on the cattle pen and released the cattle, which was utilized to support the GOVERNMENT EMPLOYEES Willis, Lover, Stover and Bunk rogue prosecution of the Plaintiffs. |
| 17. | **FAC ¶ 51**: In furtherance of the GOVERNMENT EMPLOYEES' scheme to wrongfully prosecute the Plaintiffs, and to manufacture evidence in support of the fabricated claims against them, AUSAs Ahmed, Myhre, Bogden and Agent Willis concocted a scheme to deceive the Plaintiffs, and their supporters, into making incriminating statements or confessions through the UNITED STATES' unprecedented undercover FBI operation named "Longbow Productions." | **SAC ¶ 53**: In furtherance of the GOVERNMENT EMPLOYEES scheme to wrongfully incarcerate the Plaintiffs, and to manufacture evidence in support of the fabricated claims against them, Agent Willis concocted a scheme to deceive the Plaintiffs, and their supporters, into making incriminating statements or confessions through the UNITED STATES' unprecedented undercover FBI operation named "Longbow Productions." |

|  | **Allegation in First Amended Complaint** | **Contradictory Allegation in Second Amended Complaint** |
|---|---|---|
| 18. | FAC ¶ 52: Notably, AUSAs Ahmed, Myhre and Bogden, and Agent Willis, among others, directed hundreds of thousands of taxpayer dollars into an operation in which masqueraded FBI undercover agents falsely posed as a film crew making a documentary of the 2014 "standoff." | SAC ¶ 54: Notably, Agent Willis, among others, directed hundreds of thousands of taxpayer dollars into an operation in which masqueraded FBI undercover agents falsely posed as a film crew making a documentary of the 2014 "standoff." |
| 19. | FAC ¶ 53: Upon information and belief, AUSAs Ahmed, Myhre and Bogden, and Agent Willis directed the FBI undercover agents to entice the Plaintiffs, along with the other to-be-named defendants, with alcohol, money and other goods and favors to exaggerate their respective involvement in the GOVERNMENT EMPLOYEES' orchestrated "standoff" or to otherwise misstate, exaggerate or falsely hype the event itself, so that the UNITED STATES could increase the likelihood of securing convictions in rogue criminal proceedings that would ultimately initiate. | SAC ¶ 55: Upon information and belief, Agent Willis directed the FBI undercover agents to entice the Plaintiffs, along with the other to-be-named defendants, with alcohol, money and other goods and favors to exaggerate their respective involvement in the GOVERNMENT EMPLOYEES orchestrated "standoff" or to otherwise misstate, exaggerate or falsely hype the event itself, so that the GOVERNMENT EMPLOYEES could increase the likelihood of securing convictions in rogue criminal proceedings that would ultimately be initiated. |
| 20. | FAC ¶ 54: To that end, AUSAs Ahmed, Myhre and Bogden, and Agent Willis, among others, successfully deceived various Bundy family members and supporters into participating in the "staged" interviews – interviews in which the undercover FBI agents, at said Defendants' prodding, asked leading questions, with the answers later being selectively edited and later used by the GOVERNMENT EMPLOYEES in the Underlying Action. | SAC ¶ 56: To that end, Agent Willis, among others, successfully deceived various Bundy family members and supporters into participating in the "staged" interviews – interviews in which the undercover FBI agents, at said Defendants' prodding, asked leading questions, with the answers later being selectively edited and later used in the underlying criminal case. |
| 21. | FAC ¶ 55: The fact that AUSA Bogden had scripted and directed the filming of a video depicting "a Bundy" removing a pin from the cattle pen at the UNITED STATES Cattle Impoundment Operation became problematic for AUSAs Ahmed, Myhre and Bogden when they sought to obtain a grand jury indictment against the Plaintiffs the following year. | SAC ¶ 57: The fact that the GOVERNMENT EMPLOYEES had scripted and directed the filming of a video depicting "a Bundy" removing a pin from the cattle pen at the GOVERNMENT EMPLOYEES Cattle Impoundment Operation became problematic when a |

