BRET O. WHIPPLE, ESQ.
Nevada Bar No. 6168
**JUSTICE LAW CENTER**
1100 S. Tenth Street
Las Vegas, NV 89104
(702) 731-0000
civil@justice-law-center.com
Attorney for Plaintiffs

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

RYAN BUNDY, individually; ANGELA
BUNDY, individually; JAMIE BUNDY,
individually; VEYO BUNDY, individually;
JERUSHA BUNDY, individually; JASMINE
BUNDY, individually; OAK BUNDY,
individually; CHLOEE BUNDY,
individually; MORONI BUNDY,
individually; SALEM BUNDY, individually;
and, RYAN PAYNE, individually,

                    Plaintiffs,

vs.

UNITED STATES OF AMERICA; DOES 1
through 100; and ROES 1 through 100,
inclusive,

                    Defendant.

Case No.:2:23-cv-01724

**PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS
THE SECOND AMENDED
COMPLAINT; MEMORANDUM OF
POINTS AND AUTHORITIES**

# **Table of Contents**

**POINTS AND AUTHORITIES**...........................................................................**1**

**STATEMENT OF FACTS**...............................................................................**1**

**LEGAL ARGUMENT**......................................................................................**3**

   **DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED**......................**3**

    **1.  Rule 12(b)(1) Standard** ...............................................................**3**

    **2.  Federal Jurisdiction Exists For This Matter to Proceed**............................**4**

    **3.  Rule 12(b)(6) Standard** ...............................................................**6**

    **4.  The intentional tort exception to the FTCA's waiver of sovereign immunity does not preclude the Plaintiffs' ability to bring this matter forward**...........................................................................**7**

      **(i)  The SAC pleads affirmative facts to overcome the pesumption of independent prosecutorial judgment**.......................................**8**

      **(ii)  The SAC adequately pled facts of a favorable termination** ............**11**

      **(iii)  The SAC adequately pled facts showing a lack of probable cause.** **13**

    **5.  The Intentional Infliction of Emotional Distress (IIED) is adequately pled, details specific instances of "extreme and outrageous" behavior, and alleges physical manifestations of Defendants' extreme and outrageous behavior toward the Plaintiffs** ...............................................**14**

    **6.  Loss of Consortium is Derivative of the Physical Harm, and Thus, is adequately pled and should be allowed to proceed**...............................**16**

**CONCLUSION**    ...................................................................................**16**

## **Table of Authorities**

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................... 10

*Assoc. of Med. Colls. v. United States*, 217 F.3d 770 (9th Cir. 2000) ........................... 7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................... 10

Blankenhorn v. City of Orange, 485 F.3d 463, 482 (9th Cir. 2007) ....................... 13, 17

*Cambell v. City of Bakersfield,* No. 04-cv-5585, 2006 WL 2054072 at *20 (E.D. Cal. July 21, 2006) ........................................................................................................................ 16

*Connectu LLC v. Zuckerberg*, 522 F.3d 82, 91 (1st Cir. 2008) ..................................... 9

*Fakoya v. County of Clark*, 2014 WL 5020592 (D.Nev. 2014) .................................... 20

*Gen. Motors Corp v. Eighth Judicial Dist. Court of State of Nev. Ex rel. Cnty. Of Clark*, 122 Nev 466, 134 P.3d 111 (Nev. 2006) ...................................................................... 20

*Jordan v. State ex rel. Dep't of Motor Vehicles and Pub. Safety,* 124 Nev. 227 (2008) .............. 17

*LaMantia v. Redisi,* 118 Nev. 27 (2002) ....................................................................... 17

*Moss v. U.S. Secret Serv.*, 572 F.3d 962 (9th Cir. 2009) ............................................... 11

*Pistor v. Garcia*, 791 F.3d 1104 (9th Cir. 2015) ............................................................. 7

*Ricord v. Cent. Pac. RR. Co.,* 15 Nevada 167 (1880) .................................................. 17

*Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473-474 (2007) .......................... 9

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035 (9th Cir. 2004) ................................... 8

*Sagonwsky v. More*, 64 Cal. App. 4th 122, 128 (1998) .............................................. 16

*Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) ............... 10

*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001) ............................... 10

*Thompson v. Clark*, 596 U.S. 36, 49 (2022), .............................................................. 15

*Thompson,* 596 U.S. at 48 ........................................................................................... 15

*United States v. Cliven Bundy, et al.*, Case No. 2:16-cr-00046 ..................................... 6

