**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

RYAN BUNDY, et al.,

     Plaintiffs,

vs.

UNITED STATES OF AMERICA,

     Defendants.

Case No.: 2:23-cv-01724-RFB-VCF

**PLAINTIFFS' OPPOSITION TO THE UNITED STATES' MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

COMES NOW Plaintiffs Ryan Bundy, Angela Bundy, Jamie Bundy, Veyo Bundy, Jerusha Bundy, Jasmine Bundy, Oak Bundy, Chloee Bundy, M.B., a minor child, S.B., a minor child, and Ryan Payne (collectively, "Plaintiffs"), by and through their undersigned counsel of record, and hereby submit this Opposition to the United States of America's Motion to Dismiss the Third Amended Complaint filed April 22, 2026 (the "Motion", ECF No. 50).

This Opposition is based upon the following Memorandum of Points and Authorities, the Third Amended Complaint (the "TAC", ECF No. 49) filed April 8, 2026, all pleadings and papers on file herein, and such further argument and evidence as may be presented at any hearing

on the Motion.

DATED on this 20<u>th</u> day of May, 2026.

**JUSTICE LAW CENTER**

<u>/s/ Bret O. Whipple</u>
BRET O. WHIPPLE, ESQ.
Nevada Bar #6168
DAREN B. RICHARDS, ESQ.
Nevada Bar #5103
1100 S. Tenth Street
Las Vegas, NV  89104
Attorney for Plaintiffs

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

Plaintiffs filed their Third Amended Complaint on or about April 8, 2026 (ECF No. 49). Thereafter, Defendants filed their Motion to Dismiss the Third Amended Complaint on or about April 22,, 2026 (ECF No. 50).  The Motion mischaracterizes both the procedural posture of this case and the substance of the factual allegations set forth in the Third Amended Complaint.   The Motion proceeds as though the TAC simply repeats prior pleadings, but in fact the TAC contains substantially expanded and particularized factual allegations that directly respond to each deficiency the Court identified in its Order of March 18, 2026 (the "Order", ECF No. 48).

The TAC pleads, with specificity, the identities of the federal investigative and law enforcement officers responsible for the misconduct (Special Agent Willis, BLM Special Agent in Charge Love, and Officers Stover and Brunk), the dates on which false testimony was presented directly to the Grand Jury, the particular categories of exculpatory evidence concealed from prosecutors and the Court, and the manner in which each act of misconduct was both directly

relevant to the elements of the charged offenses and material to the absence of probable cause. This Opposition follows.

## II.

## LEGAL ANALYSIS

A.   **Legal Standard for Motion to Dismiss**.

When considering a motion to dismiss under FRCP 12(b)(6), the court construes the complaint in the light most favorable to the non-moving party. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). The court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *Wyler Summit P'ship v. Turner Broad. Sys.*, 135 F.3d 658, 661 (9th Cir. 1998). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. A facial plausibility standard is not a "probability requirement" but mandates "more than a possibility that a defendant has acted unlawfully." *Id.*

Under FRCP 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" . *USCS Fed Rules Civ Proc R 8*.  This standard does not require detailed factual allegations but demands more than mere labels, conclusions, or a formulaic recitation of the elements of a cause of action . *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), *Dichter-Mad Family Partners, LLP v. United States*, 709 F.3d 749 (2013). The complaint must include sufficient factual matter to state a claim that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), *Dichter-Mad Family Partners,*

*LLP v. United States*, 709 F.3d 749 (2013), *Landers v. Quality Communs., Inc.,* 771 F.3d 638 (2015).

In *Starr v. Baca*, 652 F.3d 1202, 1216-17 (9th Cir. 2011), the Court explained the standard as follows:

> If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6). Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is implausible. The standard at this stage of the litigation is not that plaintiff's explanation must be true or even probable.

In the instant TAC, the allegations that law enforcement lied and hid the existence of snipers and threatened the physical well-being of the plaintiffs have no alternative explanations.

In the 9th Circuit, a civil complaint should not be dismissed unless it appears beyond doubt that the plaintiff could prove no set of facts entitling them to relief. *Daniel v. Cty. of Santa Barbara*, 288 F.3d 375, 380 (9th Cir. 2002). This standard aligns with federal pleading principles under Rule 8(a), which require a "short and plain statement of the claim" showing entitlement to relief. Equitable considerations, such as equitable tolling, would similarly require a fact-intensive inquiry and are unlikely to be resolved at the pleading stage in Nevada courts.

The known acts of the Defendants described in the TAC are uncontroverted and outrageous. It is clearly plausible that such acts resulted in the incarceration of the Plaintiffs and the resulting damages suffered. There has been no showing of implausibility of Plaintiffs' claim by the Defendants, and there has been no showing of alternative explanations for Defendants' actions. TAC should stand and proceed to the discovery process.

