CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney
PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
JEVECHIUS D. BERNARDONI (CABN 281892)
Assistant United States Attorney
Acting Under Authority Conferred by 28 U.S.C. § 515

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7224
Facsimile: (415) 436-6748
jevechius.bernardoni@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| RYAN BUNDY, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, *et al.*,<br><br>Defendants. | Case No. 2:23-cv-01724-RFB-VCF<br><br>**THE UNITED STATES OF AMERICA'S REPLY IN SUPPORT OF MOTION TO DISMISS THE THIRD AMENDED COMPLAINT** |

## I. Introduction

Plaintiffs' opposition (ECF No. 54, "Opp.") to the United States' motion to dismiss (ECF No. 50, "Mot.") does not show that any of the claims in the third amended complaint (ECF No. 49, "TAC") are cognizable. It instead relies on factually unsupported and legally inapposite arguments and does not remedy any of the pleading deficiencies previously identified by this Court in the order dismissing the second amended complaint. ECF No. 48 ("Order"). This is the fourth operative complaint filed in this case, and Plaintiffs' "*one final opportunity*" to amend still fails to state a valid claim. *Id.* at 6 (emphasis in original). The lawsuit should be dismissed, with prejudice.

## II. The Malicious Prosecution Claim In The TAC Fails For The Same Four Reasons The Court Identified In The Prior Dismissal Order

### A. The TAC Again Fails To Plead Affirmative Facts To Overcome The Presumption Of Independent Prosecutorial Judgment

The Court correctly dismissed the malicious prosecution claim in the SAC because it failed "to allege that the law enforcement officers presented . . . false information to the prosecution or otherwise directed or pressured prosecutors to file the specific criminal charges against Plaintiffs." Order at 4. As the United States demonstrated in the motion to dismiss, the TAC similarly fails to allege affirmative facts to overcome the presumption of independent prosecutorial judgment. Mot. at 7-9. Plaintiffs contend otherwise, and they cite only paragraphs 112 and 132 of the TAC in support of their arguments. Opp. at 6-7. But those paragraphs do not include the "affirmative allegations sufficient to overcome the presumption of" independent prosecutorial judgment that are necessary here. Order at 3.

First, the Opposition argues that "Willis, Love, Stover, and Brunk . . . directed, pressured, and controlled the prosecution itself" (Opp. at 6), but the only factual support Plaintiffs proffer for that argument is that those individuals "were physically present at the Bundy Ranch and the surrounding Gold Butte area, alongside federal prosecutors, before, during, and after the events giving rise to the charges against Plaintiffs." TAC ¶ 112. These are nothing more than allegations of physical proximity, and these factual assertions, accepted as true, are silent regarding any purported law enforcement "direct[ion] or pressure[ on] prosecutors to file the specific criminal charges against Plaintiffs." Order at 4. As such, the conclusions in paragraph 112 of the TAC are not "affirmative allegations" of improper direction or pressure on prosecutors and are thus facially insufficient to rebut the presumption of independent

prosecutorial judgment.

Second, Plaintiffs observe that the TAC alleges that "BLM SAC Love openly expressed his intention to 'kick members of the Bundy family in the mouth' during their arrest, that he maintained a 'Kill Book' and a kill list for the Bundys, and that the FBI maintained an Arrest Tracking Wall on which photographs of Plaintiff Ryan Bundy and other family members were marked with an 'X.'" Opp. at 6 (citing TAC ¶ 132). But the TAC fails to allege any facts establishing (1) that Love informed federal prosecutors that he wanted to kick Bundy family members in the mouth, (2) that federal prosecutors were aware of Love's kill list or Kill Book, or (3) that federal prosecutors knew about the FBI's Arrest Tracking Wall. *See* TAC ¶¶ 112 & 132. And assuming the TAC's allegations of physical proximity are sufficient to provide that missing link in the absence of well-pleaded facts expressly doing so (*see* Opp. at 6), these assertions still do not plausibly suggest that "law enforcement officers presented . . . false information to the prosecution or otherwise directed or pressured prosecutors to file the specific criminal charges against Plaintiffs." Order at 4. Indeed, Plaintiffs do not claim that any of the alleged conduct by Love discussed above was false, nor do they allege facts suggesting that Love—or any other law enforcement official—improperly directed or pressured prosecutors to file criminal charges against Bundy and Payne.