|    | **Allegation in First Amended Complaint** | **Contradictory Allegation in Second Amended Complaint** |
|----|-------------------------------------------|-----------------------------------------------------------|
|    |                                           | grand jury indictment against the Plaintiffs was sought the following year. |
| 22. | FAC ¶ 56: Since AUSA Bogden stepped out of his role as prosecutor and assumed the role of investigator (one who directed, supervised, and led law enforcement personnel in the filming of that incident), he was a material witness thereto - one who was never cross-examined or otherwise testified regarding that unprotected, unprivileged conduct. | Paragraph entirely omitted from SAC. |
| 23. | FAC ¶ 57: Notably, during the October 14, 2015 Grand Jury proceedings, AUSA Myhre purposefully avoided a Grand Juror's question directed at the UNITED STATES' involvement in the pin removal act and purposefully proffered evasive testimony to avert BLM SAC Love from disclosing the truth regarding that incident. | Paragraph entirely omitted from SAC. |
| 24. | FAC ¶ 58: Throughout 2015 and 2016, AUSAs Ahmed, Myhre and Bogden, Agent Willis, BLM SAC Love, and Officers Stover and Brunk deliberately, maliciously, and intentionally misled the Grand Jury so that they could falsely obtain indictments against the Plaintiffs. | SAC ¶ 58: Throughout 2015 and 2016, Agent Willis and BLM SAC Love, and Officers Stover and Brunk deliberately, maliciously, and intentionally misled the Grand Jury so that they could falsely obtain indictments against the Plaintiffs. |
| 25. | FAC ¶ 59: For example, on June 29, 2015, AUSA Myhre and Agent Willis knowingly, intentionally and willfully misled the Grand Jury regarding the circumstances surrounding Dave Bundy's April 6, 2014 false arrest. | SAC ¶ 59: For example, on June 29, 2015, Agent Willis knowingly, intentionally and willfully misled the Grand Jury regarding the circumstances surrounding Dave Bundy's April 6, 2014 false arrest. |
| 26. | FAC ¶ 60: Specifically, AUSA Myhre egregiously stated that Dave Bundy was doing "some sort of reconnaissance or trying to take photographs of the BLM as they were coming off the range ..." with Agent Willis testifying that Dave Bundy was in a "closed area" and that the "agents encountered them in a closed area and asked them to leave." | SAC ¶ 60: Specifically, Agent Willis testified that Dave Bundy was in a "closed area" and that the "agents encountered them in a closed area and asked them to leave." |

|  | **Allegation in First Amended Complaint** | **Contradictory Allegation in Second Amended Complaint** |
|---|---|---|
| 27. | **FAC ¶ 61**: AUSA Myhre and Agent Willis, however, knew that they were intentionally deceiving and misleading the Grand Jury when they provided that false information and testimony. In particular, said GOVERNMENT EMPLOYEES knew that, on that day, Plaintiff Ryan Bundy's, brother Dave Bundy, and other Bundy family members traveled from Utah to the Bundy Ranch in Clark County, Nevada to give flowers to their mother for her birthday via Nevada State Route 170 (S.R. 170) which was not a "closed area" when Dave Bundy observed what appeared to be snipers in sand bag embankments on the hill above the junction of Gold Butte Road and S.R. 170. | **SAC ¶ 61**: Agent Willis, however, knew that he was intentionally deceiving and misleading the Grand Jury when he provided that false information and testimony. In particular, he knew that, on that day, Plaintiff Ryan Bundy's, brother Dave Bundy, and other Bundy family members traveled from Utah to the Bundy Ranch in Clark County, Nevada to give flowers to their mother for her birthday via Nevada State Route 170 (S.R. 170), which was not a "closed area" when Dave Bundy observed what appeared to be snipers in sand bag embankments on the hill above the junction of Gold Butte Road and S.R. 170. |