*United States v. Corinthian Colleges*, 655 F.3d 984, 997 (9th Cir. 2011) ................... 9

**Statutes**

26 U.S.C. 2680(h) ................................................................................ 11, 12, 13, 19

Rules

Fed. R. Civ. P. 12(b)(1) ...................................................................................... 10

Fed. R. Civ. P. 12(b)(6) ................................................................................. 10, 11

Fed. R. Civ. P. 8(a) ............................................................................................. 10

Fed. R. Civ. P. 8(a)(2) ......................................................................................... 10

Plaintiffs Angela Bundy, Jamie Bundy, Veyo Bundy, Jerusha Bundy, Jasmine Bundy, Oak Bundy, Chloee Bundy, Moroni Bundy, Salem Bundy, Ryan Bundy, and Ryan Payne, by and through undersigned counsel, hereby file their Opposition to Defendant's Motion to Dismiss the Plaintiffs' Second Amended Complaint.

DATED on this 20th day of June, 2025.

**JUSTICE LAW CENTER**

/s/ Bret O. Whipple
BRET O. WHIPPLE, ESQ.
Nevada Bar #6168
1100 S. Tenth Street
Las Vegas, NV  89104
Attorney for Plaintiffs

## POINTS AND AUTHORITIES

### I.

### STATEMENT OF FACTS

Federal criminal prosecution is a process that commonly involves at least four different entities and/or individuals.   First is the law enforcement personnel that from the beginning investigate facts that might constitute a criminal act.  Second, the law enforcement personnel may present these facts to a specialized attorney, or group of attorneys, commonly known as the United States Attorney's Office.  This attorney or group of attorneys—referred to as prosecutors—take that information developed by the law enforcement personnel to an independent third party.  That third party can initially be a group of citizens sitting in the form of a grand jury.  Lastly, the final step includes a judge and/or jury for a final resolution. U.S. Courts, *Criminal Cases*, U.S. Courts, https://www.uscourts.gov/about-federal-courts/types-cases/criminal-cases (last visited June 20, 2025).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Here, the Bundy family (including Ryan Bundy and Ryan Payne) were accused of crimes which were investigated by federal officers that worked for the Bureau of Land Management (BLM), Department of the Interior (DOI), and the Federal Bureau of Investigation (FBI).  These federal officers took information that they had gathered and gave that information to the Las Vegas U.S. Attorney's Office.  That information was then presented to a grand jury and then eventually to a judge and jury.

As a result, Cliven Bundy and eighteen Bundy defendants, including Ryan Bundy and Ryan Payne, were prosecuted for twenty-one crimes (See *United States v. Cliven Bundy, et al*., Case No. 2:16-cr-00046.  The matter proceeded to trial.  In late October to early November 2017, the existence of a Whistleblower Complaint filed by BLM Special Agent/Lead Investigator Larry Wooten ("Wooten 1") surfaced acknowledging multiple violations of the Bundy Defendants' civil and constitutional rights by law enforcement officers in connection with the United States' arrest, detention and prosecution of the Bundy Defendants.  As a result of the United States' failure to disclose this (and other) exculpatory Brady evidence and its intentional withholding of other relevant and material evidence relative to the non-existence of probable cause related to the Government's decision to arrest, detain and prosecute all Bundy Defendants, on December 20, 2017, Judge Navarro granted the Bundy Defendants' Motion for a Mistrial (ECF No. 2856) and various Motions to Dismiss (ECF Nos 2916, 2924, and 2925) for a multitude of reasons, including but not limited to misconduct by the law enforcement agencies (ECF No. 3041).  Thereafter, the Ninth Circuit Court of Appeals issued a unanimous panel decision affirming the District Court's judgment dismissing the Superseding Indictment with prejudice due to the Government's multiple Brady violations.

When the Judge dismissed the charges of criminal wrongdoing, the Plaintiffs in this matter were released from federal custody. Unfortunately, even though the charges were eventually dismissed, Plaintiffs Bundy and Payne had their freedom taken from them for a substantial period of time. This civil lawsuit then followed.

The Second Amended Complaint ("SAC") is now before the Court. For the second time, the U.S. Attorney's Office argues that the Second Amended Complaint must be dismissed. However, the Defendant argues facts that are simply not correct. First, the Defendant argues that because the First Amended Complaint made reference to prosecutors' wrongdoing, that somehow that initial suggestion now disallows this claim against the law enforcement personnel. Defendant is wrong. The fact that the U.S. Attorney's wrongdoing has been removed from the complaint does NOT somehow also dictate that the wrongdoing of the law enforcement agencies must also be dismissed.