///

///

///

4

**B.**    **The TAC Adequately Pleads Facts Overcoming The Presumption Of Independent Prosecutorial Judgment**

Under Nevada law, a malicious prosecution claim requires a plaintiff to plead affirmative allegations sufficient to overcome the presumption that the prosecution exercised independent judgment in filing criminal charges. *Crain v. Nevada*, 724 Fed. Appx. 591, 592 (9th Cir. 2018) (unpublished). The presumption of independent prosecutorial judgment recognizes that "where police officers do not act maliciously or with reckless disregard for the rights of an arrested person, they are not liable for damages suffered by the arrested person after a district attorney files charges unless the presumption of independent judgment by the district attorney is rebutted." *Blankenhorn v. City of Orange*, 485 F.3d 463, 482 (9th Cir. 2007) (quoting *Smiddy v. Varney*, 665 F.2d 261, 267 (9th Cir. 1981)). The presumption may be rebutted by showing, for example, that the prosecutor "was pressured or caused by the investigating officers to act contrary to his independent judgment" or that the investigating officers presented the prosecutor with "information known by them to be false." *Id.* (quoting *Smiddy*, 665 F.2d at 266-67). A plaintiff must demonstrate that the prosecuting officers "commenced the criminal prosecution because of direction, request, or pressure" from the defendants. *M & R Inv. Co. v. Mandarino*, 103 Nev. 711, 719-20, 748 P.2d 488, 494 (1987) (quoting *Catrone v. 105 Casino Corp.*, 82 Nev. 166, 171-72, 414 P.2d 106, 109 (1966)). Moreover, "the presumption of prosecutorial independence does not bar a subsequent § 1983 claim against state or local officials who improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004). Among the ways that a plaintiff can rebut a prima facie finding of probable cause, and likewise overcome the presumption of independent

prosecutorial judgment, is "by showing that the criminal prosecution was induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith." *Id.*

The Motion argues that the TAC does not allege facts plausibly showing that law enforcement officers presented false information to the prosecution or otherwise directed or pressured prosecutors to file the specific charges against Plaintiffs. That argument cannot be reconciled with the actual allegations of the TAC. Paragraph 112 of the TAC alleges that, from the outset of the Cattle Impoundment Operation and continuing through the indictment and prosecution of Plaintiffs Ryan Bundy and Ryan Payne, the GOVERNMENT EMPLOYEES Willis, Love, Stover, and Brunk did not merely provide information to federal prosecutors but directed, pressured, and controlled the prosecution itself. The TAC then sets forth the specific factual basis for that allegation: "Specifically, the GOVERNMENT EMPLOYEES were physically present at the Bundy Ranch and the surrounding Gold Butte area, alongside federal prosecutors, before, during, and after the events giving rise to the charges, and photographic and testimonial evidence confirms that law enforcement and prosecutors operated in a unified, coordinated manner that left no meaningful separation between the investigative and prosecutorial functions."

The TAC further pleads, at paragraph 132, that BLM SAC Love openly expressed his intention to "kick members of the Bundy family in the mouth" during their arrest, that he maintained a "Kill Book" and a kill list for the Bundys, and that the FBI maintained an Arrest Tracking Wall on which photographs of Plaintiff Ryan Bundy and other family members were marked with an "X." These are not, as the Motion suggests, abstract assertions of generalized animus untethered to the prosecution. The TAC alleges that this animus was openly expressed in the working environment shared by law enforcement and prosecutors, that it was thoroughly

6

documented by BLM Special Agent Larry Wooten in the Wooten Memo authored in November 2017, and that it directly drove the decision to seek indictment.

The TAC also alleges, in paragraphs 112 and 132, that the GOVERNMENT EMPLOYEES continued to control and direct the prosecution after the indictment by systematically withholding from the prosecutors themselves the BLM threat assessments, the FBI surveillance camera footage, and the contents of Dave Bundy's iPad, and by affirmatively lying to prosecutors and the Court about the deployment of government snipers and the scope of pre-impoundment surveillance of the Bundy Ranch. The significance of these allegations is that the prosecutors at all material times were operating on a false and fabricated record manufactured entirely by the GOVERNMENT EMPLOYEES; the prosecutors did not exercise independent judgment because they did not have the information necessary to do so. The Motion's response — that post-indictment conduct is irrelevant to a malicious prosecution claim — misses the point. The post-indictment conduct is alleged not as an independent basis for liability, but as further factual confirmation that the prosecution was, from inception through dismissal, a creature of law enforcement direction rather than independent prosecutorial assessment of objective facts.