Third, Plaintiffs again invoke alleged post-indictment law enforcement conduct in support of their independent prosecutorial judgment arguments (Opp. at 7, citing TAC ¶¶ 112 & 132), but that is a non-starter because the presumption of independent prosecutorial judgment must be assessed as of the time the criminal case was initiated and cannot be based on post-indictment law enforcement conduct. *See Smiddy v. Varney*, 665 F.2d 261, 266 (9th Cir. 1981). And, in any event, Plaintiffs' assertion that the post-indictment conduct demonstrates that "the prosecutors at all material times were operating on a false and fabricated record" and that "the prosectors did not exercise independent judgment because they did not have the information necessary to do so" is fatally inconsistent with Plaintiffs' separate contention that the alleged physical proximity of the federal prosecutors and law enforcement officers "confirms that law enforcement and prosecutors operated in a unified, coordinated manner" and that there was "no meaningful separation between the investigative and prosecutorial functions." Opp. at 6-7.

In short, in this fourth operative complaint, Plaintiffs still fail to allege affirmative facts to overcome the presumption of independent prosecutorial judgment. The malicious prosecution claim

should be dismissed, with prejudice.

**B. The TAC Again Fails To Plead Facts Plausibly Suggesting That The Repeated Indictments Of Bundy And Payne Were Devoid Of Probable Cause**

The Court also dismissed the malicious prosecution claim in the SAC because it failed "to adequately allege the lack of probable cause element." Order at 4. Once again, the TAC suffers from the same pleading deficiency. Mot. at 9-11. The Opposition, citing paragraph 133 of the TAC, contends that the purportedly false testimony that Willis and Stover made to the grand jury, as well as information that was allegedly withheld from the grand jury, are sufficient to establish a lack of probable cause for Bundy's and Payne's indictments. Opp. at 8-9. Plaintiffs' arguments are misguided.

Plaintiffs first claim that the TAC "identif[ies] by name, by date, and by content the false testimony presented directly to the Grand Jury," including "Agent Willis' false and perjurious testimony on June 29, 2015, and again on March 2, 2016." Opp. at 8 (citing TAC ¶ 133). But paragraph 133 of the TAC does not allege *any* facts about the content of Willis's purportedly "false and perjurious testimony" on those dates. *See* TAC ¶ 133. To the extent the content of that purportedly false testimony can be ascertained by other paragraphs in the TAC, Willis's testimony appears to be related to Dave and Mel Bundy (*see id.* ¶¶ 62-68), neither of whom is a plaintiff in the civil lawsuit before this Court. As such, the TAC's allegations regarding purportedly perjurious testimony by Willis are irrelevant to the probable cause analysis for the Plaintiffs currently before the Court, *i.e.*, Ryan Bundy and Ryan Payne.

Plaintiffs also claim that Stover provided false testimony to the grand jury in September 2015 regarding the government's use of snipers, and Plaintiffs contend that the presence of snipers "is the factual predicate on which the charges of conspiracy, conspiracy to impede federal officers, assaulting and threatening federal officers, obstructing federal officers, and using firearms in crimes of violence all depend." Opp. at 8. Plaintiffs' assertion cannot be squared with the underlying indictments, each of which mention allegedly false statements about snipers in a mere three paragraphs. *See* Underlying Action, ECF No. 5 ¶¶ 55, 58, & 61; Underlying Action, ECF No. 27 ¶¶ 84, 88, 92. Further, putting aside the fact that the indictments *did not* solely depend on false statements about snipers as the factual predicate for the charged crimes, the Ninth Circuit has already determined that lies about feeling surrounded by snipers do "not appear to be elements of the crimes alleged[.]" Underlying Action, ECF No. 3306 (also available at

*United States v. Bundy*, 968 F.3d 1019, 1044 (9th Cir. 2020)). In the probable cause analysis, the Court must look to the elements of the charged crimes. *Butler v. Smith*, 85 F.4th 1102, 1116 (11th Cir. 2023); *Dunning v. United States*, No. 17-cv-43, 2022 WL 815190, at *3 (N.D. Ind. Mar. 17, 2022). Here, the Ninth Circuit's finding that lies about snipers do not appear to be an element of the crimes charged is dispositive on this issue, and Stover's purportedly false sniper representations thus cannot establish a lack of probable cause for Bundy's and Payne's repeated grand jury indictments.