| 28. | **FAC ¶ 63**: On March 2, 2016, AUSAs Ahmed, Myhre and Bogden knowingly and intentionally suborned perjurious testimony from Agent Willis to secure an indictment against Dave Bundy, falsely claiming that Plaintiff Dave Bundy's vehicle was intended to impede the GOVERNMENT EMPLOYEES' convoy as it emerged onto S.R. 170.<br><br>AHMED: And the BLM believed because of the positions of the vehicles, including Dave Bundy's, that they could easily impede that convoy as it emerged onto State Route 170, isn't that right?<br>WILLIS: Yes. | **SAC ¶ 63**: On March 2, 2016, Agent Willis knowingly and intentionally provided perjurious testimony to the Grand Jury to secure an indictment against Dave Bundy, falsely claiming that Plaintiff Dave Bundy's vehicle was intended to impede the GOVERNMENT EMPLOYEES' convoy as it emerged onto S.R. 170. |
| 29. | **FAC ¶ 64**: Notably, AUSAs Ahmed, Myhre and Bogden and Agent Willis knew that Dave Bundy's vehicle was lawfully parked more than one hundred fifty (150) feet away from the S.R. 170 intersection and, as such, could not conceivably have been perceived as an attempt to impede the GOVERNMENT EMPLOYEES' convoy. Further, AUSAs Ahmed, Myhre and Bogden and Agent Willis also unequivocally knew, but | **SAC ¶ 64**: Notably, Agent Willis knew that Dave Bundy's vehicle was lawfully parked more than one hundred fifty (150) feet away from the S.R. 170 intersection and, as such, could not conceivably have been perceived as an attempt to impede the GOVERNMENT EMPLOYEES' convoy. Further, Agent Willis also unequivocally knew, but intentionally |

|     | **Allegation in First Amended Complaint** | **Contradictory Allegation in Second Amended Complaint** |
| --- | --- | --- |
|     | intentionally and willfully withheld from the Grand Jury, that there never was any probable cause or justification to arrest Dave Bundy. | and willfully withheld from the Grand Jury, that there never was any probable cause or justification to arrest Dave Bundy. |
| 30. | FAC ¶ 65: At that same time, AUSA Ahmed knowingly, intentionally, and willfully elicited false testimony from Agent Willis regarding Mel Bundy, baldly testifying that, on April 12, 2014, Mel Bundy threatened federal officers when, in fact, AUSA Ahmed and Agent Willis knew that there was absolutely no evidence of any such threats, nor probable cause to substantiate Mel Bundy's arrest. | SAC ¶ 65: At that same time, Agent Willis testified that Mel Bundy threatened federal officer when, in fact, he that there was absolutely no evidence of any such threats, nor probable cause to substantiate Mel Bundy's arrest. |
| 31. | FAC ¶ 66: On September 16, 2015, AUSA Ahmed knowingly, intentionally, and willfully elicited false and misleading testimony from Officer Stover before the Grand Jury regarding the BLM's threat assessments of the Plaintiffs and their propensity for engaging in potential acts of violence. AUSA Ahmed and Officer Stover, well-aware that the BLM assessments actually established that the Bundys would not engage in potential acts of violence, elicited and provided false testimony claiming that the Bundys would, in fact, respond with potential acts of violence. | SAC ¶ 66: On September 16, 2015, Officer Stover knowingly, intentionally, and willfully testified before the Grand Jury regarding the BLM's threat assessments of the Plaintiffs and their propensity for engaging in potential acts of violence, despite knowing that BLM assessments actually established that the Bundys would not engage in potential acts of violence. |
| 32. | FAC ¶ 67: At that same time, AUSA Ahmed and Officer Stover also knowingly, intentionally, and willfully elicited and provided false and misleading testimony regarding the UNITED STATES' use of snipers. Despite the fact that numerous federal agents / snipers were located on hillsides around the Bundy Ranch and Cattle Impoundment Operation's "staging area" in April 2014 pursuant to the GOVERNMENT EMPLOYEES' scheme, AUSA Ahmed and Officer Stover egregiously claimed that the operational plan did not include the use of snipers, and the | SAC ¶ 67: At that same time, Officer Stover also knowingly, intentionally, and willfully elicited and provided false and misleading testimony regarding the GOVERNMENT EMPLOYEES use of snipers. Despite the fact that numerous federal agents / snipers were located on hillsides around the Bundy Ranch and Cattle Impoundment Operation's "staging area" in April 2014, pursuant to the GOVERNMENT EMPLOYEES' scheme, Officer Stover egregiously claimed that the operational plan did not include the use of snipers, and |