## II.

## LEGAL ARGUMENT

## DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED.

### 1.    Rule 12(b)(1) Standard

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a defendant to move for dismissal on the basis that the court lacks jurisdiction over the subject matter of the action. The burden is on the plaintiff to establish that the court has subject matter jurisdiction over the action. *Assoc. of Med. Colls. v. United States*, 217 F.3d 770, 778–79 (9th Cir. 2000). Rule 12(b)(1) is a "proper vehicle for invoking sovereign immunity from suit." *Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015).

A Rule 12(b)(1) jurisdictional attack may be facial or factual. "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id*. "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment" and "need not presume the truthfulness of the plaintiff's allegations." *Id*.  In this matter, the jurisdictional attack is facial in nature.

In their SAC, Plaintiffs have removed all references to and allegations related to the U.S. Attorney's office, the Department of Justice, or its' employees.  In fact, the SAC clearly reflects that all actions on which Plaintiffs are basing their claims are those of DOI, BLM and FBI officers, all of which are permissible under the FTCA.

2.  **Federal Jurisdiction Exists For This Matter to Proceed**

Defendants allege that because the Plaintiffs initially claimed federal prosecutors controlling position to Bundy's and Payne's prosecution, Plaintiffs cannot amend those jurisdictional facts to create jurisdiction when jurisdiction did not previously exist.  This prohibition supposedly exists because the Court "must assess federal jurisdiction using the jurisdictional facts that existed at the time the lawsuit was filed."  (ECF No. 39, p. 9, ll. 6-8). Even if the Plaintiffs could amend to remedy the jurisdictional deficiencies that existed at the time the lawsuit was filed, the Defendants allege that Ninth Circuit precedent teaches that amended pleadings are limited to additional facts that are consistent with—and that do not contradict—the facts in prior pleadings.  (ECF No. 39, p. 9, ll. 12-14).  Defendants claim that Plaintiffs' deletions of prior prosecutorial control allegations in 47 paragraphs of the FAC, even

4

though they are no longer in the SAC, are not "impermissible" because they fundamentally contradict Plaintiffs' prior allegations and theory of the case. (ECF No. 39, p. 9, ll. 15-18).

Defendants' position is fatally flawed. The pertinent rule that applies to Plaintiffs' situation comes from *Rockwell Int'l Corp. v. United States*, where the Court stated "[W]hen a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction." *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473-474 (2007). An amended complaint should be looked at in the context of being a new complaint, in and of itself, without having to draw up such an odd analysis that the Defendants so desire. See*, e.g. Connectu LLC v. Zuckerberg*, 522 F.3d 82, 91 (1st Cir. 2008) (holding that an amended complaint which "replaced the original complaint lock, stock, and barrel," conferred jurisdiction).

Plaintiffs were permitted to amend their Complaint in the same manner that Plaintiffs herein have in order to cure the deficiencies in the FAC (see *United States v. Corinthian Colleges*, 655 F.3d 984, 997 (9th Cir. 2011) (wherein the District Court analyzed whether the Plaintiffs should be allowed to amend their Complaint and noted that "[u]nder the liberal standards for amending complaints, Relators should be permitted to plead additional facts that could cure the Complaint's deficiencies as to the allegations that Corinthian made a false statement and acted with the requisite scienter."). In addition, Plaintiffs have always asserted that the DOI, BLM and FBI employees acted improperly and that premise has not changed from the FAC to the SAC. The only difference is that Plaintiffs have no longer included the Department of Justice or the U.S. Attorney's employees and their actions in the allegations as they are cloaked with immunity in relation to claims under the FTCA. If the Court were to adopt the standard that the Defendants suggest, there would be no reason to file a SAC and that clearly

is not the standard applicable to these proceedings.  Plaintiffs have amended their complaint in a manner that is permissible under U.S. Supreme Court and 9th Circuit Court standards, and thus, their SAC properly confers jurisdiction in this Court.

### 3.    Rule 12(b)(6) Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  To state a claim for relief, a pleading "must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Dismissal under Rule 12(b)(6) "is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (quoting Fed. R. Civ. P. 8(a)). A court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual

content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

Plaintiffs have pled each and every cause of action with sufficient particularity, and furthermore, have provided sufficient facts that are not conclusory, unwarranted deductions of fact, or unreasonable inferences to support each and every cause of action. Therefore, Plaintiffs respectfully request the Court deny Defendant's motion to dismiss this matter based upon FRCP 12(b)(6) grounds.