The known actions of law enforcement as detailed in the TAC certainly create a plausible presumption that such actions drove the prosecution and ultimately led to the incarceration of the plaintiffs. The Ninth Circuit Court of Appeals held in *Starr v. Baca*, 652 F.3d 1202 (2011) that the plaintiff's detailed allegations of repeated constitutional violations and the defendant's knowledge of those violations were sufficient to meet the plausibility standard, *Id.* at 1216. As evidenced in the underlying criminal trial, getting the defendants to be forthcoming with the truth of their actions was, at best, extremely difficult. As described in the TAC, Defendants consistently hid relevant facts, including the presence of snipers and surveillance equipment, denying Plaintiffs their

constitutional rights under the 4th and 5th Amendments.  This is, at least, evidence of Defendants' knowledge of repeated constitutional violations.  Having reached the threshold of plausibility, plaintiffs are now entitled to the ensuing court ordered discovery process.

**C.    The TAC Adequately Pleads the Absence of Probable Cause.**

The Motion contends that the TAC fails to plead facts plausibly suggesting that the indictments of Bundy and Payne were devoid of probable cause. That contention disregards the specific factual allegations in paragraph 133 of the TAC, which identify by name, by date, and by content the false testimony presented directly to the Grand Jury: Officer Stover's false testimony on September 16, 2015, that the operational plan did not include the use of snipers, and Agent Willis' false and perjurious testimony on June 29, 2015, and again on March 2, 2016. Each of those falsehoods was presented directly to the Grand Jury during the grand jury proceedings that preceded the indictment — not in post-indictment proceedings, as the Court's prior Order had found deficient in the Second Amended Complaint.

The Motion argues that the false statements about the presence of government snipers are not connected to the elements of the charged offenses. That argument is contradicted by the factual record alleged in the TAC. Paragraph 133 alleges that the central and indispensable allegation supporting all charges against Plaintiffs was that their statements about the presence of government snipers were false; paragraph 134 alleges, and the Tier 1 evidentiary hearing irrefutably established, that BLM snipers were in fact deployed and positioned around the Bundy Ranch during the April 2014 Cattle Impoundment Operation. The presence of snipers is not collateral to the charges — it is the factual predicate on which the charges of conspiracy, conspiracy to impede federal officers, assaulting and threatening federal officers, obstructing federal officers, and using firearms in crimes of violence all depended. If Plaintiffs' statements about snipers were true (and the TAC alleges,

supported by the findings at the Tier 1 hearing, that they were), then Plaintiffs' assembly, protest, and bearing of arms in response to the threat posed by those snipers was lawful self-defense and constitutionally protected activity, and there was no underlying criminal conduct from which the charged conspiracies, assaults, and firearms offenses could derive.

The TAC further alleges, at paragraph 133, that the GOVERNMENT EMPLOYEES withheld from the Grand Jury the existence of the FBI surveillance camera evidence and the BLM threat assessments — both of which were directly exculpatory and directly relevant to the specific elements of the conspiracy, assault, obstruction, and use-of-force charges with which Plaintiffs were indicted. Paragraph 133 specifically alleges that, without the false denials of the presence of snipers presented directly to the Grand Jury, and without the concealment from the Grand Jury of the surveillance camera evidence and the BLM threat assessments, there was no probable cause to indict or prosecute Plaintiffs.

The TAC alleges with specificity that the GOVERNMENT EMPLOYEES Willis, Love, Stover, and Brunk knowingly provided false information to prosecutors, presented false testimony directly to the Grand Jury on identified dates, and systematically concealed exculpatory evidence from prosecutors and the Court throughout the Underlying Action. Those allegations constitute precisely the "fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith" that defeats the presumption of independent prosecutorial judgment, *Awabdy*, 368 F.3d at 1067 (9th Cir. 2004), and they state a claim that is "plausible on its face." *Ashcroft*, 556 U.S. at 678 (2009).

**D.      The TAC Adequately Pleads the Absence of Independent Probable Cause.**

The Motion argues that even setting aside the fabricated evidence, the superseding indictment contains a "plethora" of allegations of criminal wrongdoing sufficient to establish

independent probable cause. The TAC's specific allegations refute that contention. Paragraph 86 of the TAC alleges that, at no time, did Plaintiffs Ryan Bundy or Ryan Payne ever display, use, or threaten to use firearms in the commission of any crime, nor did they commit any crimes, let alone a crime of violence. Paragraph 87 alleges that the indictment accused Plaintiffs of recruiting gunmen, interfering with impoundment operations through threats and force, attempting to extort BLM contractors, leading an armed assault against federal officers, and extorting federal officers — but every one of those allegations was itself derivative of and dependent upon the false predicate that Plaintiffs had fabricated the presence of snipers and the danger of lethal force

A grand jury indictment creates only a rebuttable presumption of probable cause, and a plaintiff may overcome that presumption "by showing that the criminal prosecution was induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith." *Awabdy* 368 F.3d at 1067 (9th Cir. 2004). Where the alleged false testimony and concealed exculpatory evidence go directly to the elements of the charged offenses and negate probable cause once corrected, the indictment is not supported by independent probable cause and the malicious prosecution claim may proceed. *Id.*

The TAC alleges in paragraph 60 that Plaintiffs Ryan Bundy and Ryan Payne were legally justified and constitutionally protected when they responded to the truthful information that armed government snipers had been deployed around the Bundy Ranch and that the Bundy family was in imminent danger of lethal force. Once it is accepted, as the Tier 1 evidentiary hearing established, that the snipers were real, the entire factual edifice on which the indictment rested collapses, and every "additional" allegation of criminal wrongdoing in the superseding indictment is revealed to be a different framing of the same constitutionally protected conduct. There is no separate, independent

set of facts in the superseding indictment that, standing alone and divorced from the false snipers narrative, would establish probable cause for any of the charges.