Finally, the Opposition contends that unidentified government employees withheld exculpatory evidence—*i.e.*, the existence of an FBI surveillance camera and BLM threat assessments—from the grand jury (Opp. at 9), but the government had no obligation to present that purportedly exculpatory evidence. *See, e.g.*, *United States v. Williams*, 504 U.S. 36, 51 (1992) (requiring a "prosecutor to present exculpatory as well as inculpatory evidence would alter the grand jury's 'historical role'"); *see also Psaila v. Girardi*, No. 23-cv-07120, 2025 WL 1090152, at *4 (C.D. Cal. Mar. 18, 2025). And regardless of whether the government generally can be required to present exculpatory evidence to the grand jury, the TAC still fails to tie the purportedly omitted evidence to the elements of the crimes with which Bundy and Payne were charged. *See Butler*, 85 F.4th at 1116; *Dunning*, 2022 WL 815190, at *3.

Their fourth attempt at pleading facts plausibly establishing a lack of probable cause fare no better than the prior three—Plaintiffs' malicious prosecution claim is subject to dismissal, with prejudice, because probable cause is an absolute defense to a malicious prosecution claim.

### C. The TAC Does Not Add Facts To Address The Court's Finding That Independent Probable Cause Supported The Indictments

The Court dismissed the malicious prosecution claim in the SAC on the third independent basis that Plaintiffs "fail to allege sufficient facts to establish that their indictment lacked independent probable cause, irrespective of the grand jury proceedings." Order at 5. Although the TAC contains the same independent probable cause pleading failures as the SAC (*see* Mot. at 11-13), Plaintiffs contend that "once it is accepted . . . that the snipers were real, the entire factual edifice on which the indictment rested collapses" and that there is "no separate, independent set of facts in the superseding indictment that, standing alone and divorced from the false snipers narrative, would establish probable cause for any of the charges." Opp. at 10-11.

But Plaintiffs' argument once again ignores that the purportedly false sniper representations constitute just a sliver of the allegations in the underlying indictments—allegations about false sniper claims are contained in just six of the 332 paragraphs in the two underlying indictments. The Opposition also ignores, and thus leaves unopposed, the specific examples discussed in the Motion in which Bundy and Payne engaged in criminal conduct that did not involve alleged use of firearms and/or that did not occur on or near the Bundy Ranch (thereby undermining the self-defense narrative that Plaintiffs seek to advance here). *See* Mot. at 12-13 (citing Underlying Act, ECF No. 27 ¶ 78 (Bundy blocking a convoy of vehicles to interfere with impoundment operations), ¶ 80 (Bundy traveling to Utah to threaten an auctioneer), ¶ 83 (Bundy blocking another convey of vehicles to interfere with impoundment operations), ¶ 105 (Bundy again traveling to Utah to threaten an auctioneer), ¶ 109 (Payne sending an email seeking help to "secure the Bundy family from government incursion" and to "secure and return Mr. Bundys (sic) ranch the mounting number of cattle which have been confiscated by BLM agents and private contractors")). Finally, Plaintiffs' argument runs contrary to the Ninth Circuit's holding that the criminal case against Bundy and Payne would have been altered—but "perhaps not weakened"—if the purportedly false sniper allegations had been struck from the indictment. Underlying Action, ECF No. 3306 (also available at *Bundy*, 968 F.3d at 1044). That Ninth Circuit holding is fundamentally inconsistent with Plaintiffs' claim that the purportedly false sniper allegations necessarily poison all other independent probable cause showings in the indictments.

As this Court previously found with respect to the SAC (Order at 5), the criminal indictments contain a "plethora" of allegations of criminal wrongdoing without any corresponding factual allegation in the TAC suggesting that those allegations were false or fabricated. That independent probable cause is an absolute defense to Plaintiffs' malicious prosecution claim, and the claim should be dismissed, with prejudice.

**D. The TAC Again Fails To Plead Facts Showing A Favorable Termination**

Finally, the Court correctly found that the malicious prosecution claim in the SAC was not cognizable because it "does not allege any facts suggesting Plaintiffs Bundy and Payne were innocent or not responsible for the criminal conduct they were charged with," and Plaintiffs thus "fail to satisfy the favorable termination element." Order at 6. The TAC is similarly flawed (Mot. at 13-15), and Plaintiffs

offer nothing that could change this Court's prior analysis.