|  | **Allegation in First Amended Complaint** | **Contradictory Allegation in Second Amended Complaint** |
|---|---|---|
|  | purported use of snipers was merely a story concocted by the Bundys and their supporters. | the purported use of snipers was merely a story concocted by the Bundys and their supporters. |
| 33. | **FAC ¶ 68**: AUSA Ahmed and Officer Stover also materially misled the Grand Jury regarding the GOVERNMENT EMPLOYEES' First Amendment Zones imposed on the Bundy family, the Plaintiffs, and their supporters in March and April 2014. | **SAC ¶ 68**: Officer Stover also materially misled the Grand Jury regarding the GOVERNMENT EMPLOYEES' First Amendment Zones imposed on the Bundy family, the Plaintiffs, and their supporters in March and April 2014. |
| 34. | **FAC ¶ 71**: Consequently, AUSA Ahmed and Officer Stover knew that in order for the Grand Jury to indict the demonstrators (persons who merely came to protest the GOVERNMENT EMPLOYEES' egregious conduct, support the Bundy family, and exercise their own constitutionally protected free speech rights), they had to knowingly, intentionally and willfully mislead the Grand Jury regarding same. | **SAC ¶ 71**: Consequently, Officer Stover knew that in order for the Grand Jury to indict the demonstrators (persons who merely came to protest the GOVERNMENT EMPLOYEES' egregious conduct, support the Bundy family, and exercise their own constitutionally protected free speech rights), he had to knowingly, intentionally and willfully mislead the Grand Jury regarding same. |
| 35. | **FAC ¶ 72**: To that end, on September 16, 2015, AUSA Ahmed and Officer Stover knowingly, intentionally, and willfully misled the Grand Jury into believing the following:<br><br>AHMED: Did the operation plan consider having designated areas in the operation area for people who wanted to view the governments activities or the impound operation itself?"<br><br>STOVER: "It did."<br><br>AHMED: "And were those areas actually what would come to be known as the First Amendment zones or First Amendment areas?"<br><br>STOVER: "Correct. . . . It included those areas not to dictate to people where they could express their First Amendment rights but it allowed an area that was safe | Paragraph entirely omitted from SAC. |

|  | **Allegation in First Amended Complaint** | **Contradictory Allegation in Second Amended Complaint** |
|---|---|---|
|  | for the public to go to and get them in as close proximity as possible to the closed operational area so they would have chance to if they wanted to view some of the gather operations?" <br><br> AHMED: "Is this setting up of areas as close as possible to where the operation activities are taking place, is that something that the BLM includes regularly in its gathering operations?" <br><br> STOVER: "Sure. . . ." |  |
| 36. | FAC ¶ 73: Notably, however, AUSA Ahmed and Office Stover knew that the First Amendment Zones: (1) were mandatory (i.e., federal officers told protesters that they must go to the designated First Amendment Zones); (2) offered no view whatsoever of any Cattle Impoundment Operations; (3) were located miles away from those operations; and (4) were actually patrolled, monitored, and watched over by armed government agents. | SAC ¶ 72: Despite knowing that the First Amendment Zones: (1) were mandatory (i.e., federal officers told protesters that they must go to the designated First Amendment Zones); (2) offered no view whatsoever of any Cattle Impoundment Operations; (3) were located miles away from those operations; and (4) were actually patrolled, monitored, and watched over by armed government agents, Officer Stover testified at the Grand Jury that the operation plan included setting up First Amendment Zones where the public could safely view some of the gather operations in a safe place, in close proximity as possible to the closed operational area. |