4.    **The intentional tort exception to the FTCA's waiver of sovereign immunity does not preclude the Plaintiffs' ability to bring this matter forward.**

The Federal Tort Claims Act allows claims against the United States for certain intentional torts—including malicious prosecution and intentional infliction of emotional distress—when committed by "investigative or law enforcement officers." 28 U.S.C. § 2680(h); see also *Millbrook*, 569 U.S. at 56. The law enforcement proviso applies to any officer "empowered by law to execute searches, to seize evidence, or to make arrests." DOI, FBI and BLM agents fall squarely within this definition.

Plaintiffs' SAC no longer includes claims based on conduct of any Department of Justice employee or United States Attorney and any and all FTCA claims against United States Attorneys Ahmed, Myhre and Bogden have been completely removed. It had been clarified in the past that FTCA intentional tort exception applies "only" to the United States Attorney's office.

The present claims are aimed exclusively at conduct by federal law enforcement agents who acted maliciously, outside the scope of reasonable investigation, and in violation of clearly established legal and constitutional norms. As a result, the malicious prosecution claims against FBI Special Agent Joel Willis; BLM Special Agent in charge Daniel Love; and BLM officers

7

Rand Stover and Mark Brunk, and their fellow employees (collectively, the "Government

Employees") remain.  It is also hereby agreed henceforth that the term "Government Employees"

does not include any member of the Department of Justice or the United States Attorney's office

and any references to the U.S. Attorney, his office, or any other AUSA's are done so with the

goal of understanding the broader context of the situation and is <u>not</u> pled with the goal to

bringing any of those actors in as Defendants in this matter.

(i)    **The SAC pleads affirmative facts to overcome the presumption of independent prosecutorial judgment**

In the underlying matter, multiple federal agencies were involved in the cattle roundup

and the events of April 2014.  These ultimately included (at a minimum) the Bureau of Land

Management (BLM), the United States Park Service and the Federal Bureau of Investigation

(FBI).   These multiple agencies shall hereinafter be referred to as the "Law Enforcement

Agencies."  The United States Attorney's office is a separate entity from these Law Enforcement

Agencies and again, is not included or implicated in any claims relating to the SAC.

Defendants make the novel argument that because the federal prosecutor is granted

immunity "and" they were involved in a supervisory position with the Law Enforcement

Agencies, that any actions taken by the Law Enforcement Agencies must also be granted

immunity.  While a novel legal conclusion, the conclusion is not supported by any authority or

case law.  In fact, quite the opposite.

Here, one only need refer back to 28 U.S.C. 2680(h) which specifically excludes from

immunity "any officer of the United States who is empowered by law to execute searches, to

seize evidence, or to make arrests for violations of Federal law."  Each one of these actions

would necessarily involve the assistance and/or supervision of the federal prosecutor (who is

immune, as previously noted).  In fact, it is expected that a federal prosecutor would be assisting

and supervising federal officers.  If immunity were to extend to federal officers who were being

assisted, supervised or even controlled by a federal prosecutor, the immunity doctrine would

have, by now, been clarified to include such a situation, which has not occurred.   Here, the clear

reading of 28 U.S.C. 2680(h) allows for suit against an officer of the United States.  In this

matter, Willis, Love, Stover and Bunk are all law enforcement officers and are therefore "not"

covered by immunity allowed for in 28 U.S.C. 2680.

A plaintiff rebuts the presumption of prosecutorial independence by showing that officers

"improperly exerted pressure on the prosecutor, knowingly provided misinformation to him,

concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was

actively instrumental in causing the initiation of legal proceedings."  *Awabdy v. City of Adelanto*,

368 F.3d 1062, 1067–68 (9th Cir. 2004); Blankenhorn v. City of Orange, 485 F.3d 463, 482 (9th

Cir. 2007).  As shown hereinabove, that is exactly what Plaintiffs allege here.