### E.   The TAC Adequately Pleads Favorable Termination.

The Motion argues that Plaintiffs cannot rely on the dismissal of the Underlying Action to establish favorable termination, and that the TAC fails to plead facts establishing actual innocence. The TAC, at paragraphs 115 through 117 and 134, alleges far more than a "mere dismissal." It alleges, with specificity, that the dismissal with prejudice was compelled by, and directly reflected, the irrefutable establishment at the Tier 1 evidentiary hearing that the BLM did, in fact, deploy snipers and use excessive force at the Bundy Ranch during the April 2014 Cattle Impoundment Operation — the very facts that Plaintiffs had alleged and that the GOVERNMENT EMPLOYEES had knowingly, intentionally, and willfully concealed from the Grand Jury, from prosecutors, and from the Court.  Dismissal on the grounds that the basis for the criminal complaint was fabricated and that the criminal case against the Plaintiffs was dismissed because these facts would have provided a complete defense to the Bundys meet the threshold for establishing a favorable termination. There is no categorical requirement for a not guilty verdict from a jury to meet this standard, which is essentially what the Defendants are arguing. *Mills v. City of Covina*, 921 F.3d 1161, 1171 (9th Cir. 2019).

To state a claim for malicious prosecution under Nevada law, a plaintiff must allege, among other elements, "termination of the prior criminal proceedings" in the plaintiff's favor. *Spencer v. Klementi*, 136 Nev. 325, 334, 466 P.3d 1241, 1249 (2020) (quoting *LaMantia v. Redisi*, 118 Nev. 27, 30, 38 P.3d 877, 879 (2002)). A favorable termination need not result from a complete trial on the merits; it is sufficient that the prior proceedings "terminated in such a manner as to indicate [the

plaintiff's] innocence." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1068 (9th Cir. 2004).  The Court further explained:

> Similar to other terminations short of a complete trial on the merits, a dismissal in the interests of justice satisfies this requirement if it reflects the opinion of the prosecuting party or the court that the action lacked merit or would result in a decision in favor of the defendant.

*Awabdy* at 1068 (9th Cir. 2004), citing *Minasian v. Sapse,* 80 Cal. App. 3d 823, 145 Cal.Rptr. 829, 831-32 (Cal. Ct. App. 1978); *Jackson v. Beckham*, 217 Cal. App. 2d 264, 31 Cal.Rptr. 739, 742-43 (Cal. Ct. App. 1963); *De La Riva,* 61 Cal.Rptr. at 296.

The TAC  alleges, at paragraph 134, that the dismissal was not on technical grounds, was not for procedural reasons, and was not for any reason inconsistent with Plaintiffs' innocence. Because the central premise of all charges against Plaintiffs was that their statements about the snipers were false, and because those statements were proven to be true at the Tier 1 hearing, the termination of the Underlying Action left no doubt as to Plaintiffs' innocence or as to their lack of responsibility for the criminal conduct charged. The TAC further alleges that Plaintiff Ryan Bundy was legally justified and constitutionally protected when he truthfully conveyed that he and his family were surrounded by government snipers and in imminent danger of lethal force, and that Plaintiff Ryan Payne was likewise legally justified when he responded to that accurate call for assistance and assembled at the Bundy Ranch in protest of the GOVERNMENT EMPLOYEES' unconstitutional and violent conduct. These are not allegations of a technical or procedural dismissal — they are allegations of affirmative innocence based on facts proven of record in the Underlying Action.

The Motion's argument that Judge Navarro dismissed the indictment for Brady reasons rather than because Plaintiffs were innocent is a false distinction and ignores the substantive connection between the concealed Brady material and the merits of the charges.  As the TAC

alleges at paragraph 98, Judge Navarro held in January 2018 that the conduct of GOVERNMENT EMPLOYEES Willis, Love, Stover, and Brunk caused the integrity of any future trial and any resulting conviction to be even more questionable, and that a new trial was not an adequate sanction for the due process violation. The reason a new trial was deemed inadequate is because the concealed evidence — proof that snipers were deployed and that the operational plan included excessive force — was a complete defense to every charge, not a procedural nuance.