The Opposition first contends that "the central premise of all charges against Plaintiffs was that their statements about the snipers were false" and that once it was proven that snipers existed there is "no doubt" that Plaintiffs "lack[ed] responsibility for the criminal conduct charged." Opp. at 12. But as established earlier, that argument is both (1) inconsistent with the content of the underlying indictments and (2) irrelevant because the Ninth Circuit has already found that lies about snipers do not appear to be an element of the charged crimes. *See supra* Parts II.B-C.

Plaintiffs also argue that the "reason a new trial was deemed inadequate is because the concealed evidence . . . was a complete defense to every charge, not a procedural one." Opp. at 13. But Plaintiffs proffer no factual citation for this contention, and the TAC does not allege (nor could it) that Judge Navarro ever issued such a decision. Further, Plaintiffs' argument flies in the face of the Ninth Circuit's holding that even without the purportedly false sniper allegations, the government's criminal case against Bundy and Payne might not have been "weakened" at all. Underlying Action, ECF No. 3306 (also available at *Bundy*, 968 F.3d at 1044). Indeed, the Ninth Circuit never suggested that Bundy and Payne were innocent of the charged criminal conduct; it instead simply held that Judge Navarro's dismissal was an allowable exercise of the district court's supervisory powers. *Id.* That appellate holding is incompatible with Plaintiffs' "complete defense" arguments before this Court.[1]

Finally, Plaintiffs observe that they are innocent until proven guilty. Opp. at 13. The United States does not disagree with that unremarkable criminal standard, but it is irrelevant in the *civil* context of Plaintiffs' malicious prosecution claim. To establish a cognizable civil malicious prosecution claim, "Plaintiffs must plead facts showing 'more than a mere dismissal of the underlying action' they must allege 'facts establishing [their] innocence.'" Order at 6-7 (quoting *Fetters v. Cty. of Los Angeles*, 243 Cal. App. 4th 825, 843 (2016)). Simply stated, invocation of the "innocent until proven guilty" criminal standard fails to satisfy the pleading requirements of a civil malicious prosecution claim.

[1] The Ninth Circuit's order did not find that dismissal was mandated because the purportedly false sniper allegations provided a "complete defense" to the charged conduct. *Cf.* Opp. at 13. That order instead found that Judge Navarro did not abuse her discretion when she dismissed the criminal claims against Bundy and Payne because striking the sniper allegations (rather than outright dismissal) "would have meant that the government would get a second shot at preparing its case[.]" *Id.*

### III. The False Imprisonment Claim Is Time Barred And Fails On The Merits

Plaintiffs argue that the false imprisonment claim is timely because it was tolled "throughout the entire pendency of the Underlying Action." Opp. at 14. But the false imprisonment claim accrued when Bundy and Payne became held pursuant to legal process in March 2016, and the United States disputes that the false imprisonment claim was ever equitably tolled. Mot. at 16. The false imprisonment claim is thus untimely by almost two years.

But assuming, *arguendo*, the false imprisonment claim was tolled for the "entire pendency of the Underlying Action" as Plaintiffs contend (Opp. at 14), this claim *still* would be time barred. The evidentiary hearing that resulted in the dismissal of the underlying criminal lawsuit occurred on January 8, 2018, and the underlying criminal charges were dismissed, with prejudice, that same day. *See* Underlying Action, ECF Nos. 3116 (minutes of January 8, 2018 hearing) & 3117 (judgment of dismissal). Plaintiffs allege that they presented their administrative claims to the government "on or about February 3, 2020," *i.e.*, about two years and one month after the evidentiary hearing and dismissal of the Underlying Action. TAC ¶ 119. As a result, even if the Court accepts Plaintiffs' tolling arguments, the false imprisonment claim is nevertheless untimely and "forever barred" under 28 U.S.C. § 2401(b).