| 37. | FAC ¶ 74: On March 2, 2016, after several months of presenting fabricated, misleading and perjured evidence and testimony to the Grand Jury, AUSAs Ahmed, Myhre and Bogden, BLM SAC Love, Officers Stover and Brunk, and Agent Willis obtained an indictment against the Plaintiffs – evidence which these GOVERNMENT EMPLOYEES knew was false and directly contradicted by exculpatory evidence which said representatives knowingly, intentionally, and willfully withheld | SAC ¶ 73: On March 2, 2016, due to fabricated, misleading and perjured evidence and testimony, an indictment was obtained against the Plaintiffs. |

|  | **Allegation in First Amended Complaint** | **Contradictory Allegation in Second Amended Complaint** |
|---|---|---|
|  | from the Grand Jury, the Bundy defendants, the Plaintiffs, and their counsel. |  |
| 38. | FAC ¶ 75: That same day, AUSAs Ahmed, Myhre and Bogden and Agent Willis egregiously sought the issuance of arrest warrants for Plaintiffs Ryan Bundy and Ryan Payne, knowing that there was absolutely no probable cause whatsoever to support any of their arrests. | SAC ¶ 74: That same day, arrest warrants were sought for Plaintiffs Ryan Bundy and Ryan Payne, despite the GOVERNMENT EMPLOYEES Willis, Love, Stover and Bunk's, knowledge that there was absolutely no probable cause whatsoever to support any of their arrests. |
| 39. | FAC ¶ 76: To that end, AUSAs Ahmed, Myhre and Bogden and Agent Willis withheld exculpatory evidence from the judicial officer that issued the warrants, and knowingly used false, fabricated, and manufactured evidence to secure same. | SAC ¶ 75: To that end, Agent Willis knowingly used false, fabricated, and manufactured evidence, and withheld exculpatory evidence, to secure the arrest warrants. |
| 40. | FAC ¶ 80: Further, after the indictment was filed in the Underlying Action, AUSAs Ahmed, Myhre and Bogden, Agent Willis, BLM SAC Love, and Officers Stover and Brunk conspired with one another to conceal, among other evidence, Dave Bundy's iPad, the BLM threat assessments, the GOVERNMENT EMPLOYEES' use of snipers, and other exculpatory evidence from the Plaintiffs, their counsel, and all of the Bundy defendants in the Underlying Action. | SAC ¶ 79: Further, after the indictment was filed in the Underlying Action, Agent Willis, BLM SAC Love, and Officers Stover and Brunk conspired with one another to conceal, among other evidence, Dave Bundy's iPad, the BLM threat assessments, the GOVERNMENT EMPLOYEES' use of snipers, and other exculpatory evidence from the Plaintiffs, their counsel, and all of the Bundy defendants in the Underlying Action. |
| 41. | FAC ¶ 87: Notably, as images from the April 6, 2014 incident confirmed (images of which AUSAs Ahmed, Myhre and Bogden and Agent Willis were well-aware at that time), Dave Bundy's vehicle was parked at least one hundred fifty (150) feet away from the claimed S.R. 170 intersection where the BLM convoy would ultimately travel and, at that location, it was impossible for Dave Bundy's vehicle to have "blocked" the BLM convoy. | SAC ¶ 86: Notably, as images from the April 6, 2014 incident confirmed (images of which Agent Willis was well-aware at that time), Dave Bundy's vehicle was parked at least one hundred fifty (150) feet away from the claimed S.R. 170 intersection where the BLM convoy would ultimately travel and, at that location, it was impossible for Dave Bundy's vehicle to have "blocked" the BLM convoy. |

|     | **Allegation in First Amended Complaint** | **Contradictory Allegation in Second Amended Complaint** |
| --- | --- | --- |
| 42. | **FAC ¶ 88**: Further, as AUSAs Ahmed, Myhre and Bogden and Agent Willis were also well aware, Dave Bundy was lawfully exercising his First Amendment rights when he photographed and filmed on his iPad the BLM officers, spotters, and snipers in plain view from the public highway, and that he was under no legal obligation "to leave the area when asked to do so." | **SAC ¶ 87**: Further, Agent Willis was also well aware that Dave Bundy was lawfully exercising his First Amendment rights when he photographed and filmed on his iPad the BLM officers, spotters, and snipers in plain view from the public highway, and that he was under no legal obligation "to leave the area when asked to do so." |