The government's argument that all actions flowed from the prosecutors is belied by the

facts.  The SAC pleads detailed, affirmative allegations that BLM Special Agent in Charge Love,

FBI Agent Willis, and BLM Officers Stover and Brunk engaged in independent misconduct by

intentionally staging confrontations to provoke Plaintiffs, fabricating evidence and testimony,

altering records, purposefully excluding or suppressing exculpatory evidence and giving false

testimony to mislead the grand jury to issue indictments to prosecute and convict Plaintiffs.  See

SAC ¶¶ 33–40, 58–68.  There is nothing that suggests that BLM Special Agent in Charge Love,

FBI Agent Willis and BLM Officers Stover and Brunk acted in the way they did only because

they were instructed to by the prosecutors; in fact, quite the opposite.  Plaintiffs specifically

allege that BLM Special Agent in Charge Love instructed his fellow agents to "go out there and

kick Cliven, Ryan and others in the Bundy family in the mouth (or teeth) and take their cattle"

9

and that he had a "kill list for the Bundys". See SAC ¶ 23.   Similarly, the FBI maintained an "Arrest Tracking Wall" where photos of Plaintiff Ryan Bundy . . . were marked with an "X" over them, as if to indicate that they had already been killed or would be killed soon. See SAC ¶ 23. In addition, the law enforcement officers identified in the SAC intentionally and systematically fabricated evidence related to what was allegedly surveillance of the roads near the Bundy Ranch but instead, was surveillance of the Bundy Ranch with a live feed to the BLM's command center.

Moreover, Agent Willis sought to have Officer Brunk correct his statement of April 6, 2014, which Agent Brunk attempted to do, to make sure that law enforcement officers' version of events matched the fabricated record that was presented to the Grand Jury.   Agent Willis also falsely informed the Grand Jury that in 2014, the Bundy Defendants were snipers when, in fact, the snipers were deployed by the BLM and/or FBI.  See SAC ¶ 36.  The list of actions by the law enforcement officers goes on and on and nothing suggests that they were coerced, in any way, to engage in wrongful behavior by any prosecutor or federal employee who were not law enforcement officers.  Simply put, the law enforcement officers independently engaged in the behavior that is at the crux of Plaintiffs' SAC.

Thus, at this stage of the proceeding, the allegations are sufficient to allow the claim of malicious prosecution to go forward because they provide sufficient, affirmative facts to overcome the presumption of independent prosecutorial judgment against the named law enforcement officers.  Defendants claim that the absence of specific factual information somehow destroys this cause of action at this stage.  However, Plaintiffs have pled the facts with specificity with existing case law in mind, including the _Awabdy_ matter, and the allegations should be taken as true for the purpose of successfully rebutting the Defendants' Motion to Dismiss the Plaintiffs' Second Amended Complaint on this subtopic.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### (ii)   The SAC adequately pled facts of a favorable termination

Defendants further argue that Judge Navarro's dismissal does not meet the "favorable termination" standard.  However, their position directly contradicts recent Supreme Court precedent.  In *Thompson v. Clark*, 596 U.S. 36, 49 (2022), the Court held that a favorable termination exists where charges are dismissed without a conviction.

Although the context of the *Thompson* case is a bit different in that it is a §1983 case, the dicta issued by the Court is clearly on point.  The Court specifically said that

 "[t]he question of whether a criminal defendant was wrongly charged does not logically depend on whether the prosecutor or court explained why the prosecution was dismissed.  And the individual's ability to seek redress for a wrongful prosecution cannot reasonably turn on the fortuity of whether the prose-cutor or court happened to explain why the charges were dismissed."

*Thompson,* 596 U.S. at 48.  Along this line of reasoning, the Court also said that "requiring a plaintiff to show that his prosecution ended with an affirmative indication of innocence is not necessary to protect officers from unwarranted civil suits—among other things, officers are still protected by the requirement that the plaintiff show the absence of probable cause and by qualified immunity."  *Id*. at 48-49.

The Defendants strongly imply that the Plaintiffs have a seemingly higher burden than the *Thompson* standard yet also note that "Nevada state courts are silent regarding what constitutes "favorable termination" for purposes of a malicious prosecution claim."  (Doc. #39, p. 14, ll. 17-18).  Defendants cite a number of other federal courts in the Ninth Circuit, California state courts, and District of Nevada federal court decisions that surmise how a Nevada state court "might" rule on what constitutes a "favorable termination" in the context argued herein.  All of these cases, except for one District of Nevada case, written by a Montana federal judge in 2024,

11

were decided prior to the Supreme Court's *Thompson* ruling, and thus, have not taken the *Thompson* ruling into account.