The suppression of material exculpatory evidence — not the plaintiff's ultimate conviction or its absence — is itself the constitutional injury that deprives the defendant of his liberty interest in a fair trial. *Brady v. Maryland*, 373 U.S. 83 (1963); *Poventud v. City of New York*, 750 F.3d 121, 133 (2d Cir. 2014) (en banc); *Richards v. Cty. of San Bernardino*, 39 F.4th 562, 573 (9th Cir. 2022). In the appeal of the dismissal, the Ninth Circuit recognized that the government understood the significance that any evidence regarding snipers, or agents who looked and functioned like snipers, would have in the Underlying Action, and that the government nevertheless withheld a slate of information bolstering the defendants' reasonable basis for believing there were snipers in the area. *United States v. Bundy*, 968 F.3d 1019, 1043 (9th Cir. 2020):

> The paragraphs in question, however, are not counts, but factual allegations supporting the government's charges. It is unclear to us whether striking these sections would have served the remedial purposes of the court's exercise of its supervisory power. These do not appear to be elements of the crimes alleged, but were a theory of the government's case, as elaborated in its opening statement.

*United States v. Bundy*, 968 F.3d 1019, 1044 (9th Cir. 2020)

Nevada joins 20 other states to explicitly codify the principle of "innocent until proven guilty". NRS 175.191 states "A defendant in a criminal action is presumed to be innocent until the contrary is proved". In Nevada, therefore, citizens are legally shielded with the presumption of innocence, not only by application of Constitutional principles of due process, but by the law itself. The Plaintiffs here are legally innocent of all accusations made in this case, and that presumption has never been lifted. On the contrary, that presumption was upheld and fortified when all charges

were dismissed with prejudice.  By application of law, they are "actually innocent" and meet the pleading requirements.

The dismissal with prejudice affirmed in *Bundy* thus reflects both the merits of the Underlying Action and Plaintiffs' affirmative innocence of the charged conduct — conduct that was at all times protected by the First and Second Amendments to the United States Constitution. Plaintiffs Ryan Bundy and Ryan Payne were and remain presumed innocent until the contrary is proved by competent evidence beyond a reasonable doubt. NRS 175.191,201.

**F.      The False Imprisonment Claim Is Timely and Adequately Plead.**

The Motion argues that the false imprisonment claim is time barred because it accrued no later than March 2, 2016, when the superseding indictment issued. The TAC alleges, at paragraphs 145 and 149, the factual basis for tolling: throughout the entire pendency of the Underlying Action, the GOVERNMENT EMPLOYEES actively concealed the true nature and scope of their misconduct, including the fabrication of evidence, the subornation of perjury before the Grand Jury, and the concealment of exculpatory evidence, thereby preventing Plaintiffs from discovering the factual basis for the false imprisonment claim until that misconduct was exposed through the evidentiary proceedings before Chief Judge Navarro. Plaintiffs could not reasonably have discovered that their imprisonment was without legal cause or justification until the GOVERNMENT EMPLOYEES' fabrication of evidence and concealment of exculpatory evidence was exposed at the Tier 1 evidentiary hearing.

Under Nevada law, false imprisonment arising from a false arrest occurs when the claimant's liberty is restrained "under the probable imminence of force without any legal cause or justification." *Jordan v. State ex rel. Dep't of Motor Vehicles & Pub. Safety*, 121 Nev. 44, 69-70, 110 P.3d 30, 48-49 (2005) (overruled on other grounds by *Buzz Stew, LLC v. City of N. Las Vegas*,

124 Nev. 224)(quoting *Garton v. City of Reno*, 102 Nev. 313, 314-15, 720 P.2d 1227, 1228 (1986)). To sustain a claim for false imprisonment, a plaintiff must establish that the actor (a) acted intending to confine the plaintiff within boundaries fixed by the actor, (b) the act directly or indirectly resulted in such confinement, and (c) the plaintiff was conscious of the confinement or was harmed by it. *Id.* at 70, 110 P.3d at 48-49 (quoting *Hernandez v. City of Reno*, 97 Nev. 429, 433, 634 P.2d 668, 671 (1981)).  A justice of the peace's or grand jury's initial probable cause determination does not constitute irrebuttable evidence of probable cause to arrest and may be rebutted with a relevant showing of false testimony or suppressed facts, including a showing that the prosecution was induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith. *Jordan*, 121 Nev. at 70 n.65, 110 P.3d at 49 n.65 (citing *Ricord v. C.P.R.R. Co.*, 15 Nev. 167, 180 (1880); *Awabdy*, 368 F.3d at 1067 (9th Cir. 2004)). A claim for false imprisonment against the United States arising from the acts of investigative or law enforcement officers is expressly cognizable under the law enforcement proviso of the Federal Tort Claims Act, 28 U.S.C. § 2680(h), which provides that, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of the FTCA shall apply to any claim arising out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. 28 U.S.C. § 2680(h); *Millbrook v. United States*, 569 U.S. 50, 52 (2013) (The Third Circuit's limiting 28 U.S.C.S. § 2680(h) to torts committed during execution of a search, seizing evidence, or arrests was reversed.)