Plaintiffs also argue that their false imprisonment claim remains timely under the continuing tort doctrine because they purportedly remain on the "No Fly List" and on "secret lists precluding the purchase of firearms." Opp. at 15; *see also* TAC ¶¶ 99(i) & 99(j).[2] There are multiple problems with this argument. First, Plaintiffs' purported presence on lists regarding flights and firearms purchases is irrelevant to a false imprisonment claim, which requires an act intending to confine a person "within boundaries fixed by the actor[.]" *Hernandez v. Reno*, 97 Nev. 429, 433 (1981). Nothing about a firearms purchasing list speaks to confining a person within fixed boundaries. Moreover, there are no facts alleged here to suggest that the United States intended to confine either Bundy or Payne to any fixed boundaries; assuming they are on a No Fly List, they just cannot travel by airplane. Second, the TAC does not allege any facts to tie the alleged No Fly List and the secret firearms list to the purportedly tortious conduct at issue—Bundy and Payne could be on those lists for any number of reasons other than the allegedly wrongful conduct in the

[2] The Opposition erroneously cites TAC ¶¶ 96(i) & 96(j) for these alleged facts.

Underlying Action, and these threadbare allegations are insufficient to state a claim under *Iqbal* and *Twombly*, much less support application of the continuing torts doctrine. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Third, even assuming the TAC had alleged facts to tether the No Fly List and the firearms list to the purportedly wrongful conduct in the Underlying Action, "'continual ill effects from an original violation' do not constitute a continuing violation," but that is all Plaintiffs allege here. *Duralev v. United States*, No. 22-cv-4927, 2023 WL 12166424, at *2 n.3 (C.D. Cal. Nov. 15, 2023) (quoting *Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir. 1981)) (declining to apply continuing tort doctrine to false imprisonment claim under the FTCA).

With respect to the merits of their false imprisonment claim, Plaintiffs simply claim that "the TAC pleads detailed facts establishing the absence of probable cause for Plaintiffs' arrest and imprisonment[.]" Opp. at 16. But that is not an accurate characterization of the factual allegations in the TAC, as established earlier in this brief. *See supra* Parts II.B-C; *see also* Mot. at 9-13.

**IV. The Abuse Of Process Claim Is Time Barred And Also Fails On Its Merits**

Plaintiffs' abuse of process claim is time barred for the same reason as the false imprisonment claim. Here, again, Plaintiffs argue that they could not have discovered the existence of their injury and its cause until the government's purportedly unlawful conduct was "exposed at the Tier 1 evidentiary hearing, which occurred on January 8, 2018[.]" Opp. at 17. But more than two years separate the January 8, 2018 evidentiary hearing and Plaintiffs' alleged February 3, 2020 administrative claims presentment. *See* TAC ¶ 119. As such, even accepting the tolling arguments as legally and factually viable, the abuse of process claim is still untimely and "forever barred" under 28 U.S.C. § 2401(b).

Plaintiffs' abuse of process arguments also invoke a purported "February 7, 2018" dismissal of the Underlying Action (Opp. at 17), but that is the wrong dismissal date for Bundy's and Payne's criminal charges, and it cannot salvage these Plaintiffs' untimely abuse of process claim. Judge Navarro dismissed the criminal charges, with prejudice, as to Bundy and Payne during the January 8, 2018 evidentiary hearing, and she entered judgment later that same day as to Bundy and Payne. *See* Underlying Action, ECF Nos. 3116 & 3117. The February 7, 2018 dismissal referenced in the Opposition applied to other criminal defendants in the Underlying Action, none of whom is a plaintiff in the civil action before this Court. *See* Underlying Action, ECF No. 3179 (dismissal order as to Mel Bundy, Dave Bundy, Joseph

O'Shaughnessy, and Jason Woods). As a result, the February 7, 2018 dismissal is irrelevant to the timeliness of Ryan Bundy's and Ryan Payne's abuse of process claim. Again, that claim is "forever barred" under 28 U.S.C. § 2401(b) because Ryan Bundy and Ryan Payne failed to present their administrative tort claims to the government for more than two years after the claim accrued.

Plaintiffs' merits arguments are also unpersuasive. With respect to the first element of an abuse of process claim—*i.e.*, facts, rather than conjecture, that the party intended to use the legal process to further an ulterior purpose—Plaintiffs simply cite paragraph 143 of the TAC and argue that those conclusions "are not conjecture." Opp. at 17. But even assuming those conclusory ulterior purposes, without any supporting facts, are not conjecture, the TAC still fails to allege any facts suggesting that Willis, Love, Stover, and/or Brunk compelled federal prosecutors to initiate the Underlying Action to further those (speculative) ulterior purposes. Plaintiffs' arguments on the second element of an abuse of process claim (Opp. at 18-19) fare no better; there, Plaintiffs continue to rely almost exclusively on out-of-court investigative conduct that does not qualify, as a matter of law, as "use of the legal process" sufficient to support an abuse of process claim. *See* Mot. at 19-20 (citing cases).