| 43. | **FAC ¶ 89**: The GOVERNMENT EMPLOYEES also knew that Dave Bundy's iPad captured photographs and video of those entire events (evidence which completely exonerated Dave Bundy, established the egregiousness of the GOVERNMENT EMPLOYEES' actions that day, undermined the fabricated testimony of AUSA Ahmed and Agent Willis to the Grand Jury, and exposed other multiple false and misleading statements contained in the indictment), including, without limitation, Dave Bundy's telephone call with a 9-1-1 operator while he was being falsely arrested and assaulted by the BLM officers. | **SAC ¶ 88**: The GOVERNMENT EMPLOYEES Willis, Love, Stover and Bunk, also knew that Dave Bundy's iPad captured photographs and video of those entire events (evidence which completely exonerated Dave Bundy, established the egregiousness of the GOVERNMENT EMPLOYEES' actions that day, undermined the fabricated testimony of Agent Willis to the Grand Jury, and exposed other multiple false and misleading statements contained in the indictment), including, without limitation, Dave Bundy's telephone call with a 9-1-1 operator while he was being falsely arrested and assaulted by the BLM officers. |
| 44. | **FAC ¶ 90**: Upon information and belief, AUSAs Ahmed, Myhre and Bogden, BLM SAC Love, Officers Stover and Brunk, and Agent Willis, among others, hid, concealed, converted, altered, damaged and/or erased this exculpatory evidence from Dave Bundy's iPad and concealed same from the Plaintiffs as part of the GOVERNMENT EMPLOYEES' egregious scheme to wrongfully convict Plaintiffs and imprison them for life for crimes they did not commit. | **SAC ¶ 89**: Upon information and belief, BLM SAC Love, Officers Stover and Brunk, and Agent Willis, among others, hid, concealed, converted, altered, damaged and/or erased this exculpatory evidence from Dave Bundy's iPad and concealed same from the Plaintiffs as part of the GOVERNMENT EMPLOYEES' egregious scheme to wrongfully convict Plaintiffs and imprison them for life for crimes they did not commit. |
| 45. | **FAC ¶ 105**: Specifically, in a document entitled "Disclosure and Complaint Narrative in Regard to Bureau of Land Management Law Enforcement Supervisory Misconduct and Associated | **SAC ¶ 92**: Specifically, in the Whistleblower Complaint, Mr. Wooten exposed the GOVERNMENT |

|  | **Allegation in First Amended Complaint** | **Contradictory Allegation in Second Amended Complaint** |
|---|---|---|
|  | Cover-ups as well as Potential Unethical Actions, Malfeasance and Misfeasance by United States Attorney's Office Prosecutors from the District of Nevada, (Las Vegas) in Reference to the Cliven Bundy Investigation," (hereinafter "Whistleblower Complaint"), Mr. Wooten exposed the GOVERNMENT EMPLOYEES' conspiracy and its unlawful, unconstitutional conduct. | EMPLOYEES Willis, Love, Stover and Bunk's conspiracy and their unlawful, unconstitutional conduct. |
| 46. | **FAC ¶ 107**: By October 2017, the trial of the Tier 1 Bundy defendants was nearing commencement and defense lawyers in that action expressed concerns to the Court regarding missing documents and other evidence that had not been produced or otherwise disclosed by the UNITED STATES and AUSAs Ahmed, Myhre and Bogden, but were known to exist. | Paragraph entirely omitted from SAC. |
| 47. | **FAC ¶ 108**: In response, Chief District Court Judge Navarro held an evidentiary hearing and, at that hearing, numerous Brady violations were discovered, including, without limitation, extensive exculpatory evidence regarding the Tier 2 defendants that had been knowingly, intentionally and willfully withheld by the UNITED STATES and AUSAs Ahmed, Myhre and Bogden. | **SAC ¶ 94**: In response, Chief District Court Judge Navarro held an evidentiary hearing and, at that hearing, discovered, including, without limitation, extensive exculpatory evidence regarding the Tier 1and Tier 2 defendants that had been knowingly, intentionally and willfully withheld by GOVERNMENT EMPLOYEES Willis, Love Stover and Bunk. |