Defendants opine that a termination is "not necessarily favorable simply because the party prevailed in the proper proceeding; the termination must relate to the merits of the action by reflecting either on the innocence of or lack of responsibility for the misconduct alleged against him." *Cambell v. City of Bakersfield,* No. 04-cv-5585, 2006 WL 2054072 at *20 (E.D. Cal. July 21, 2006) (quoting *Sagonwsky v. More*, 64 Cal. App. 4th 122, 128 (1998)) (ECF No. 39, pg 15).

In this case, there could be no termination that related to the merits of the action because Defendants saw fit to withhold exculpatory evidence and engage in conduct with "caused the integrity of any future trial and any resulting conviction to be even more questionable because both the defense and the community possess the right to expect a fair process with a reliable conclusion." Judge Navarro dismissed the charges with prejudice due to the "outrageous behavior" by law enforcement, amounting to a due process violation, where a new trial was not an adequate sanction for the violation. See SAC ¶¶ 26–27, 95. There is no scenario, given the outrageous and egregious nature of Defendants' actions that there could be any termination which reflects on the innocence of or the lack of responsibility for the alleged misconduct. Defendants took that opportunity away.

Accordingly, Judge Navarro's ruling, comments and dismissal of charges is more than sufficient to satisfy the "favorable termination" standard in this case pursuant to the *Thompson* standard, and thus, Plaintiffs have met their burden here as well.

1

2

### (iii)    The SAC adequately pled facts showing a lack of probable cause.

In Nevada, claims for malicious prosecution, false arrest, and false imprisonment require

Plaintiffs to show that the Defendants lacked probable cause for doing what they did.  See

*Jordan v. State ex rel. Dep't of Motor Vehicles and Pub. Safety,* 124 Nev. 227 (2008); See also

*LaMantia v. Redisi,* 118 Nev. 27, 30 (2002).  While a grand jury indictment creates a rebuttable

presumption of probable cause, the presumption can be overcome by an allegation of "false

testimony or suppressed facts."  See *Jordan v. State,* 121 Nevada at 70 n. 65.  (Quoting *Ricord v.*

*Cent. Pac. RR. Co.,* 15 Nevada 167, 180 (1880).   False statements to the grand jury, altered

reports and manipulated video surveillance directly contributed to the indictment.  Probable

cause cannot rest on fabricated evidence. See *Blankenhorn*, 485 F.3d at 482.

The SAC includes detailed, affirmative allegations that BLM Special Agent in charge

Love, FBI Agent Willis, and BLM Officers Stover and Brunk engaged in independent

misconduct by intentionally staging confrontations to provoke Plaintiffs, fabricating evidence

and testimony, altering records, purposefully excluding or suppressing exculpatory evidence and

giving false testimony to mislead the grand jury to issue indictments to prosecute and convict

Plaintiffs.  See SAC ¶¶ 33–40, 58–68.

Similar to this matter, Awabdy filed a federal civil action and as part of his claim, was

required, as Plaintiffs are here, to prove that he was prosecuted without probable cause.

Unfortunately, Awabdy was unable to do so because his criminal case had already been bound

over and he had been held to answer the charges, meaning that "probable cause" had already

been found.  Accordingly, the District Court, based upon the lower courts finding of "probable

cause", determined that Awabdy "could prove no set of facts consistent with the allegations in

his complaint that would establish that he was prosecuted without probable cause." *Id*.   Upon

13

review, the Ninth Circuit reversed, holding that the finding of probable cause was a rebuttable presumption.  The Court held that "among the ways that a plaintiff can rebut a prima facie finding of probable cause is by showing that the criminal prosecution was induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith." *Id*.

In the instant case, law enforcement officers Willis, Love, Stover and Brunk knowingly and intentionally used fabricated evidence to wrongfully arrest, detain and imprison Plaintiffs, doubling down by failing to disclose extensive exculpatory evidence reflecting the same. Further, Judge Navarro found that the law enforcement officers were guilty of "flagrant misconduct" and characterized their conduct as "outrageous", holding that dismissal with prejudice was the only sufficient remedy given the extreme scope of the misconduct and bad faith exhibited.  See SAC ¶ 26.  Put simply, there was a complete lack of sustainable evidence because had there been evidence, law enforcement officers would not have had to fabricate evidence or lie and misrepresent the evidence.

Plaintiffs have sufficiently pled that the criminal prosecution was induced by fraud, corruption, perjury, fabricated evidence and other wrongful conduct.  It is almost impossible to imagine a scenario that is more apropos to the Court's ruling than this one.  All of the facts and Judge Navarro's finding rebuts the presumption of probable cause.