The TAC alleges, at paragraph 149, that the GOVERNMENT EMPLOYEES' ongoing restraints on Plaintiffs' liberty — including their placement and continued maintenance on the No Fly List and on secret lists precluding the purchase of firearms, as alleged in paragraphs 96(i) and 96(j) of the TAC — constitute a continuing tort, such that the limitations period is tolled through

the date of filing. These ongoing restraints are not, as the Motion suggests, merely consequential damages from a stale claim; they are independently actionable restraints on Plaintiffs' liberty that continue to this day and that flow directly from the same fabricated record that produced the indictments.

The Motion argues that the false imprisonment claim fails for the same probable cause reasons it advances against the malicious prosecution claim. As set forth above, the TAC pleads detailed facts establishing the absence of probable cause for Plaintiffs' arrest and imprisonment, including the specific false testimony presented directly to the Grand Jury and the specific categories of exculpatory evidence concealed from the Grand Jury, all of which directly negated the elements of every charged offense.

**G.      The Abuse Of Process Claim Is Timely and Adequately Plead.**

Defendants argue that the abuse of process claim is governed by the Federal Tort Claims Act's two-year statute of limitations set forth in 28 U.S.C. § 2401(b), not a Nevada limitations period. The Motion contends that the abuse of process claim is "forever barred" under 28 U.S.C. § 2401(b) because all alleged conduct underlying the claim — including the Longbow Productions operation, the planting of informants and monitoring of jail telephone calls, and the concealment of exculpatory evidence — terminated no later than January 8, 2018, when the Underlying Action was dismissed, which is more than two years before Plaintiffs presented their administrative tort claim to the federal government on or about February 3, 2020.

Under Nevada law, the general rule is that a cause of action accrues when the wrong occurs and a party sustains injuries for which relief could be sought. *Petersen v. Bruen*, 106 Nev. 271, 274, 792 P.2d 18, 20 (1990).  However, the Nevada Supreme Court has long recognized an exception to that general rule in the form of the discovery rule, under which "the statutory period of limitations is

tolled until the injured party discovers or reasonably should have discovered facts supporting a cause of action." *Id.* A plaintiff who relies upon the delayed discovery rule must plead facts justifying delayed accrual of the action, including (1) the time and manner of discovery, and (2) the circumstances excusing delayed discovery. *Id.* at 274, 792 P.2d at 20 (citing *Prescott v. United States*, 523 F. Supp. 918, 940-941 (D. Nev. 1981), aff'd, 731 F.2d 1388 (9th Cir. 1984)). The 9th Circuit applies this same rule: a claim does not accrue until a plaintiff knows the existence of an injury and its cause. *Bennett v. United States*, 44 F.4th 929, 933 (9th Cir. 2022). Equitable tolling is available under the FTCA when a plaintiff demonstrates that extraordinary circumstances beyond their control prevented timely filing and that they acted with reasonable diligence i.e. § 2401(b) is not "jurisdictional," and that equitable tolling is available. *Kwai Fun Wong v. Beebe*, 732 F.3d 1030, 1033 (9th Cir. 2013).

The TAC alleges otherwise. Paragraph 150 alleges that the abuse of process claim was tolled throughout the entire pendency of the Underlying Action because the GOVERNMENT EMPLOYEES deliberately concealed their willful and improper acts in the use of the legal process — including the Longbow Productions operation, the planting of informants, and the systematic concealment of exculpatory evidence — and Plaintiffs could not have discovered those acts until they were exposed at the Tier 1 evidentiary hearing, which occurred on January 8, 2018, followed by the dismissal with prejudice on February 7, 2018.

On the merits, the Motion argues that the TAC's ulterior purpose allegations are mere conjecture and that the alleged acts do not constitute uses of judicial process. The TAC's factual allegations in paragraph 143 are not conjecture. The ulterior purposes identified — eliminating ranching operations in the Gold Butte region and thereby acquiring the Bundy family's private water rights, as alleged in paragraph 19 of the TAC; punishing Plaintiffs for their religious beliefs

17

and membership in the Church of Jesus Christ of Latter-Day Saints, as alleged in paragraph 115(E); retaliating against Plaintiffs for their exercise of First and Second Amendment rights; and satisfying the personal animus of BLM SAC Love and other GOVERNMENT EMPLOYEES — are each supported by specific record evidence cited in the TAC, including the Wooten Memo authored in November 2017, BLM SAC Love's documented maintenance of a kill list for the Bundys, his Kill Book, and the FBI's Arrest Tracking Wall bearing photographs of Plaintiff Ryan Bundy and his family members marked with an "X."