**V. The IIED Claim Is Also Time Barred And Fails On Its Merits**

Like the false imprisonment and abuse of process claims, the IIED claim is "forever barred" under 28 U.S.C. § 2401(b) because the TAC's allegations unequivocally demonstrate that the physical manifestation of Plaintiffs' claimed emotional distress occurred more than two years before Plaintiffs presented their administrative claims to the government. *See* Mot. at 20-22.

The Opposition ignores the TAC's allegations about the untimely onset of Plaintiffs' emotional distress—and the untimely acts that purportedly caused that emotional distress—and again pivots to a continuing torts theory based on the alleged No Fly List placement and the purportedly secret firearms purchase list. Opp. at 19-20. But that continuing torts theory is flawed with respect to the IIED claim for many of the same reasons discussed above. Namely, (1) the TAC does not allege facts linking the No Fly List and the secret firearms purchase list to the purportedly tortious conduct at issue and (2) neither the TAC nor the Opposition identifies any new, timely actionable conduct; Plaintiffs instead simply invoke continuing impacts from an untimely alleged tort claim. *See Duralev*, 2023 WL 12166424, at *2 n.3. But even assuming these threshold problems with the continuing torts theory did not exist, a timely IIED claim

still could not proceed based on the alleged No Fly List and secret firearms purchase list alleged here because the TAC fails to allege facts suggesting any physical manifestation of emotional distress resulted from Plaintiffs' purported placement on those lists. *Compare* TAC ¶¶ 99(i) & 99(j) *with Friedman v. United States*, No. 18-cv-857-JCM-VCF, 2019 WL 121965, at *5 (D. Nev. Jan. 7, 2019) (an IIED claim under Nevada law requires a plaintiff to demonstrate "some physical manifestation of emotional distress"). Instead, each instance of physical manifestation of emotional distress alleged in the TAC stems from Bundy's and Payne's pre-trial detention, which unmistakably ended more than two years before Plaintiffs presented their administrative claims to the government. *See* Mot. at 20-22 (surveying IIED allegations in the TAC). In short, Plaintiffs' IIED claim is untimely and forever barred (28 U.S.C. § 2401(b)), and it should be dismissed, with prejudice.

Plaintiffs' merits arguments also fail. Plaintiffs first contend that Bundy's and Payne's criminal prosecutions lacked probable cause (Opp. at 20), but that argument is not supported by the TAC's factual allegations. *See supra* Parts II.B-C. Plaintiffs also argue that there is a causal connection between the pre-indictment conduct (all of which is untimely) and Plaintiffs' alleged post-indictment physical manifestation of emotional distress (which is similarly untimely) because the pre-indictment conduct resulted in Bundy's and Payne's criminal prosecution and two-year detention. Opp. at 21. But, again, Plaintiffs do not allege any emotional distress that occurred directly as a result of the pre-indictment conduct (much of which, presumably, Plaintiffs were not contemporaneously aware); they instead claim to have suffered emotional distress because of a subsequent criminal prosecution and resulting pre-trial detention that were supported by probable cause and legally justified. *See* Mot. at 20-22. The IIED claim should be dismissed, with prejudice.

## VI. The Derivative Loss Of Consortium Claim Fails Because The Other Claims In The TAC Are All Subject To Dismissal, With Prejudice

The Opposition argues only that the loss of consortium claim should be allowed to proceed "because the malicious prosecution, false imprisonment, abuse of process, and IIED claims in the TAC are all adequately pleaded[.]" Opp. at 22. But as described elsewhere in this brief, those claims are all subject to dismissal, with prejudice, on multiple grounds. The derivative loss of consortium claim thus also should be dismissed, with prejudice.

**VII. Conclusion**

For the foregoing reasons, the United States respectfully asks the Court to grant the motion to dismiss the TAC, with prejudice.

DATED: June 3, 2026

CRAIG H. MISSAKIAN
United States Attorney

*/s/ Jevechius D. Bernardoni*
JEVECHIUS D. BERNARDONI
Assistant United States Attorney
Acting Under Authority Conferred
by 28 U.S.C. § 515

Attorneys for the United States of America