5. **The Intentional Infliction of Emotional Distress (IIED) is adequately pled, details specific instances of "extreme and outrageous" behavior, and alleges physical manifestations of Defendants' extreme and outrageous behavior toward the Plaintiffs**

Defendant claims that Plaintiffs' IIED claim arises out of the alleged malicious prosecution of Bundy and Payne and therefore, it is a specifically excluded tort under the intentional tort exception to the FTCA.  It is true that the waiver of sovereign immunity contains an exception for intentional torts, including false arrest, **unless** the intentional tort be committed

14

by an "investigative or law enforcement officer." 26 U.S.C. 2680(h). In fact, 28 U.S.C. 2680(h) specifically excludes from immunity "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law" which is exactly what law enforcement officers are. Here, the intentional torts of malicious prosecution and IIED are based upon the actions of DOI/FBI agents, BLM agents, and officers of those agencies. Those agents are <u>not</u> afforded sovereign immunity for intentional torts in which they engage.

Plaintiffs acknowledge their FAC did not adequately plead the intentional infliction of emotional distress. That shortcoming was remedied in their SAC with the inclusion of the multiple examples of physical manifestations of emotional distress that Plaintiffs suffered. In addition, the SAC includes specific actions that were "extreme and outrageous" and specifically identifies physical manifestations that the actions of law enforcement officer's actions caused. The SAC describes in disturbing detail how federal agents harassed family members, maintained "kill books," deployed sniper teams, and staged false flag interactions under the guise of "Longbow Productions." See SAC ¶¶ 23–24, 28, 53–56, 101–103. Such conduct is not only extreme and outrageous—it is unconscionable. It far exceeds the threshold for IIED claims under Nevada law.

Here, the intentional torts of malicious prosecution and IIED are based upon the actions of DOI/FBI agents, BLM agents, and officers of those agencies. Those agents are <u>not</u> afforded sovereign immunity for intentional torts that they engage in. Plaintiffs' complaint is rife with tortious conduct by BLM Special Agent in charge Love, Officer Stover, Brunk, Willis and other agents and officers of the FBI and BLM.

**6.**     <u>Loss of Consortium is Derivative of the Physical Harm, and Thus, is adequately pled and should be allowed to proceed</u>

An action for loss of consortium is derivative of the primary harm to the physically injured spouse or parent. *Fakoya v. County of Clark*, 2014 WL 5020592 at *9 (D.Nev. 2014) (citing *Gen. Motors Corp v. Eighth Judicial Dist. Court of State of Nev. Ex rel. Cnty. Of Clark*, 122 Nev 466, 134 P.3d 111 (Nev. 2006)). It has been established that Ryan Bundy was physically injured in a number of ways, including physically, emotionally and mentally, as a result of the abhorrent actions and conduct of the Government Employees. Likewise, knowledge of those injuries and the loss of their spouse and parent for an extended period of time as a direct consequence of the Government Employees' actions supports a loss of consortium claim.

Here, it is anticipated that Plaintiff Ryan Bundy will be successful in bringing a cause of action against the Government Employees for violations of the FTCA. As a result, his wife and children also have a cause of action for loss of consortium against the alleged tortfeasors.

### III.

### <u>CONCLUSION</u>

Based on the foregoing facts and circumstances, Plaintiffs respectfully request that Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint be denied in its' entirety. Further, if the Court deems the Defendant's argument(s) to dismiss any of the intentional torts persuasive, Plaintiffs respectfully request leave to amend their Second Amended Complaint.

DATED this 20th day of June, 2025.

                                      **JUSTICE LAW CENTER**

                                      /s/ Bret O. Whipple
                                      BRET WHIPPLE, ESQ.
                                      Nevada Bar No. 6168
                                      1100 S. 10th Street
                                      Las Vegas, Nevada 89104
                                      *Attorney for Plaintiffs*

16

## CERTIFICATE OF SERVICE

I hereby certify that on June 20, 2025, I submitted the foregoing to CM-ECF, the electronic filing service portal utilized by the U.S. District Court for the District of Nevada, which will give notice of said filing to the following at the email designated for service:

Jevechius D. Bernardoni
Assistant United States Attorney
Attorneys for the United States of America

/s/ Jeanne Metzger
An Employee of JUSTICE LAW CENTER