With respect to the willful-acts element, paragraph 144 of the TAC identifies four specific categories of willful acts in the use of the legal process: first, Agent Willis directed the Longbow Productions undercover FBI operation, in which masquerading FBI agents falsely posed as a film crew, enticed Plaintiffs and their supporters with alcohol, money, and other goods, and asked leading questions in staged interviews that were then selectively edited and used against Plaintiffs in the Underlying Action; second, the GOVERNMENT EMPLOYEES directed that informants be planted among Plaintiffs during their incarceration, offered other inmates immediate release from custody in exchange for false testimony against Plaintiffs, and prepared fabricated investigative documents for those inmates to sign; third, the GOVERNMENT EMPLOYEES intentionally and systematically concealed exculpatory evidence — including Dave Bundy's iPad, the BLM threat assessments, and the FBI surveillance camera evidence — from Plaintiffs, their counsel, and the Court throughout the pendency of the Underlying Action; and fourth, the GOVERNMENT EMPLOYEES directed the unauthorized and unlawful monitoring of post-arrest jail telephone calls between Plaintiff Ryan Bundy and Plaintiff Angela Bundy, and between Plaintiff Ryan Payne and his wife, for the apparent purpose of mocking their private expressions of anguish. Each of these

acts are a willful perversion of the federal investigative and prosecutorial process for purposes wholly foreign to its legitimate function.

Accepting the TAC's allegations as true and drawing all reasonable inferences in Plaintiffs' favor, the abuse of process claim is timely under the discovery rule and, alternatively, equitable tolling, because Plaintiffs could not have discovered the GOVERNMENT EMPLOYEES' willful and improper acts in the use of the legal process — the Longbow Productions operation, the planting of informants, the manufacture of false inmate testimony, and the systematic concealment of exculpatory evidence — until that misconduct was exposed at the Tier 1 evidentiary hearing on January 8, 2018. On the merits, the TAC's ulterior-purpose allegations are grounded in specific record evidence cited at paragraphs 19, 115(E), and 143 — including the Wooten Memo, the kill list, the Kill Book, and the FBI's Arrest Tracking Wall — not conjecture, and the four categories of willful acts identified at paragraph 144 of the TAC each constitute a willful perversion of the federal investigative and prosecutorial process for purposes wholly foreign to its legitimate function of enforcing the law. The abuse of process claim is therefore timely and adequately pleaded, and the Motion should be denied as to this claim.

**H.    The IIED Claim Is Timely and Adequately Plead.**

The Motion argues that the intentional infliction of emotional distress claim is time barred because all severe emotional distress accrued before February 3, 2018. The TAC alleges otherwise. Paragraph 147 of the TAC alleges that the IIED claims were tolled during the relevant time periods and acted as continuing torts, continuing to cause severe emotional distress damages to each Plaintiff through the date of filing, including as a result of the GOVERNMENT EMPLOYEES' ongoing placement and maintenance of Plaintiffs on the No Fly List and on secret lists precluding Plaintiffs from purchasing firearms, as alleged in paragraphs 96(i) and 96(j). The continuing harm

from these ongoing restrictions, which expose Plaintiffs to detainment, interrogation, and travel restrictions every time they attempt to fly commercially, and which preclude them from exercising their Second Amendment rights, is not historical — it is present and continuing.

On the merits, the Motion argues that because the prosecution was supported by probable cause, the indictment and detention cannot constitute extreme and outrageous conduct. That argument depends entirely on the Motion's flawed probable cause analysis, which is refuted above. Moreover, paragraph 135 of the TAC identifies extreme and outrageous conduct that goes well beyond the bare fact of arrest and indictment: the maintenance of a kill list for the Bundys; the FBI's Arrest Tracking Wall; BLM SAC Love's Kill Book; the systematic fabrication and concealment of evidence; the monitoring of post-arrest jail calls for the purpose of mocking Plaintiffs; the planting of informants and manufacturing of false inmate testimony; and the Longbow Productions scheme. The TAC alleges that each Plaintiff in fact suffered, and continues to suffer from, severe and extreme emotional distress, which physically manifested in the specific ways identified in paragraphs 100 through 111 of the TAC, and that said distress was actually and proximately caused by the extreme and outrageous conduct described. As this Court has recognized, fabricating false or misleading evidence can be sufficiently extreme or outrageous to state a claim for emotional distress. *Manansingh v. United States*, No. 2:20-cv-01139-DWM, 2024 U.S. Dist. LEXIS 70260, at *9 (D. Nev. Apr. 15, 2024) (citing *Woods v. City of Reno*, 2020 U.S. Dist. LEXIS 128798, 2020 WL 4194844, at *15 (D. Nev. July 21, 2020) (permitting an IIED claim to proceed against investigators based on conviction vacated as a result of DNA evidence); *Lynch v. Omaha World-Herald Co.*, 300 F. Supp. 2d 896, 903 (D. Neb. 2004) (finding sufficient the plaintiff's allegation that the defendants engaged in a deliberate pattern of actions designed to obtain a criminal conviction by use of fraud, concealment, heavy-handedness, and destruction of evidence); *Spring v.*

*Brown*, 2007 U.S. Dist. LEXIS 675, 2007 WL 26766, at *7 (E.D. Wash. Jan. 3, 2007)). Further, while liability for emotional distress will not extend to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities," *Candelore v. Clark Cnty. Sanitation Dist.*, 975 F.2d 588, 591 (9th Cir. 1992), accusations of criminal conduct can constitute outrageous conduct. *Manansingh*, 2024 U.S. Dist. LEXIS 70260, at *9 (citing *Nagata v. Quest Diagnostics Inc.*, 303 F. Supp. 2d 1121, 1128 (D. Haw. 2004)). The TAC alleges precisely such a deliberate pattern of conduct here.

The Motion's contention that there is a causal disconnect between the pre-indictment conduct and the post-indictment manifestations of distress ignores the TAC's allegations that the pre-indictment misconduct (the kill list, the Kill Book, the Arrest Tracking Wall, the Longbow Productions operation, the fabrication of evidence, and the concealment of exculpatory evidence) was precisely the misconduct that produced the indictment and the resulting two-year incarceration. The pre-indictment conduct and the post-indictment incarceration are not causally disconnected — they are the cause and effect of a single course of misconduct.

Plaintiffs have adequately plead each element of intentional infliction of emotional distress under Nevada law: extreme and outrageous conduct, severe emotional distress, and causation. *Dillard Dept. Stores, Inc. v. Beckwith*, 115 Nev. 372, 378, 989 P.2d 882, 886 (1999); *Posadas v. City of Reno*, 109 Nev. 448, 456, 851 P.2d 438, 444 (1993). The claim is timely under the discovery rule and equitable tolling, *Petersen v. Bruen*, 106 Nev. 271, 274, 792 P.2d 18, 20 (1990); *Kwai Fun Wong v. Beebe*, 732 F.3d 1030, 1033 (9th Cir. 2013), because Plaintiffs could not have discovered the full scope of the GOVERNMENT EMPLOYEES' misconduct — the kill list, the Kill Book, the Arrest Tracking Wall, the Longbow Productions scheme, and the systematic fabrication and concealment of evidence — until the Tier 1 evidentiary hearing on January 8, 2018, and the

ongoing No Fly List and firearms-purchase restrictions thereafter alleged at paragraphs 96(i) and 96(j) of the TAC constitute a continuing tort. The Motion's probable cause defense fails for the reasons set forth above. *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004). The IIED claim is therefore adequately plead and the Motion should be denied as to this claim.

**I.      The Loss of Consortium Claim Is Derivative of Viable Primary Claims.**

The Motion argues that the loss of consortium claim must be dismissed because the other claims fail.  However, because the malicious prosecution, false imprisonment, abuse of process, and IIED claims in the TAC are all adequately pleaded for the reasons set forth above, the derivative loss of consortium claim alleged at paragraph 136 of the TAC also survives.  Plaintiff, Angela Bundy, the wife of Plaintiff Ryan Bundy, has properly alleged the loss of the love, affection, protection, support, services, companionship, care, society, and sexual relations of her husband, and the Bundy children Plaintiffs have alleged the loss of the love, affection, protection, support, care, society, and parental guidance of their father — the physical manifestations of which are specifically identified in paragraphs 104 through 111 of the TAC.

Throughout the pendency of the events outlined in the TAC, Defendants have shown a propensity to lie and withhold this very evidence.  Obtaining the truth has proven impossible without judicial intervention.  As noted above, the dismissal of such actions without giving the Plaintiffs ample opportunity for discovery should be granted very sparingly.  Pursuant to that Supreme Court holding, Plaintiffs respectfully request that the motion to dismiss the TAC be denied and the case be sent to discovery.

///

///

///

22

## III.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the United States' Motion to Dismiss the Third Amended Complaint in its entirety.

DATED on this 20th day of May, 2026.

JUSTICE LAW CENTER

/s/ Bret O. Whipple
BRET O. WHIPPLE, ESQ.
Nevada Bar #6168
DAREN B. RICHARDS, ESQ.
Nevada Bar #5103
1100 S. Tenth Street
Las Vegas, NV  89104
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I certify that on the date shown below, I caused service to be completed of a true and correct copy of the foregoing by:

_____ personally delivering;

_____ delivery via Reno/Carson Messenger Service;

_____ sending via Federal Express (or other overnight delivery service);

_____ depositing for mailing in the U.S. mail, with sufficient postage affixed thereto; or,

__X__ delivery via electronic means (fax, eflex, NEF, etc.) to:

Jevechius D. Bernardoni
Assistant United States Attorney
Attorneys for the United States of America

DATED on this 20th day of May, 2026.

/s/ Jeanne Metzger
An Employee of JUSTICE LAW CENTER

23